Page 1

```
 1              THE UNITED STATES DISTRICT COURT
                EASTERN DISTRICT OF MISSOURI
 2                  SOUTHEASTERN DIVISION
 3
      CHERYL SIMPSON,                )
 4                                   )
              Plaintiff,             )
 5                                   )
          vs.                        ) No. 1:14-cv-13-CEJ
 6                                   )
      COUNTY OF CAPE GIRARDEAU,      )
 7    MISSOURI,                      )
                                     )
 8            Defendant.             )
 9
10
                  DEPOSITION OF TODD STEVENS
11
              TAKEN ON BEHALF OF THE PLAINTIFF
12
                      DECEMBER 15, 2014
13
14
15
16
17          (Starting time of the deposition: 10:40
            a.m.)
18
19
20
21
22
23
24
25
```

Ex. B

**TODD STEVENS  12/15/2014**

Page 2

```
 1                    I N D E X
 2
     QUESTIONS BY:                            PAGE
 3
     Mr. Rothert                               5
 4   Mr. Spradling                            35
 5
 6
 7                  E X H I B I T S
 8
     EXHIBIT                  DESCRIPTION       PAGE
 9
     Plaintiff's Exhibit 1    Notice             5
10   Plaintiff's Exhibit 2    Inmate daily count 10
     Plaintiff's Exhibit 3    Telephone call charges 18
11   Plaintiff's Exhibit 4    Contraband instances 21
     Plaintiff's Exhibit 5    Mail policy        24
12   Plaintiff's Exhibit 6    Notices            24
     Plaintiff's Exhibit 7    Mail policy        26
13   Plaintiff's Exhibit 8    Policies           27
     Plaintiff's Exhibit 9    Inmate rule handbook 33
14
     (Original exhibits retained by the reporter and
15   attached to Mr. Anthony Rothert's transcript.)
16
17
18
19
20
21
22
23
24
25
```

Ex. B

**TODD STEVENS   12/15/2014**

Page 3

```
1              THE UNITED STATES DISTRICT COURT

             EASTERN DISTRICT OF MISSOURI

2                 SOUTHEASTERN DIVISION

3

   CHERYL SIMPSON,               )

4                                )

             Plaintiff,          )

5                                )

     vs.                         ) No. 1:14-cv-13-CEJ

6                                )

   COUNTY OF CAPE GIRARDEAU,     )

7  MISSOURI,                     )

                                 )

8             Defendant.         )

9

10             Deposition of Todd Stevens, produced, sworn,

11  and examined on December 15, 2014, between the hours of

12  eight o'clock in the forenoon and six o'clock in the

13  afternoon of that day, at the office of SPRADLING &

14  SPRADLING, 1838 Broadway, Cape Girardeau, Missouri,

15  before Joanna Charlton, RPR, CCR(MO), CSR(IL), in a

16  certain cause now pending in the United States District

17  Court, Eastern District of Missouri, Southeastern

18  Division, in re:  CHERYL SIMPSON vs. COUNTY OF CAPE

19  GIRARDEAU, MISSOURI; on behalf of the Plaintiff.

20

21

22

23

24

25
```

Ex. B

**TODD STEVENS   12/15/2014**

Page 4

```
1                    A P P E A R A N C E S

2

              FOR THE PLAINTIFF:
3
                    Anthony Rothert, Esq.
4                   Andrew McNulty, Esq.
                    AMERICAN CIVIL LIBERTIES UNION
5                   of EASTERN MISSOURI
                    454 Whittier Street
6                   St. Louis, Missouri 63108
                    (314) 652-3114
7                   trothert@aclu-mo.org

8

              FOR THE DEFENDANT:
9
                    A.M. SPRADLING, III, Esq
10                  SPRADLING & SPRADLING
                    1838 Broadway
11                  Cape Girardeau, Missouri 63702
                    (573) 335-8296
12                  spradlaw@swbell.net

13
    Court Reporter:
14  Joanna Charlton, RPR, CCR(MO), CSR(IL)
    Midwest Litigation Services
15  711 North 11th Street
    St. Louis, Missouri 63101
16  (314) 644-2191
    1-800-280-3376

17

18

19

20

21

22

23

24

25
```

Ex. B

TODD STEVENS  12/15/2014

Page 5

```
 1              IT IS HEREBY STIPULATED AND AGREED by and

 2    between counsel for the Plaintiff and counsel for the

 3    Defendant that this deposition may be taken in

 4    shorthand by Joanna Charlton, RPR, CCR(MO), CSR(IL) and

 5    afterwards transcribed into printing, and signature by

 6    the witness expressly waived.

 7                            *  *  *  *  *

 8                    TODD STEVENS,

 9    of lawful age, produced, sworn, and examined on behalf

10    of Plaintiff, deposes and says:

11                        EXAMINATION

12    QUESTIONS BY MR. ROTHERT:

13              (Plaintiff's Exhibit 1 marked for

14              identification.)

15        Q.    Good morning.  Could you state your full

16    name for the record, please?

17        A.    Todd Christopher Stevens.

18        Q.    All right.  And could you spell your last

19    name?

20        A.    S-T-E-V-E-N-S.

21        Q.    All right.  And, Mr. Stevens -- it's not

22    mister, it's lieutenant?

23        A.    Lieutenant.

24        Q.    Okay.  Thank you.  Lieutenant Stevens, are

25    you -- how are you employed?
```

Ex. B

TODD STEVENS  12/15/2014

Page 6

1        A.    I am employed with the Cape Girardeau County

2   Sheriff's Office.

3        **Q.    What's your position with the Cape Girardeau**

4   **County Sheriff's Office?**

5        A.    I am a lieutenant in the jail division.

6        **Q.    All right.  What does a lieutenant in the**

7   **jail division do at the Cape Girardeau County Sheriff's**

8   **Office?**

9        A.    That's kind of hard to explain.  I take care

10  of all the problems with the jail.  I assist the jail

11  administrator, and I take care of the employees that

12  are under me that work in the jail.

13       **Q.    Okay.  Anything else or is that -- other**

14  **duties as assigned?**

15       A.    Yeah.  Everything that has to do with the

16  jail I'm involved in pretty much.

17       **Q.    Okay.  That's fantastic.  Okay.  I have**

18  **handed to you what I marked as Plaintiff's Exhibit 1.**

19  **It's titled a First Amended Notice of 30(b)(6)**

20  **deposition.  Have you seen that before?**

21       A.    Yes, I have.

22       **Q.    Okay.  And is that what brought you here**

23  **today?**

24       A.    Yes, I did.

25       **Q.    Okay.  So are you the person who's been**

Ex. B

**TODD STEVENS  12/15/2014**

Page 7

1   designated by Cape Girardeau County to testify on the

2   topics in this deposition notice?

3        A.   Yes.

4        Q.   And you're ready and prepare to do that?

5        A.   Yes, sir.

6        Q.   Okay.  Great.  Have you ever been deposed

7   before?

8        A.   Yes, sir.

9        Q.   All right.  Have you ever been deposed on a

10   like a 30(b)(6) deposition before, where it's --

11        A.   I have no idea what that is.

12        Q.   Okay.  So let me just to prepare you or to

13   make sure kind of what the rules are.  It's a lot like

14   a regular deposition except for instead of picking you

15   to depose we sent out some topics that we wanted to

16   know about.  It's the part of the case where we're

17   gathering information, and the county has picked you as

18   the one who's the man who knows about what we want to

19   know about.  So we'll go through the topics one by one.

20   Rather than in a regular deposition where, you know, we

21   could go anywhere, we'll just be going through these

22   specific topics and talking about them.  Okay?

23        A.   Yes, sir.

24        Q.   All right.  Especially in this deposition

25   but really every deposition I'm not ever trying to ask

Ex. B

TODD STEVENS  12/15/2014

Page 8

1    any trick questions.  So if you don't understand a

2    question, will you let me know?  I'm not trying to be

3    tricky.

4         A.   Yes, sir.

5         Q.   Okay.  Great.  All right.  So the first

6    topic on here is county jail current and historical

7    data for the five previous years including the number

8    of beds, number of detainees, numbers of correction

9    officers, the volume and type of mail received daily,

10   the visiting hours, the number of visiting hours, the

11   number of phones, costs of making phone calls, and

12   instances of contraband.  Is that a topic that you know

13   about?

14        A.   I have looked them up.

15        Q.   Okay.  Very good.  That's one of the

16   advantages to know what the questions are going to be

17   that you have the answers, so what can you tell me

18   about the number of beds that are in the county jail

19   currently and for the previous five years?

20        A.   Our number of beds are a total of 223.

21        Q.   Okay.  Has that been --

22        A.   That's been within the last five years.

23        Q.   Okay.  And are those divided up into

24   different groups?

25        A.   Numerous different groups.

Ex. B

TODD STEVENS  12/15/2014

Page 9

1      Q.   Can you just describe what they are and how

2  many are in each one?

3      A.   Okay.  All right.  Booking area we have

4  three beds, A1 pod ten beds, A2 pods 12 beds, B pod 24

5  beds, C pod 24 beds, D pod 24 beds, E pod 24 beds, F

6  pod 32 beds, G pod we have six used beds 18 that we

7  cannot use at this time, south block we have 12 beds,

8  old dorm we have 32 beds.  We also have two confinement

9  cells that are rarely used that are also in south

10  block.

11      Q.   Okay.  And I'm sure I could figure this out

12  with a calculator, but when you came up with the 223,

13  did that include the 18 that you do not use in G block?

14      A.   Yes, sir.  I believe I did do that, yes.

15      Q.   Okay.  And why -- why can't you use those?

16      A.   It's part of the old jail.

17      Q.   Okay.

18      A.   We have an old jail and a new jail.  Those

19  do not have current intercoms and/or video, so it's a

20  danger to the inmate, so it's safety security.  So we

21  do not use those.

22      Q.   Okay.  How many detainees -- do you know how

23  many detainees are currently in the jail?

24      A.   Currently?

25      Q.   Yeah.

Ex. B

**TODD STEVENS   12/15/2014**

Page 10

1      A.   Today?

2      **Q.   Yeah, if you know.**

3      A.   I looked at it, and I could've told you.

4  But I didn't know that was a question, so I didn't

5  bring it in.

6      **Q.   Okay.  How many people are usually there?**

7  **Is there an average number?**

8      A.   There is not an average number.  As of late,

9  we're over 200 inmates daily.

10     **Q.   Okay.  And when you mean as of late, how far**

11  **back would you say that's over 200?**

12     A.   Probably most of the year.  That's just a

13  guess.

14     **Q.   Is that consistent with what's been for the**

15  **last five years, or has it been more?**

16     A.   I couldn't tell you.  I have a printout.  It

17  changes daily, so it ranges, well, from 150 maybe to

18  240.

19          MR. ROTHERT:  Okay.  Can we go off the

20  record for a moment?

21              (At this time an off-the-record

22              discussion was held.)

23              (Plaintiff's Exhibit 2 marked for

24              identification.)

25     **Q.   (BY MR. ROTHERT)  All right.  Could you look**

Ex. B

**TODD STEVENS  12/15/2014**

Page 11

1   at Exhibit 2 and tell me what that is?

2       A.   It appears to be the inmate daily count for

3   the past five years.

4       Q.   All right.  And does that show how many

5   inmates were in the jail each day for the last five

6   years?

7       A.   As far as I know, yes.

8       Q.   Okay.  Thank you.  How many corrections

9   officers worked at the county jail?

10      A.   At this time we have 23 and one part-time

11  employee, 23 full time.

12      Q.   Okay.  And can you break down those 23 what

13  their duties or their titles are?

14      A.   Titles we have one captain, one lieutenant,

15  two sergeants.  We have seven correction officers and

16  12 deputies.

17      Q.   Okay.

18      A.   The part time would also probably be a

19  corrections officer.

20      Q.   Okay.  And what's a corrections officer do?

21      A.   Anything that needs to be done in the jail,

22  takes care of the inmates.  They do the exact same

23  thing as a deputy.  The only difference is a deputy is

24  certified with the State of Missouri, and they're able

25  to carry a gun and do transports.

Ex. B

**TODD STEVENS  12/15/2014**

Page 12

1      Q.    All right.  Who -- who's in charge of mail?

2  What job title does that, handles that?

3      A.    There is no job title.  That would be either

4  a deputy or a corrections officer.

5      Q.    Okay.  And then in 2013 how many people were

6  in each of those jobs?

7      A.    2013 we had one captain, one lieutenant, two

8  sergeants, seven corrections officers, and ten

9  deputies.

10     Q.    For a total of 21?

11     A.    Total of 21.

12     Q.    Okay.  What about in 2012?

13     A.    2012 there's one captain, one lieutenant,

14  one sergeant, seven corrections officers, 12 deputies.

15     Q.    For a total of --

16     A.    For a total of 22, yes.

17     Q.    Okay.  Good.  2011?

18     A.    One captain, one lieutenant, one sergeant,

19  ten jailers -- corrections officers, sorry, nine

20  deputies for a total of 22.

21     Q.    2010?

22     A.    One captain, one lieutenant, one sergeant,

23  ten corrections officers, and nine deputies for a total

24  of 22.

25     Q.    And 2009?

Ex. B

**TODD STEVENS  12/15/2014**

Page 13

1        A.    One captain, two sergeants, nine corrections

2   officers, nine deputies for a total of 21.

3        **Q.    All right.  And so when did you start?**

4        A.    I believe I started 2011.

5        **Q.    All right.  So --**

6        A.    I've been here for three years.  It was at

7   the end of 2011.

8        **Q.    All right.**

9        A.    Correction.  Was that in the jail or total

10  sheriff's department?

11       **Q.    In the jail I was asking.**

12       A.    Yeah, that would be it.

13       **Q.    Okay.  How about total in the sheriff's**

14  **department?**

15       A.    I believe I started in 2001.

16       **Q.    Very good.  So I asked a little bit about**

17  **mail.  How much mail is received?**

18       A.    I don't have that information.  We don't

19  keep track of that.

20       **Q.    Okay.**

21       A.    So I couldn't tell you.

22       **Q.    All right.  Have you ever kept track of it?**

23       A.    No.

24       **Q.    What are the visiting hours at the jail?**

25       A.    Visiting hours for the jail is on Saturdays,

Ex. B

TODD STEVENS  12/15/2014

Page 14

1    and it's throughout the day.  But we have different

2    times for each pod.

3        **Q.    All right.  And is someone assigned to a**

4    **pod?  How do you make a decision on what pod someone's**

5    **in?**

6        A.    If we have room.

7        **Q.    Okay.**

8        A.    Or, of course, if they're male or female

9    they would go into different pods.  We try to separate

10   them from felony and misdemeanor, also.

11       **Q.    And so each pod do they have the same length**

12   **of visiting hours on Saturday?**

13       A.    Except for the female, the first female pods

14   because they're smaller pods and they get less time.

15       **Q.    Okay.  So what is the visiting time for the**

16   **smaller female pods?**

17       A.    9 a.m. to 9:30 for A1 pod.  A2 pod is 9:30

18   to 10 a.m.

19       **Q.    Okay.  And are the rest of the pods male**

20   **or --**

21       A.    Yes, sir.

22       **Q.    Okay.**

23       A.    Well, correction.  We also have a south

24   block, which holds sentenced females that are down in

25   the old part of the jail.

Ex. B

Page 15

1       Q.    All right.  So what's the visiting hours for

2   the B pod?

3       A.    B pod would be 10 a.m. to 11 a.m.

4       Q.    C pod?

5       A.    12 a.m. -- correction that should be p.m.,

6   12 p.m. to 1 p.m.

7       Q.    D pod?

8       A.    1 p.m. to 2 p.m.

9       Q.    And the E pod?

10      A.    2 p.m. to 3 p.m.

11      Q.    F pod?

12      A.    3 p.m. to 4 p.m.

13      Q.    G pod?

14      A.    G pod and holding we usually do that between

15  3 and 4 also, but since those are very few people in

16  it, a lot of times we'll have them throughout the day

17  if we can fit them in.

18      Q.    Okay.  Then you mentioned there's also an

19  old dorm and a south --

20      A.    The south block.

21      Q.    South block.  Do they have their own

22  visiting hours or --

23      A.    I believe they're -- these are the jail

24  visitation rules, and I took it off there.  And I

25  believe it's with A1 and O2 that we slip them in it

Ex. B

**TODD STEVENS   12/15/2014**

Page 16

```
 1    because they don't have it on here.

 2           Q.    Okay.  Do you know how many phones are in

 3    the jails?

 4           A.    I believe my number was a total of 28.

 5           Q.    Okay.  Are they divided by pod, as well?

 6           A.    Yes.

 7           Q.    All right.  So how many phones are there in

 8    the A1 pod?

 9           A.    Two.

10           Q.    And how many in the A2?

11           A.    Two.

12           Q.    B pod?

13           A.    Two.

14           Q.    C pod?

15           A.    Two.

16           Q.    D pod?

17           A.    Two.

18           Q.    E pod?

19           A.    Two.

20           Q.    F pod?

21           A.    Three.

22           Q.    G pod?

23           A.    Three.

24           Q.    And then --

25           A.    And H would be south block would be two.
```

Ex. B

TODD STEVENS  12/15/2014

Page 17

1        Q.    South block.   Okay.   Then you had old dorm?

2        A.    The dorm we have three.

3        Q.    Okay.

4        A.    And then we also have them in the booking.

5   We have three because we have two holding cells with

6   phones and one out in the booking area, and we have two

7   in the old jail corridor.

8        Q.    Okay.  And how do those work for pretrial

9   detainees?  How does using the phone work?

10       A.    That's a real good question.

11       Q.    Thank you.

12       A.    All I can tell you about the phone is we

13   have -- there it is.  We have a company called Securus

14   that does our phone.

15       Q.    Okay.

16       A.    Okay.  They pick up -- it's a collect call,

17   or they have, you know, their family members whoever

18   put money through Securus.  Then they use it that way.

19       Q.    Okay.  And so that's either inmate makes a

20   collect call to whoever is receiving the call, or

21   someone can put money in that inmate's account so they

22   can make calls?

23       A.    As far as I know, that's how it works, yes.

24       Q.    Do you have any idea how much it costs?

25       A.    Yes, sir, I do.  Well, I believe local -- I

Ex. B

Page 18

1   have a list here.  Local says connect charge is $2.25.

2   It's 40 cents a minute.

3        Q.   Okay.  And then is it?

4        A.   That's for the collect.

5        Q.   Okay.

6        A.   Then there's advanced collect I assume,

7   which would be someone put money on it.

8        Q.   Yes.

9        A.   That's 2.25 to connect again, 40 cents a

10  minute.

11       Q.   So the same?

12       A.   They have a couple of different prices here.

13  It says interstate, and I don't know what that is.

14  There's a couple of differences in it, but I have no

15  idea what that is or what they charge for that.

16            MR. ROTHERT:  Okay.  Can we mark that as an

17  exhibit, too?

18            (Plaintiff's Exhibit 3 marked for

19            identification.)

20       Q.   (BY MR. ROTHERT)  Okay.  So what's been

21  marked now as Plaintiff's Exhibit 3 can you describe

22  what that is?

23       A.   That is a copy of paperwork that Securus

24  sent me for the past five years of what they charge an

25  inmate for telephone calls.

Ex. B

**TODD STEVENS  12/15/2014**

Page 19

1      Q.    And the first page is current?

2      A.    February 11, 2014 to December, 2014.

3      Q.    Okay.  And the second page?

4      A.    October 7, 2013 through February 10 of 2014.

5      Q.    Okay.  And the third page?

6      A.    February 13, 2013 through October 6, 2013.

7      Q.    And the final page?

8      A.    April 20, 2009 through February 12, 2013.

9      Q.    Okay.  That last one was a long period?

10     A.    Yeah.

11     Q.    Okay.  Thank you very much for that.  Are

12   there limitations on when people can make phone calls?

13     A.    For personal calls, yes.  For attorney phone

14   calls legal matters usually, no.  We'll just have to

15   pull them out of their cells to do so.

16     Q.    When are people allowed to make personal

17   phone calls?

18     A.    Usually while they're out of their cells in

19   the dayroom, and that's usually between 7, and when we

20   serve, which could be anywhere from 11 to 12, and then

21   while they're meeting.  They're locked down from right

22   after lunch until dinner service, which is around 4:30.

23     Q.    Okay.

24     A.    That time they're not allowed to use the

25   phone unless they have a legal matter, which we will

Ex. B

**TODD STEVENS   12/15/2014**

Page 20

1   call their attorney and then pull them out and let them

2   make a phone call.

3          Q.   So 7 a.m. to 11 a.m. is basically the time?

4          A.   Average, yes.  Well, then after that then

5   they're let out for dinner service.

6          Q.   Yes.

7          A.   And they're out until I believe 10 p.m., and

8   they can use the phone then, too.

9          Q.   Okay.  From after dinner to --

10         A.   Until lockdown.

11         Q.   Until lockdown?

12         A.   Yeah.

13         Q.   And lockdown's around 10?

14         A.   I believe is 10 o'clock and after, of

15   course, they are not allowed to make any phone calls

16   until the next day.

17         Q.   Very good.

18         A.   Now, that does not include holding.  We have

19   somebody that's in like a 24-hour hold or just received

20   a warrant, new arrest, they have access to a phone.

21   They're in the holding cell.  They have access to a

22   phone all the time to try to make bail.

23         Q.   Okay.  Great.  So the next topic on number

24   one here was instances of contraband in the last five

25   years.  Has contraband been brought into the jail?

Ex. B

TODD STEVENS  12/15/2014

Page 21

1      A.   Yes.

2      Q.   Okay.  And you have a folder here of

3  instances of contraband.  Can you describe what's in

4  this folder?

5      A.   Yeah.  It's a folder of about the last five

6  years.  I'm not sure if it's complete but of instances

7  of contraband located in the jail.

8          MR. ROTHERT:  Okay.  Can we mark this as an

9  exhibit, please?

10             (Plaintiff's Exhibit 4 marked for

11             identification.)

12     Q.   (BY MR. ROTHERT)  Okay.  And how did you

13  gather this information?

14     A.   Oh, I had a deputy go through and check

15  computer records and pull them out of there and print

16  them out.

17     Q.   Okay.  So from the computer records, these

18  would be the instances in which there was contraband in

19  the jail going back how long?

20     A.   Should be five years, and that's what is

21  left.  There were some that was, you know, people have

22  left and took some of the reports, but I believe that

23  should be most of that.

24     Q.   Okay.  Can you -- could you explain what

25  that means if someone left and took the report?

Ex. B

**TODD STEVENS  12/15/2014**

Page 22

```
 1        A.   We have report numbers.

 2        Q.   Yes.

 3        A.   Some people have left, someone deleted their

 4   files out of the computer, and they might have had some

 5   reports in there and they got lost.

 6        Q.   Okay.

 7        A.   These are incident reports that are just for

 8   our purposes.  They don't go anywhere unless we file

 9   charges, and then, of course, we write a criminal

10   report and then send it over.  So, of course, those we

11   don't lose.

12        Q.   Right.  Okay.

13        A.   Yeah.

14        Q.   And when you say people left, would that

15   have been like a detainee who left or employee?

16        A.   No.  I'm sorry, employees.  When they quit

17   and if someone -- if they had a whole list of reports

18   in their file folder and someone deleted them by

19   accident, which they have in the past.

20        Q.   Okay.

21        A.   Then I lose those.

22        Q.   That makes sense.  Thank you very much for

23   explaining that.  Do contraband incidents do they

24   sometimes wind up having criminal charges?

25        A.   Yes.
```

Ex. B

TODD STEVENS   12/15/2014

Page 23

1        Q.    Okay.  Is that in the last five years?  Do

2   you know approximately how many times that's happened?

3        A.    I couldn't tell you that.  Most of the time

4   small stuff as in like some tobacco we usually don't

5   file because, you know, but we're talking if I get some

6   big drugs or something or a weapon and someone's trying

7   to, you know, hurt somebody, yes.

8        Q.    All right.  Well, I think that gets us

9   through topic one.  Thank you.  That was the longest.

10  Moving on, the second topic is the county's current

11  mail policies and former policies for the previous five

12  years, so does the county currently have a policy

13  regarding mail?

14       A.    No.  The sheriff's department does not, the

15  county.

16       Q.    Okay.  And who oversees the -- the jail's

17  overseen by the sheriff's department?

18       A.    Yes.

19       Q.    Okay.  And the sheriff is an elected

20  official?

21       A.    That is correct.

22       Q.    Okay.  County-wide elected?

23       A.    Yes.

24       Q.    All right.  So does the sheriff's department

25  have a mail policy currently?

Ex. B

TODD STEVENS  12/15/2014

Page 24

1      A.   Yes, it does.

2      Q.   Okay.  And do you happen to have a copy of

3  that with you?

4      A.   Yes, I do.

5           MR. ROTHERT:  Okay.  Can we mark that as

6  Exhibit 5, please?

7                (Plaintiff's Exhibit 5 marked for

8                identification.)

9      Q.   (BY MR. ROTHERT)  Okay.  Looking at what's

10 been marked as Plaintiff's Exhibit 5, is that the

11 current mail policy?

12     A.   Yes, it is.

13     Q.   Okay.  And do you know when that went into

14 effect?

15     A.   It went into effect January 1 of 2014.

16          MR. ROTHERT:  Okay.  If we could have this

17 one marked.

18                (Plaintiff's Exhibit 6 marked for

19                identification.)

20     Q.   (BY MR. ROTHERT)  I'm going to hand you

21 what's been marked Plaintiff's Exhibit 6.

22     A.   Okay.

23     Q.   Can you tell me how many pages that is since

24 it's not stapled just to be sure?

25     A.   Appears to be three.

Ex. B

TODD STEVENS  12/15/2014

Page 25

1       Q.    Okay.  Do you know what document is?

2       A.    The first one or both.

3       Q.    That -- is it more than one?

4       A.    Yes.

5       Q.    Okay.  Yes, it is.  So let's -- yes.  Please

6    tell me what both are.  The first page is?

7       A.    First one is a notice change in mail

8    procedures that was effective January 1, 2014 that I

9    wrote.

10      Q.    Okay.  The second one?

11      A.    The second one was a notice of a new e-mail

12   mail option that was effective March 15, 2014.

13      Q.    Okay.  Did you write this one, too?

14      A.    Yes, I did.

15      Q.    All right.  And so these are marked notice.

16   Did this go to somebody?

17      A.    It went to every inmate.

18      Q.    All right.  And every inmate who was in

19   custody at the time?

20      A.    In custody.  I believe for a month after we

21   gave them to everybody that came into the facility.

22      Q.    All right.  Perfect.  So before January 1,

23   2014 did -- was there a different mail policy --

24      A.    Yes, there was.

25      Q.    -- in effect?  Okay.  Do you have a copy of

Ex. B

TODD STEVENS  12/15/2014

1   that?

2          MR. ROTHERT:  Okay.  If we can mark this as

3   Exhibit 7, please.

4              (Plaintiff's Exhibit 7 marked for

5              identification.)

6       Q.   (BY MR. ROTHERT)  Thank you.  Handing you

7   what's been marked as Plaintiff's Exhibit 7, was that

8   the mail policy that was in effect prior to January 1,

9   2014?

10       A.   Yes.

11       Q.   For the -- that was the sheriff's

12   department's policy?

13       A.   That's correct, yes.

14       Q.   Do you know how long that was in effect?

15       A.   No, sir.  I know it was within the last five

16   years.  I don't know when it was written.

17       Q.   Okay.  But it had been in effect four years?

18       A.   It was in effect until this new mail policy

19   came into effect.

20       Q.   And it had been in effect for a number of

21   years?

22       A.   Yes.

23       Q.   Do you know of a -- the policy that came

24   before that?

25       A.   No, sir.  I have no idea.

Ex. B

**TODD STEVENS  12/15/2014**

Page 27

1      Q.    Great.

2                  (Plaintiff's Exhibit 8 marked for

3                  identification.)

4      Q.    (BY MR. ROTHERT)  I'm handing you Exhibit --

5   what's been marked as Exhibit 8.  Let me give a copy to

6   your counsel here.  Can you tell me what that is if you

7   know?

8      A.    Actually, there is two things here.

9      Q.    Right.  Okay.

10     A.    Okay.  It appears to be my inmate mail

11  format change policy and the policy that I wrote.

12     Q.    Was the policy attached to the -- was this

13  all one document originally?

14     A.    Yeah, I had it stapled together.

15     Q.    And you are the author of this?

16     A.    Yes, I am.

17     Q.    Okay.  That's great.  And so who was this --

18  was this addressed to someone or given to someone?

19     A.    It was given to the sheriff of Cape

20  Girardeau County Sheriff's Office.

21     Q.    All right.  And who was that at the time?

22     A.    Sheriff John Jordan.

23     Q.    Okay.  And it still is; correct?

24     A.    That is correct.

25     Q.    All right.  And did this proposal become the

Ex. B

TODD STEVENS  12/15/2014

Page 28

1    policy of the sheriff's department as is?

2         A.   Yes, sir.

3         Q.   All right.  And who made that decision?

4         A.   The sheriff.

5         Q.   And did you identify any -- are the reasons

6    for the change in policy are they all identified in

7    this proposal?

8         A.   Yes, sir.

9         Q.   Okay.  Are there any other reasons for the

10   policy that are not identified in the proposal?

11        A.   Not that I can think of at the moment, no.

12        Q.   Okay.  I think that takes care of topic

13   three.  Moving on to topic four, the disadvantages

14   associated with the postcard only policy.  Have you

15   identified any disadvantages that -- any negative side

16   effects I guess from the policy?

17        A.   Well, making the change proposal I did note

18   that there could be complaints from inmates and

19   families, which there were.  I also noted that most

20   postcards are thick could be used for maybe picking

21   locks or other forms of contraband, which I have not

22   seen that at all.  We haven't had any experience with

23   that.

24        Q.   Okay.  Any other disadvantages?

25        A.   Well, the ACLU is filing lawsuits for it.

Ex. B

TODD STEVENS  12/15/2014

Page 29

1      Q.   Well, there is that, yes.  Okay.  Any

2  others?

3      A.   Not that I'm aware of, no, sir.

4      Q.   All right.  And do you have any idea how

5  many complaints you received from?

6      A.   No, sir, I couldn't tell you that.

7      Q.   Okay.  Now, in your proposal you identified

8  some, you know, some good things while you were

9  proposing the change.  Have any of those come to

10  fruition, any advantages of having the postcard only

11  policy?

12      A.   Well, yes, sir.  I believe it's, you know, a

13  little bit more safer.  We're trying to stop contraband

14  from coming in.  Okay.  Doesn't take as long to do mail

15  because postcards most of them don't even have a stamp,

16  and we can just hand them out, so that saves time.

17  Also we don't allow anything else because we used to

18  have people sending in property, you know.  It would

19  get lost.  We'd be liable for it plus contraband issue

20  also.  We don't accept any of that anymore.

21      Q.   Okay.  How long did it used to take to do

22  mail?

23      A.   It ranged from different times depends on

24  how much mail we have that day, but we have to go open

25  up each piece of mail, search through it, read some of

Ex. B

Page 30

1    it before we could even hand it out.

2        Q.    And you still read through the postcards?

3        A.    No, sir.  We skim through them, but since

4    they're so small, we don't really worry about it too

5    much.  We get them out to the inmates as fast as

6    possible.

7        Q.    Okay.  Thank you.  Are there any other,

8    other than those -- I'm not sure if I asked.  Are there

9    any other advantages that you've experienced from

10   changing to this postcard-only policy?

11       A.    Not that I can think of, no, sir.

12       Q.    All right.  The next topic is adoption and

13   implementation of the postcard-only policy.  So the

14   idea came from you?

15       A.    That is correct.

16       Q.    All right.  And was it adopted by the

17   sheriff?

18       A.    Yes, sir.

19       Q.    Was anyone else involved other than the two

20   of you?

21       A.    Captain James Mulcahy, of course.  I also

22   gave him a copy because he is the jail administrator.

23       Q.    Okay.  Anyone else?

24       A.    Not that I'm aware of, unless you know one

25   of the other two showed them that.

Ex. B

TODD STEVENS  12/15/2014

Page 31

1        Q.    Okay.  So as far as the decision-making

2    process, this was the sheriff's decision?

3        A.    Sheriff makes all decisions for the jail in

4    the sheriff's office.

5        Q.    Okay.  And this policy was implemented

6    beginning on December 1st of 2014?

7        A.    No.  It was January 1st I believe.

8        Q.    I'm sorry, it is January 1st?

9        A.    January 1st.

10        Q.    In my mind, I'm thinking January.  I'm just

11    saying December.

12        A.    Okay.

13        Q.    So the postcard-only policy would've been

14    implemented starting January 1, 2014?

15        A.    That's correct.

16        Q.    All right.  And that's all on that topic.

17    So the only final topic is adoption and implementation

18    of the e-mail option.  When -- when did that come

19    about, the e-mail possibility?

20        A.    That came out about two months after our

21    postcard policy.  We've been thinking about it for a

22    while.  The sergeant at the time came up with the idea.

23    He is no longer with us.  His name was Eric Koehler.

24    We have a, you know, computer.  We have a website, and

25    the inmates' family members, friends can e-mail us, and

Ex. B

**TODD STEVENS  12/15/2014**

Page 32

1    they get charged 35 cents on e-mail or 50 cents a

2    photo.  We don't allow photos in, but we will through

3    the e-mail because we know you can't have contraband

4    through that way.  As soon as they pay, they get their

5    e-mails.  Now, beginning next month are I believe -- I

6    believe it's Securus.  I'm not for sure, but I believe

7    it's Securus got the contract.  We will have the e-mail

8    in each pod so the inmate can do his own e-mailing and

9    everything else through a screen, and we don't have to

10   do anything to do with it.

11        Q.    **And does -- can the inmates send out e-mail**

12   **or just receive?**

13        A.    Now, see, I'm not sure about that part.  I

14   don't know what their contract states.  I do know for a

15   fact that they are going to receive it.

16        Q.    **Okay.**

17        A.    Because the inmate's mail policy they have

18   no limits on what they can send out.  They can buy

19   stationary, envelopes, stamps.  They can send whatever

20   they want out.

21        Q.    **As far as currently, though, is the e-mail**

22   **only incoming?**

23        A.    Currently it's incoming, yes.

24        Q.    **And does the jail staff read the e-mail?**

25        A.    Actually, our sergeants and I do that if I

Ex. B

TODD STEVENS   12/15/2014

Page 33

```
 1    have a chance to help them out with that.

 2         Q.   All right.  And I guess I shouldn't assume.

 3    If detainees are allowed to send out e-mails, you would

 4    have to read those before they went out?

 5         A.   We will not have anything to do with that as

 6    far as I know; however, like I said, I was not in the

 7    contracting phase in that.  It's possible they will

 8    hold all the e-mails and save them because I know they

 9    will track phone calls through Securus, so I assume

10    they can do the same thing, but I'm not sure.

11         Q.   All right.

12         A.   But we won't have -- the regular deputies

13    and corrections officers won't have any access to the

14    e-mail once it's in the pod.

15         Q.   Including the incoming?

16         A.   Yeah.  Incoming or outgoing we shouldn't

17    have any access except like I said unless it's

18    requested, but that's just a guess because we won't go

19    inside the pod.  And they will have a computer screen

20    inside their pod, so when they're in the dayroom same

21    time as the phones they can use their e-mail.

22         Q.   All right.  I'd like to ask you to identify

23    one more thing, Number 9.

24                   (Plaintiff's Exhibit 9 marked for

25                   identification.)
```

Ex. B

TODD STEVENS  12/15/2014

Page 34

1        Q.    (BY MR. ROTHERT)  All right.  Handing you

2    Plaintiff's Exhibit Number 9, which I believe we got

3    from your attorney, can you identify what this is if

4    you know?

5        A.    Well, I don't have a copy with me, but I

6    believe it's some copies from the inmate rule handbook.

7        Q.    Okay.  Is this what is -- this handbook

8    provided to inmates detainees?

9        A.    It is supposed to, yes.

10       Q.    All right.  And this is how they find out

11   what the rules are?

12       A.    Yes.

13       Q.    Okay.  Do you know if this is a current

14   version?

15       A.    We are in the process of changing it because

16   we're also in the process of changing the jail rule

17   book for our employees, also.

18       Q.    All right.

19       A.    Okay.  So this is -- this isn't going to be

20   current.

21       Q.    Okay.

22       A.    Because that is in the works.

23       Q.    All right.

24       A.    Okay.  I believe this's what we have now.

25       Q.    All right.  So if I get arrested today and

Ex. B

TODD STEVENS  12/15/2014

Page 35

1    taken to the jail, this is what I'll get today but

2    maybe not in the future?

3        A.   Won't be in the future, and they should be

4    getting some of this.  But like I said, they also

5    should be getting the current mail and e-mail policy

6    pages.

7        Q.   Okay.  I have no other questions.

8                        EXAMINATION

9    QUESTIONS BY MR. SPRADLING:

10       Q.   I just want to clarify.  There are

11   exceptions to the postcard policy for incoming mail; is

12   that correct?

13       A.   Yes.

14       Q.   Okay.  And what would those exceptions be?

15       A.   Well --

16       Q.   I think they're in your --

17            MR. ROTHERT:  They're in the policy.

18       Q.   (BY MR. SPRADLING)  -- policy, but I just

19   want to go over a couple of those.  Is it denominated

20   as official mail?

21       A.   Yeah, I believe that's what it is

22   denominated in the policy.

23            MR. ROTHERT:  Can you reference what exhibit

24   you're talking about?

25       A.   I'm sorry, Exhibit 5.  The policy states

Ex. B

**TODD STEVENS  12/15/2014**

Page 36

1  official mail, which includes but not limited to, mail

2  from attorneys, the courts, officials of the confining

3  authority, state and local chief executive officers,

4  public officials, local, state, and federal government

5  correspondence shall be sent out without being opened

6  and inspected unless there is compelling evidence of

7  prohibited acts listed in subsection 3A.  Four,

8  incoming mail will only be inspected for possible

9  contraband but not read in the presence of the

10  receiving inmate.  To be classified as privileged mail,

11  the return address on incoming mail or outgoing mail

12  must clearly identify the authority as a qualified

13  correspondent of privileged mail.

14      **Q.   (BY MR. SPRADLING)  So that is part of the**

15  **policy in addition to the postcard policy?**

16      A.   That is correct.

17      **Q.   I just wanted to have that in the record.**

18  **Thank you.**

19          MR. ROTHERT:  So I don't know if you talked

20  to him.  You can either --

21          MR. SPRADLING:  He'll waive his signature.

22          MR. ROTHERT:  Would you like to waive your

23  signature?

24          THE WITNESS:  Yeah.

25

Ex. B

**TODD STEVENS  12/15/2014**

Page 37

1                    (WHEREIN, the deposition was concluded

2                    at 11:16 a.m. and signature was waived.)

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Ex. B

**TODD STEVENS  12/15/2014**

Page 38

1                    CERTIFICATE OF REPORTER

2

3            I, JOANNA CHARLTON, RPR, CCR(MO), CSR(IL),

4     the officer before whom the foregoing deposition was

5     taken, do hereby certify that the witness whose

6     testimony appears in the foregoing deposition was duly

7     sworn by me; that the testimony of said witness was

8     taken by me to the best of my ability and thereafter

9     reduced to typewriting under my direction; that I am

10    neither counsel for, related to, nor employed by any of

11    the parties to the action in which this deposition was

12    taken, and further that I am not a relative or employee

13    of any attorney or counsel employed by the parties

14    thereto, nor financially or otherwise interested in the

15    outcome of the action.

16

17                        _____

18                        JOANNA CHARLTON,

                          RPR, CCR(MO), CSR(IL)

19

20

21

22

23

24

25

Ex. B

TODD STEVENS   12/15/2014

**A**

ability 38:8
able 11:24
accept 29:20
access 20:20,21
   33:13,17
accident 22:19
account 17:21
ACLU 28:25
action 38:11,15
acts 36:7
addition 36:15
address 36:11
addressed 27:18
administrator
   6:11 30:22
adopted 30:16
adoption 30:12
   31:17
advanced 18:6
advantages 8:16
   29:10 30:9
afternoon 3:13
age 5:9
AGREED 5:1
allow 29:17 32:2
allowed 19:16,24
   20:15 33:3
Amended 6:19
AMERICAN 4:4
Andrew 4:4
and/or 9:19
answers 8:17
Anthony 2:15
   4:3
anymore 29:20
appears 11:2
   24:25 27:10
   38:6
approximately
   23:2
April 19:8
area 9:3 17:6
arrest 20:20
arrested 34:25
asked 13:16 30:8
asking 13:11

assigned 6:14
   14:3
assist 6:10
associated 28:14
assume 18:6 33:2
   33:9
attached 2:15
   27:12
attorney 19:13
   20:1 34:3 38:13
attorneys 36:2
author 27:15
authority 36:3,12
average 10:7,8
   20:4
aware 29:3 30:24
a.m 1:17 4:9
   14:17,18 15:3,3
   15:5 20:3,3
   37:2
A1 9:4 14:17
   15:25 16:8
A2 9:4 14:17
   16:10

**B**

B 2:7 9:4 15:2,3
   16:12
back 10:11 21:19
bail 20:22
basically 20:3
beds 8:8,18,20
   9:4,4,4,5,5,5,5
   9:6,6,7,8
beginning 31:6
   32:5
behalf 1:11 3:19
   5:9
believe 9:14 13:4
   13:15 15:23,25
   16:4 17:25 20:7
   20:14 21:22
   25:20 29:12
   31:7 32:5,6,6
   34:2,6,24 35:21
best 38:8
big 23:6

bit 13:16 29:13
block 9:7,10,13
   14:24 15:20,21
   16:25 17:1
book 34:17
booking 9:3 17:4
   17:6
break 11:12
bring 10:5
Broadway 3:14
   4:10
brought 6:22
   20:25
buy 32:18

**C**

C 4:1 9:5 15:4
   16:14
calculator 9:12
call 2:10 17:16
   17:20,20 20:1,2
called 17:13
calls 8:11 17:22
   18:25 19:12,13
   19:14,17 20:15
   33:9
Cape 1:6 3:6,14
   3:18 4:11 6:1,3
   6:7 7:1 27:19
captain 11:14
   12:7,13,18,22
   13:1 30:21
care 6:9,11 11:22
   28:12
carry 11:25
case 7:16
cause 3:16
CCR(MO) 3:15
   4:14 5:4 38:3
   38:18
cell 20:21
cells 9:9 17:5
   19:15,18
cents 18:2,9 32:1
   32:1
certain 3:16
CERTIFICATE

38:1
certified 11:24
certify 38:5
chance 33:1
change 25:7
   27:11 28:6,17
   29:9
changes 10:17
changing 30:10
   34:15,16
charge 12:1 18:1
   18:15,24
charged 32:1
charges 2:10
   22:9,24
Charlton 3:15
   4:14 5:4 38:3
   38:18
check 21:14
CHERYL 1:3
   3:3,18
chief 36:3
Christopher 5:17
CIVIL 4:4
clarify 35:10
classified 36:10
clearly 36:12
collect 17:16,20
   18:4,6
come 29:9 31:18
coming 29:14
company 17:13
compelling 36:6
complaints 28:18
   29:5
complete 21:6
computer 21:15
   21:17 22:4
   31:24 33:19
concluded 37:1
confinement 9:8
confining 36:2
connect 18:1,9
consistent 10:14
contraband 2:11
   8:12 20:24,25
   21:3,7,18 22:23

28:21 29:13,19
   32:3 36:9
contract 32:7,14
contracting 33:7
copies 34:6
copy 18:23 24:2
   25:25 27:5
   30:22 34:5
correct 23:21
   26:13 27:23,24
   30:15 31:15
   35:12 36:16
correction 8:8
   11:15 13:9
   14:23 15:5
corrections 11:8
   11:19,20 12:4,8
   12:14,19,23
   13:1 33:13
correspondence
   36:5
correspondent
   36:13
corridor 17:7
costs 8:11 17:24
could've 10:3
counsel 5:2,2
   27:6 38:10,13
count 2:10 11:2
county 1:6 3:6,18
   6:1,4,7 7:1,17
   8:6,18 11:9
   23:12,15 27:20
county's 23:10
County-wide
   23:22
couple 18:12,14
   35:19
course 14:8
   20:15 22:9,10
   30:21
Court 1:1 3:1,17
   4:13
courts 36:2
criminal 22:9,24
CSR(IL) 3:15
   4:14 5:4 38:3

Ex. B

TODD STEVENS   12/15/2014

38:18
**current** 8:6 9:19
19:1 23:10
24:11 34:13,20
35:5
**currently** 8:19
9:23,24 23:12
23:25 32:21,23
**custody** 25:19,20

**D**

**D** 2:1 9:5 15:7
16:16
**daily** 2:10 8:9
10:9,17 11:2
**danger** 9:20
**data** 8:7
**day** 3:13 11:5
14:1 15:16
20:16 29:24
**dayroom** 19:19
33:20
**December** 1:12
3:11 19:2 31:6
31:11
**decision** 14:4
28:3 31:2
**decisions** 31:3
**decision-making**
31:1
**Defendant** 1:8
3:8 4:8 5:3
**deleted** 22:3,18
**denominated**
35:19,22
**department**
13:10,14 23:14
23:17,24 28:1
**department's**
26:12
**depends** 29:23
**depose** 7:15
**deposed** 7:6,9
**deposes** 5:10
**deposition** 1:10
1:17 3:10 5:3
6:20 7:2,10,14

7:20,24,25 37:1
38:4,6,11
**deputies** 11:16
12:9,14,20,23
13:2 33:12
**deputy** 11:23,23
12:4 21:14
**describe** 9:1
18:21 21:3
**DESCRIPTION**
2:8
**designated** 7:1
**detainee** 22:15
**detainees** 8:8
9:22,23 17:9
33:3 34:8
**difference** 11:23
**differences** 18:14
**different** 8:24,25
14:1,9 18:12
25:23 29:23
**dinner** 19:22
20:5,9
**direction** 38:9
**disadvantages**
28:13,15,24
**discussion** 10:22
**District** 1:1,1 3:1
3:1,16,17
**divided** 8:23 16:5
**division** 1:2 3:2
3:18 6:5,7
**document** 25:1
27:13
**dorm** 9:8 15:19
17:1,2
**drugs** 23:6
**duly** 38:6
**duties** 6:14 11:13

**E**

**E** 2:1,7 4:1,1 9:5
15:9 16:18
**Eastern** 1:1 3:1
3:17 4:5
**effect** 24:14,15
25:25 26:8,14

26:17,18,19,20
**effective** 25:8,12
**effects** 28:16
**eight** 3:12
**either** 12:3 17:19
36:20
**elected** 23:19,22
**employed** 5:25
6:1 38:10,13
**employee** 11:11
22:15 38:12
**employees** 6:11
22:16 34:17
**envelopes** 32:19
**Eric** 31:23
**Especially** 7:24
**Esq** 4:3,4,9
**everybody** 25:21
**evidence** 36:6
**exact** 11:22
**EXAMINATI...**
5:11 35:8
**examined** 3:11
5:9
**exceptions** 35:11
35:14
**executive** 36:3
**exhibit** 2:8,9,10
2:10,11,11,12
2:12,13,13 5:13
6:18 10:23 11:1
18:17,18,21
21:9,10 24:6,7
24:10,18,21
26:3,4,7 27:2,4
27:5 33:24 34:2
35:23,25
**exhibits** 2:14
**experience** 28:22
**experienced** 30:9
**explain** 6:9 21:24
**explaining** 22:23
**expressly** 5:6
**e-mail** 25:11
31:18,19,25
32:1,3,7,11,21
32:24 33:14,21

35:5
**e-mailing** 32:8
**e-mails** 32:5 33:3
33:8

**F**

**F** 9:5 15:11 16:20
**facility** 25:21
**fact** 32:15
**families** 28:19
**family** 17:17
31:25
**fantastic** 6:17
**far** 10:10 11:7
17:23 31:1
32:21 33:6
**fast** 30:5
**February** 19:2,4
19:6,8
**federal** 36:4
**felony** 14:10
**female** 14:8,13
14:13,16
**females** 14:24
**figure** 9:11
**file** 22:8,18 23:5
**files** 22:4
**filing** 28:25
**final** 19:7 31:17
**financially** 38:14
**find** 34:10
**first** 6:19 8:5
14:13 19:1 25:2
25:6,7
**fit** 15:17
**five** 8:7,19,22
10:15 11:3,5
18:24 20:24
21:5,20 23:1,11
26:15
**folder** 21:2,4,5
22:18
**foregoing** 38:4,6
**forenoon** 3:12
**format** 27:11
**former** 23:11
**forms** 28:21

**four** 26:17 28:13
36:7
**friends** 31:25
**fruition** 29:10
**full** 5:15 11:11
**further** 38:12
**future** 35:2,3

**G**

**G** 9:6,13 15:13
15:14 16:22
**gather** 21:13
**gathering** 7:17
**getting** 35:4,5
**Girardeau** 1:6
3:6,14,19 4:11
6:1,3,7 7:1
27:20
**give** 27:5
**given** 27:18,19
**go** 7:19,21 10:19
14:9 21:14 22:8
25:16 29:24
33:18 35:19
**going** 7:21 8:16
21:19 24:20
32:15 34:19
**good** 5:15 8:15
12:17 13:16
17:10 20:17
29:8
**government** 36:4
**great** 7:6 8:5
20:23 27:1,17
**groups** 8:24,25
**guess** 10:13
28:16 33:2,18
**gun** 11:25

**H**

**H** 2:7 16:25
**hand** 24:20 29:16
30:1
**handbook** 2:13
34:6,7
**handed** 6:18
**handing** 26:6

Ex. B

**TODD STEVENS   12/15/2014**

27:4 34:1
**handles** 12:2
**happen** 24:2
**happened** 23:2
**hard** 6:9
**held** 10:22
**help** 33:1
**He'll** 36:21
**historical** 8:6
**hold** 20:19 33:8
**holding** 15:14
  17:5 20:18,21
**holds** 14:24
**hours** 3:11 8:10
  8:10 13:24,25
  14:12 15:1,22
**hurt** 23:7

**I**

**idea** 7:11 17:24
  18:15 26:25
  29:4 30:14
  31:22
**identification**
  5:14 10:24
  18:19 21:11
  24:8,19 26:5
  27:3 33:25
**identified** 28:6
  28:10,15 29:7
**identify** 28:5
  33:22 34:3
  36:12
**III** 4:9
**implementation**
  30:13 31:17
**implemented**
  31:5,14
**incident** 22:7
**incidents** 22:23
**include** 9:13
  20:18
**includes** 36:1
**including** 8:7
  33:15
**incoming** 32:22
  32:23 33:15,16

35:11 36:8,11
**information** 7:17
  13:18 21:13
**inmate** 2:10,13
  9:20 11:2 17:19
  18:25 25:17,18
  27:10 32:8 34:6
  36:10
**inmates** 10:9
  11:5,22 28:18
  30:5 31:25
  32:11 34:8
**inmate's** 17:21
  32:17
**inside** 33:19,20
**inspected** 36:6,8
**instances** 2:11
  8:12 20:24 21:3
  21:6,18
**intercoms** 9:19
**interested** 38:14
**interstate** 18:13
**involved** 6:16
  30:19
**issue** 29:19

**J**

**jail** 6:5,7,10,10
  6:12,16 8:6,18
  9:16,18,18,23
  11:5,9,21 13:9
  13:11,24,25
  14:25 15:23
  17:7 20:25 21:7
  21:19 30:22
  31:3 32:24
  34:16 35:1
**jailers** 12:19
**jails** 16:3
**jail's** 23:16
**James** 30:21
**January** 24:15
  25:8,22 26:8
  31:7,8,9,10,14
**Joanna** 3:15 4:14
  5:4 38:3,18
**job** 12:2,3

**jobs** 12:6
**John** 27:22
**Jordan** 27:22

**K**

**keep** 13:19
**kept** 13:22
**kind** 6:9 7:13
**know** 7:16,19,20
  8:2,12,16 9:22
  10:2,4 11:7
  16:2 17:17,23
  18:13 21:21
  23:2,5,7 24:13
  25:1 26:14,15
  26:16,23 27:7
  29:8,12,18
  30:24 31:24
  32:3,14,14 33:6
  33:8 34:4,13
  36:19
**knows** 7:18
**Koehler** 31:23

**L**

**late** 10:8,10
**lawful** 5:9
**lawsuits** 28:25
**left** 21:21,22,25
  22:3,14,15
**legal** 19:14,25
**length** 14:11
**let's** 25:5
**liable** 29:19
**LIBERTIES** 4:4
**lieutenant** 5:22
  5:23,24 6:5,6
  11:14 12:7,13
  12:18,22
**limitations** 19:12
**limited** 36:1
**limits** 32:18
**list** 18:1 22:17
**listed** 36:7
**Litigation** 4:14
**little** 13:16 29:13
**local** 17:25 18:1

36:3,4
**located** 21:7
**lockdown** 20:10
  20:11
**lockdown's**
  20:13
**locked** 19:21
**locks** 28:21
**long** 19:9 21:19
  26:14 29:14,21
**longer** 31:23
**longest** 23:9
**look** 10:25
**looked** 8:14 10:3
**Looking** 24:9
**lose** 22:11,21
**lost** 22:5 29:19
**lot** 7:13 15:16
**Louis** 4:6,15
**lunch** 19:22

**M**

**mail** 2:11,12 8:9
  12:1 13:17,17
  23:11,13,25
  24:11 25:7,12
  25:23 26:8,18
  27:10 29:14,22
  29:24,25 32:17
  35:5,11,20 36:1
  36:1,8,10,11,11
  36:13
**making** 8:11
  28:17
**male** 14:8,19
**man** 7:18
**March** 25:12
**mark** 18:16 21:8
  24:5 26:2
**marked** 5:13
  6:18 10:23
  18:18,21 21:10
  24:7,10,17,18
  24:21 25:15
  26:4,7 27:2,5
  33:24
**matter** 19:25

**matters** 19:14
**McNulty** 4:4
**mean** 10:10
**means** 21:25
**meeting** 19:21
**members** 17:17
  31:25
**mentioned** 15:18
**Midwest** 4:14
**mind** 31:10
**minute** 18:2,10
**misdemeanor**
  14:10
**Missouri** 1:1,7
  3:1,7,14,17,19
  4:5,6,11,15
  11:24
**mister** 5:22
**moment** 10:20
  28:11
**money** 17:18,21
  18:7
**month** 25:20
  32:5
**months** 31:20
**morning** 5:15
**Moving** 23:10
  28:13
**Mulcahy** 30:21

**N**

**N** 2:1 4:1
**name** 5:16,19
  31:23
**needs** 11:21
**negative** 28:15
**neither** 38:10
**new** 9:18 20:20
  25:11 26:18
**nine** 12:19,23
  13:1,2
**North** 4:15
**note** 28:17
**noted** 28:19
**notice** 2:9 6:19
  7:2 25:7,11,15
**Notices** 2:12

Ex. B

TODD STEVENS   12/15/2014

**number** 8:7,8,10
8:11,18,20 10:7
10:8 16:4 20:23
26:20 33:23
34:2
**numbers** 8:8
22:1
**Numerous** 8:25

## O

**October** 19:4,6
**office** 3:13 6:2,4
6:8 27:20 31:4
**officer** 11:19,20
12:4 38:4
**officers** 8:9 11:9
11:15 12:8,14
12:19,23 13:2
33:13 36:3
**official** 23:20
35:20 36:1
**officials** 36:2,4
**off-the-record**
10:21
**Oh** 21:14
**Okay** 5:24 6:13
6:17,17,22,25
7:6,12,22 8:5
8:15,21,23 9:3
9:11,15,17,22
10:6,10,19 11:8
11:12,17,20
12:5,12,17
13:13,20 14:7
14:15,19,22
15:18 16:2,5
17:1,3,8,15,16
17:19 18:3,5,16
18:20 19:3,5,9
19:11,23 20:9
20:23 21:2,8,12
21:17,24 22:6
22:12,20 23:1
23:16,19,22
24:2,5,9,13,16
24:22 25:1,5,10
25:13,25 26:2

26:17 27:9,10
27:17,23 28:9
28:12,24 29:1,7
29:14,21 30:7
30:23 31:1,5,12
32:16 34:7,13
34:19,21,24
35:7,14
**old** 9:8,16,18
14:25 15:19
17:1,7
**once** 33:14
**open** 29:24
**opened** 36:5
**option** 25:12
31:18
**Original** 2:14
**originally** 27:13
**outcome** 38:15
**outgoing** 33:16
36:11
**overseen** 23:17
**oversees** 23:16
**o'clock** 3:12,12
20:14
**O2** 15:25

## P

**P** 4:1,1
**page** 2:2,8 19:1,3
19:5,7 25:6
**pages** 24:23 35:6
**paperwork** 18:23
**part** 7:16 9:16
11:18 14:25
32:13 36:14
**parties** 38:11,13
**part-time** 11:10
**pay** 32:4
**pending** 3:16
**people** 10:6 12:5
15:15 19:12,16
21:21 22:3,14
29:18
**Perfect** 25:22
**period** 19:9
**person** 6:25

**personal** 19:13
19:16
**phase** 33:7
**phone** 8:11 17:9
17:12,14 19:12
19:13,17,25
20:2,8,15,20,22
33:9
**phones** 8:11 16:2
16:7 17:6 33:21
**photo** 32:2
**photos** 32:2
**pick** 17:16
**picked** 7:17
**picking** 7:14
28:20
**piece** 29:25
**Plaintiff** 1:4,11
3:4,19 4:2 5:2
5:10
**Plaintiff's** 2:9,10
2:10,11,11,12
2:12,13,13 5:13
6:18 10:23
18:18,21 21:10
24:7,10,18,21
26:4,7 27:2
33:24 34:2
**please** 5:16 21:9
24:6 25:5 26:3
**plus** 29:19
**pod** 9:4,4,5,5,5,6
9:6 14:2,4,4,11
14:17,17 15:2,3
15:4,7,9,11,13
15:14 16:5,8,12
16:14,16,18,20
16:22 32:8
33:14,19,20
**pods** 9:4 14:9,13
14:14,16,19
**policies** 2:13
23:11,11
**policy** 2:11,12
23:12,25 24:11
25:23 26:8,12
26:18,23 27:11

27:11,12 28:1,6
28:10,14,16
29:11 30:10,13
31:5,13,21
32:17 35:5,11
35:17,18,22,25
36:15,15
**position** 6:3
**possibility** 31:19
**possible** 30:6
33:7 36:8
**postcard** 28:14
29:10 31:21
35:11 36:15
**postcards** 28:20
29:15 30:2
**postcard-only**
30:10,13 31:13
**prepare** 7:4,12
**presence** 36:9
**pretrial** 17:8
**pretty** 6:16
**previous** 8:7,19
23:11
**prices** 18:12
**print** 21:15
**printing** 5:5
**printout** 10:16
**prior** 26:8
**privileged** 36:10
36:13
**probably** 10:12
11:18
**problems** 6:10
**procedures** 25:8
**process** 31:2
34:15,16
**produced** 3:10
5:9
**prohibited** 36:7
**property** 29:18
**proposal** 27:25
28:7,10,17 29:7
**proposing** 29:9
**provided** 34:8
**public** 36:4
**pull** 19:15 20:1

21:15
**purposes** 22:8
**put** 17:18,21 18:7
**p.m** 15:5,6,6,8,8
15:10,10,12,12
20:7

## Q

**qualified** 36:12
**question** 8:2 10:4
17:10
**questions** 2:2
5:12 8:1,16
35:7,9
**quit** 22:16

## R

**R** 4:1
**ranged** 29:23
**ranges** 10:17
**rarely** 9:9
**read** 29:25 30:2
32:24 33:4 36:9
**ready** 7:4
**real** 17:10
**really** 7:25 30:4
**reasons** 28:5,9
**receive** 32:12,15
**received** 8:9
13:17 20:19
29:5
**receiving** 17:20
36:10
**record** 5:16
10:20 36:17
**records** 21:15,17
**reduced** 38:9
**reference** 35:23
**regarding** 23:13
**regular** 7:14,20
33:12
**related** 38:10
**relative** 38:12
**report** 21:25 22:1
22:10
**reporter** 2:14
4:13 38:1

Ex. B

**TODD STEVENS   12/15/2014**

reports 21:22 22:5,7,17
requested 33:18
rest 14:19
retained 2:14
return 36:11
right 5:18,21 6:6 7:9,24 8:5 9:3 10:25 11:4 12:1 13:3,5,8,22 14:3 15:1 16:7 19:21 22:12 23:8,24 25:15 25:18,22 27:9 27:21,25 28:3 29:4 30:12,16 31:16 33:2,11 33:22 34:1,10 34:18,23,25
room 14:6
Rothert 2:3 4:3 5:12 10:19,25 18:16,20 21:8 21:12 24:5,9,16 24:20 26:2,6 27:4 34:1 35:17 35:23 36:19,22
Rothert's 2:15
RPR 3:15 4:14 5:4 38:3,18
rule 2:13 34:6,16
rules 7:13 15:24 34:11

___

**S**

S 2:7 4:1
safer 29:13
safety 9:20
Saturday 14:12
Saturdays 13:25
save 33:8
saves 29:16
saying 31:11
says 5:10 18:1,13
screen 32:9 33:19
search 29:25
second 19:3

23:10 25:10,11
security 9:20
Securus 17:13,18 18:23 32:6,7 33:9
see 32:13
seen 6:20 28:22
send 22:10 32:11 32:18,19 33:3
sending 29:18
sense 22:22
sent 7:15 18:24 36:5
sentenced 14:24
separate 14:9
sergeant 12:14 12:18,22 31:22
sergeants 11:15 12:8 13:1 32:25
serve 19:20
service 19:22 20:5
Services 4:14
seven 11:15 12:8 12:14
sheriff 23:19 27:19,22 28:4 30:17 31:3
sheriff's 6:2,4,7 13:10,13 23:14 23:17,24 26:11 27:20 28:1 31:2 31:4
shorthand 5:4
show 11:4
showed 30:25
side 28:15
signature 5:5 36:21,23 37:2
SIMPSON 1:3 3:3,18
sir 7:5,8,23 8:4 9:14 14:21 17:25 26:15,25 28:2,8 29:3,6 29:12 30:3,11 30:18

six 3:12 9:6
skim 30:3
slip 15:25
small 23:4 30:4
smaller 14:14,16
somebody 20:19 23:7 25:16
someone's 14:4 23:6
soon 32:4
sorry 12:19 22:16 31:8 35:25
south 9:7,9 14:23 15:19,20,21 16:25 17:1
Southeastern 1:2 3:2,17
specific 7:22
spell 5:18
spradlaw@sw... 4:12
Spradling 2:4 3:13,14 4:9,10 4:10 35:9,18 36:14,21
St 4:6,15
staff 32:24
stamp 29:14
stamps 32:19
stapled 24:24 27:14
start 13:3
started 13:4,15
starting 1:17 31:14
state 5:15 11:24 36:3,4
states 1:1 3:1,16 32:14 35:25
stationary 32:19
Stevens 1:10 3:10 5:8,17,21,24
STIPULATED 5:1
stop 29:13
Street 4:5,15

stuff 23:4
subsection 36:7
supposed 34:9
sure 7:13 9:11 21:6 24:24 30:8 32:6,13 33:10
sworn 3:10 5:9 38:7
S-T-E-V-E-N-S 5:20

___

**T**

T 2:7
take 6:9,11 29:14 29:21
taken 1:11 5:3 35:1 38:5,8,12
takes 11:22 28:12
talked 36:19
talking 7:22 23:5 35:24
telephone 2:10 18:25
tell 8:17 10:16 11:1 13:21 17:12 23:3 24:23 25:6 27:6 29:6
ten 9:4 12:8,19 12:23
testify 7:1
testimony 38:6,7
Thank 5:24 11:8 17:11 19:11 22:22 23:9 26:6 30:7 36:18
thereto 38:14
thick 28:20
thing 11:23 33:10,23
things 27:8 29:8
think 23:8 28:11 28:12 30:11 35:16
thinking 31:10 31:21
third 19:5

this's 34:24
three 9:4 13:6 16:21,23 17:2,5 24:25 28:13
time 1:17 9:7 10:21 11:10,11 11:18 14:14,15 19:24 20:3,22 23:3 25:19 27:21 29:16 31:22 33:21
times 14:2 15:16 23:2 29:23
title 12:2,3
titled 6:19
titles 11:13,14
tobacco 23:4
today 6:23 10:1 34:25 35:1
Todd 1:10 3:10 5:8,17
told 10:3
topic 8:6,12 20:23 23:9,10 28:12,13 30:12 31:16,17
topics 7:2,15,19 7:22
total 8:20 12:10 12:11,15,16,20 12:23 13:2,9,13 16:4
track 13:19,22 33:9
transcribed 5:5
transcript 2:15
transports 11:25
trick 8:1
tricky 8:3
trothert@aclu-... 4:7
try 14:9 20:22
trying 7:25 8:2 23:6 29:13
two 9:8 11:15 12:7 13:1 16:9 16:11,13,15,17

___

Ex. B

TODD STEVENS   12/15/2014

16:19,25 17:5,6
27:8 30:19,25
31:20
**type** 8:9
**typewriting** 38:9

**U**

**understand** 8:1
**UNION** 4:4
**United** 1:1 3:1,16
**use** 9:7,13,15,21
17:18 19:24
20:8 33:21
**usually** 10:6
15:14 19:14,18
19:19 23:4

**V**

**version** 34:14
**video** 9:19
**visitation** 15:24
**visiting** 8:10,10
13:24,25 14:12
14:15 15:1,22
**volume** 8:9
**vs** 1:5 3:5,18

**W**

**waive** 36:21,22
**waived** 5:6 37:2
**want** 7:18 32:20
35:10,19
**wanted** 7:15
36:17
**warrant** 20:20
**way** 17:18 32:4
**weapon** 23:6
**website** 31:24
**went** 24:13,15
25:17 33:4
**we'll** 7:19,21
15:16 19:14
**we're** 7:16 10:9
23:5 29:13
34:16
**We've** 31:21
**Whittier** 4:5

**wind** 22:24
**witness** 5:6 36:24
38:5,7
**work** 6:12 17:8,9
**worked** 11:9
**works** 17:23
34:22
**worry** 30:4
**would've** 31:13
**write** 22:9 25:13
**written** 26:16
**wrote** 25:9 27:11

**X**

**X** 2:1,7

**Y**

**Yeah** 6:15 9:25
10:2 13:12
19:10 20:12
21:5 22:13
27:14 33:16
35:21 36:24
**year** 10:12
**years** 8:7,19,22
10:15 11:3,6
13:6 18:24
20:25 21:6,20
23:1,12 26:16
26:17,21

**$**

**$2.25** 18:1

**1**

**1** 2:9 5:13 6:18
15:6,8 24:15
25:8,22 26:8
31:14
**1st** 31:6,7,8,9
**1-800-280-3376**
4:16
**1:14-cv-13-CEJ**
1:5 3:5
**10** 2:10 14:18
15:3 19:4 20:7
20:13,14
**10:40** 1:17

**11** 15:3 19:2,20
20:3
**11th** 4:15
**11:16** 37:2
**12** 9:4,7 11:16
12:14 15:5,6
19:8,20
**13** 19:6
**15** 1:12 3:11
25:12
**150** 10:17
**18** 2:10 9:6,13
**1838** 3:14 4:10

**2**

**2** 2:10 10:23 11:1
15:8,10
**2.25** 18:9
**20** 19:8
**200** 10:9,11
**2001** 13:15
**2009** 12:25 19:8
**2010** 12:21
**2011** 12:17 13:4
13:7
**2012** 12:12,13
**2013** 12:5,7 19:4
19:6,6,8
**2014** 1:12 3:11
19:2,2,4 24:15
25:8,12,23 26:9
31:6,14
**21** 2:11 12:10,11
13:2
**22** 12:16,20,24
**223** 8:20 9:12
**23** 11:10,11,12
**24** 2:11,12 9:4,5
9:5,5
**24-hour** 20:19
**240** 10:18
**26** 2:12
**27** 2:13
**28** 16:4

**3**

**3** 2:10 15:10,12

15:15 18:18,21
**3A** 36:7
**30(b)(6)** 6:19
7:10
**314** 4:6,16
**32** 9:6,8
**33** 2:13
**335-8296** 4:11
**35** 2:4 32:1

**4**

**4** 2:11 15:12,15
21:10
**4:30** 19:22
**40** 18:2,9
**454** 4:5

**5**

**5** 2:3,9,11 24:6,7
24:10 35:25
**50** 32:1
**573** 4:11

**6**

**6** 2:12 19:6 24:18
24:21
**63101** 4:15
**63108** 4:6
**63702** 4:11
**644-2191** 4:16
**652-3114** 4:6

**7**

**7** 2:12 19:4,19
20:3 26:3,4,7
**711** 4:15

**8**

**8** 2:13 27:2,5

**9**

**9** 2:13 14:17
33:23,24 34:2
**9:30** 14:17,17

Ex. B

# THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI
## SOUTHEASTERN DIVISION

Cheryl Simpson,              )
                                 )
                Plaintiff,    )
                                 )
v.                                 )  No.    1:14-cv-13-CEJ
                                 )
County of Cape Girardeau, Missouri,    )
                                 )
                Defendant.  )

## First Amended Notice of 30(b)(6) Deposition

TO:    Cape Girardeau County
        by its attorney, A.M. Spradling, III
        1838 Broadway, P.O. Drawer 1119
        Cape Girardeau, MO 63702-1119
        (573)335-8296 Fax:(573)335-8525
        spradlaw@swbell.net

PLEASE TAKE NOTICE that, pursuant to Federal Rule of Civil Procedure 30(b)(6), the undersigned will take the deposition, on oral examination before a stenographer, of Defendant County of Cape Girardeau, Missouri, on **December 15, 2014,** commencing at <u>10:30 a.m.</u>, at the <u>office Defendant's attorney (Spradling & Spradling)</u>, and continuing between the hours of 10:30 a.m. and 5:00 p.m. from day to day thereafter until completed. Such deposition is intended to be used for any lawful and proper purposes, including use at trial as evidence.

Pursuant to Rule 30(b)(6), Defendant County of Cape Girardeau, Missouri, shall designate one or more officers, directors, managing agents, or other persons who shall be designated to testify on behalf of County of Cape Girardeau,



PLAINTIFF'S EXHIBIT
Ex. B 12-15-14

Missouri, regarding all information known or reasonably available to County of Cape Girardeau, Missouri, with respect to the following:

(1) County Jail current and historical data, for the previous five year, including number of beds, number of detainees, number of corrections officers, the volume and type of mail received daily, visiting hours, number of visitors, number of phones, cost of making phone calls, and instances of contraband;

(2) The County's current mail policies and former policies for the previous five years;

(3) The "INMATE MAIL FORMAT CHANGE PROPOSAL" letter dated October 4, 2013;

(4) The disadvantages associated with the County's postcard-only policy;

(5) The County's interest(s) advanced by implementing the postcard-only policy;

(6) Adoption and implementation of the County's postcard-only policy; and

(7) Adoption and implementation of the "New E-mail Option".

To the extent that more than one deponent is identified, County of Cape Girardeau, Missouri, shall state in advance of the deposition which portions of this notice each deponent is prepared to address.

Ex. B

Anthony E. Rothert, #44827
Grant R. Doty, #60788
Andrew McNulty, # 67138
AMERICAN CIVIL LIBERTIES
    UNION OF MISSOURI FOUNDATION
454 Whittier Street
St. Louis, Missouri 63108
Phone: (314) 652-3114
Email: trothert@aclu-mo.org
          gdoty@aclu-mo.org
          amcnulty@aclu-mo.org

Gillian R. Wilcox, #61278
AMERICAN CIVIL LIBERTIES
    UNION OF MISSOURI FOUNDATION
3601 Main Street
Kansas City, Missouri 64111
PHONE: (816) 470-9938
FAX: (314) 652-3112
Email: gwilcox@aclu-mo.org

ATTORNEYS FOR PLAINTIFF

## CERTIFICATE OF SERVICE

I hereby certify that on November 26, 2014, I emailed and mailed the foregoing to:

A.M. SPRADLING, III
Spradling & Spradling
1838 Broadway, P.O. Box 1119
Cape Girardeau, Missouri 63702-1119

spradlaw@swbell.net

**ATTORNEYS FOR DEFENDANTS**

Ex. B



454 Whittier Street
St. Louis, MO 63108



FIRST-CLASS MAIL

11/26/2014
US POSTAGE
$00.48

ZIP 63108
041L10236815

A.M. SPRADLING, III
Spradling & Spradling
1838 Broadway, P.O. Box 1119
Cape Girardeau, Missouri 63702-1119

Ex. B

# Cape Girardeau Co. Sheriff's Office
216 N. Missouri  Jackson, MO  63755

## Inmate Daily Count
For All Agencies
01/01/2010  to 03/31/2012

| Date | Daily Inmate Count | New Incarcerations | New Releases |
|------|--------------------|--------------------|--------------|
| 01/01/2010 | 213 | 10 | 7 |
| 01/02/2010 | 217 | 11 | 10 |
| 01/03/2010 | 214 | 7 | 3 |
| 01/04/2010 | 223 | 12 | 12 |
| 01/05/2010 | 213 | 2 | 10 |
| 01/06/2010 | 212 | 9 | 7 |
| 01/07/2010 | 213 | 8 | 4 |
| 01/08/2010 | 216 | 7 | 8 |
| 01/09/2010 | 214 | 6 | 3 |
| 01/10/2010 | 213 | 2 | 7 |
| 01/11/2010 | 218 | 12 | 12 |
| 01/12/2010 | 213 | 7 | 10 |
| 01/13/2010 | 222 | 19 | 11 |
| 01/14/2010 | 220 | 9 | 7 |
| 01/15/2010 | 226 | 13 | 11 |
| 01/16/2010 | 219 | 4 | 9 |
| 01/17/2010 | 219 | 9 | 17 |
| 01/18/2010 | 214 | 12 | 10 |
| 01/19/2010 | 214 | 10 | 12 |
| 01/20/2010 | 214 | 12 | 6 |
| 01/21/2010 | 225 | 17 | 10 |
| 01/22/2010 | 231 | 16 | 13 |
| 01/23/2010 | 225 | 7 | 5 |
| 01/24/2010 | 226 | 6 | 12 |
| 01/25/2010 | 226 | 12 | 12 |
| 01/26/2010 | 223 | 9 | 8 |
| 01/27/2010 | 222 | 7 | 6 |
| 01/28/2010 | 229 | 13 | 9 |
| 01/29/2010 | 227 | 7 | 7 |
| 01/30/2010 | 226 | 6 | 2 |
| 01/31/2010 | 225 | 1 | 11 |
| 02/01/2010 | 225 | 11 | 6 |
| 02/02/2010 | 228 | 9 | 12 |

Officer

/  /

(c) 1994 - 2005 Information Techn...    ..nc.  St. Louis, MO (314) ...-9115



PLAINTIFF'S
EXHIBIT
2

JC 12-1514

Ex. B

# Cape Girardeau Co. Sheriff's Office

216 N. Missouri  Jackson, MO  63755

## Inmate Daily Count

For All Agencies

01/01/2010  to 03/31/2012

| Date | Daily Inmate Count | New Incarcerations | New Releases |
|------|--------------------|--------------------|--------------|
| 02/03/2010 | 222 | 6 | 8 |
| 02/04/2010 | 221 | 7 | 9 |
| 02/05/2010 | 229 | 17 | 14 |
| 02/06/2010 | 222 | 7 | 10 |
| 02/07/2010 | 219 | 7 | 8 |
| 02/08/2010 | 221 | 10 | 6 |
| 02/09/2010 | 224 | 9 | 7 |
| 02/10/2010 | 225 | 8 | 16 |
| 02/11/2010 | 223 | 14 | 9 |
| 02/12/2010 | 219 | 5 | 3 |
| 02/13/2010 | 221 | 5 | 6 |
| 02/14/2010 | 217 | 2 | 9 |
| 02/15/2010 | 211 | 3 | 4 |
| 02/16/2010 | 223 | 16 | 13 |
| 02/17/2010 | 221 | 11 | 11 |
| 02/18/2010 | 219 | 9 | 5 |
| 02/19/2010 | 224 | 10 | 7 |
| 02/20/2010 | 227 | 10 | 6 |
| 02/21/2010 | 228 | 7 | 6 |
| 02/22/2010 | 227 | 5 | 8 |
| 02/23/2010 | 226 | 7 | 14 |
| 02/24/2010 | 214 | 2 | 5 |
| 02/25/2010 | 221 | 12 | 6 |
| 02/26/2010 | 221 | 6 | 5 |
| 02/27/2010 | 227 | 11 | 8 |
| 02/28/2010 | 224 | 5 | 11 |
| 03/01/2010 | 226 | 13 | 10 |
| 03/02/2010 | 222 | 6 | 15 |
| 03/03/2010 | 214 | 7 | 10 |
| 03/04/2010 | 209 | 5 | 4 |
| 03/05/2010 | 211 | 6 | 9 |
| 03/06/2010 | 208 | 6 | 4 |
| 03/07/2010 | 208 | 4 | 7 |

**Officer**

/  /                                         /  /

(c) 1994 - 2005 Information Technologies, Inc.  St. Louis, MO (314) 991-9115

Ex. B

Page 3

# Cape Girardeau Co. Sheriff's Office

216 N. Missouri  Jackson, MO  63755

## Inmate Daily Count

For All Agencies

01/01/2010  to 03/31/2012

| Date | Daily Inmate Count | New Incarcerations | New Releases |
|------|--------------------|--------------------|--------------|
| 03/08/2010 | 209 | 8 | 8 |
| 03/09/2010 | 207 | 6 | 9 |
| 03/10/2010 | 205 | 7 | 5 |
| 03/11/2010 | 210 | 10 | 9 |
| 03/12/2010 | 226 | 25 | 14 |
| 03/13/2010 | 227 | 15 | 12 |
| 03/14/2010 | 223 | 8 | 12 |
| 03/15/2010 | 221 | 10 | 10 |
| 03/16/2010 | 217 | 6 | 6 |
| 03/17/2010 | 215 | 4 | 5 |
| 03/18/2010 | 223 | 13 | 17 |
| 03/19/2010 | 218 | 12 | 6 |
| 03/20/2010 | 218 | 6 | 5 |
| 03/21/2010 | 224 | 11 | 8 |
| 03/22/2010 | 232 | 16 | 13 |
| 03/23/2010 | 224 | 5 | 10 |
| 03/24/2010 | 221 | 7 | 9 |
| 03/25/2010 | 223 | 11 | 9 |
| 03/26/2010 | 224 | 10 | 14 |
| 03/27/2010 | 214 | 4 | 3 |
| 03/28/2010 | 215 | 4 | 12 |
| 03/29/2010 | 218 | 15 | 11 |
| 03/30/2010 | 210 | 3 | 10 |
| 03/31/2010 | 207 | 7 | 5 |
| 04/01/2010 | 211 | 9 | 8 |
| 04/02/2010 | 215 | 12 | 11 |
| 04/03/2010 | 215 | 11 | 9 |
| 04/04/2010 | 212 | 6 | 9 |
| 04/05/2010 | 218 | 15 | 16 |
| 04/06/2010 | 211 | 9 | 10 |
| 04/07/2010 | 207 | 6 | 7 |
| 04/08/2010 | 204 | 4 | 7 |
| 04/09/2010 | 201 | 4 | 7 |

**Officer**

/  /                                    /  /

printed 12/04/2014 12:16                    (c) 1994 - 2005 Information Technologies, Inc.  St. Louis, MO (314) 991-9115

Ex. B

# Cape Girardeau Co. Sheriff's Office

216 N. Missouri  Jackson, MO  63755

## Inmate Daily Count

For All Agencies

01/01/2010  to 03/31/2012

| Date | Daily Inmate Count | New Incarcerations | New Releases |
|------|--------------------|--------------------|--------------|
| 04/10/2010 | 201 | 7 | 7 |
| 04/11/2010 | 208 | 14 | 7 |
| 04/12/2010 | 221 | 20 | 17 |
| 04/13/2010 | 210 | 6 | 9 |
| 04/14/2010 | 212 | 11 | 10 |
| 04/15/2010 | 216 | 14 | 10 |
| 04/16/2010 | 223 | 17 | 7 |
| 04/17/2010 | 226 | 10 | 8 |
| 04/18/2010 | 225 | 7 | 10 |
| 04/19/2010 | 220 | 5 | 9 |
| 04/20/2010 | 222 | 11 | 18 |
| 04/21/2010 | 213 | 9 | 9 |
| 04/22/2010 | 214 | 10 | 4 |
| 04/23/2010 | 221 | 11 | 6 |
| 04/24/2010 | 222 | 7 | 8 |
| 04/25/2010 | 223 | 9 | 8 |
| 04/26/2010 | 227 | 12 | 14 |
| 04/27/2010 | 220 | 7 | 9 |
| 04/28/2010 | 218 | 7 | 7 |
| 04/29/2010 | 219 | 8 | 10 |
| 04/30/2010 | 223 | 14 | 9 |
| 05/01/2010 | 219 | 5 | 6 |
| 05/02/2010 | 223 | 10 | 14 |
| 05/03/2010 | 223 | 14 | 17 |
| 05/04/2010 | 213 | 7 | 13 |
| 05/05/2010 | 209 | 9 | 5 |
| 05/06/2010 | 217 | 13 | 12 |
| 05/07/2010 | 214 | 9 | 9 |
| 05/08/2010 | 214 | 9 | 9 |
| 05/09/2010 | 216 | 11 | 15 |
| 05/10/2010 | 212 | 11 | 14 |
| 05/11/2010 | 201 | 3 | 11 |
| 05/12/2010 | 200 | 10 | 3 |

**Officer**

/  /                                    /  /

Ex. B

Page  5

# Cape Girardeau Co. Sheriff's Office
216 N. Missouri  Jackson, MO  63755

## Inmate Daily Count
For All Agencies
01/01/2010  to 03/31/2012

| Date | Daily Inmate Count | New Incarcerations | New Releases |
|------|-------------------|-------------------|--------------|
| 05/13/2010 | 209 | 12 | 7 |
| 05/14/2010 | 210 | 8 | 8 |
| 05/15/2010 | 206 | 4 | 3 |
| 05/16/2010 | 212 | 9 | 8 |
| 05/17/2010 | 210 | 6 | 10 |
| 05/18/2010 | 204 | 4 | 12 |
| 05/19/2010 | 200 | 8 | 6 |
| 05/20/2010 | 206 | 12 | 8 |
| 05/21/2010 | 211 | 13 | 18 |
| 05/22/2010 | 199 | 6 | 7 |
| 05/23/2010 | 199 | 7 | 9 |
| 05/24/2010 | 199 | 9 | 5 |
| 05/25/2010 | 201 | 7 | 11 |
| 05/26/2010 | 197 | 7 | 6 |
| 05/27/2010 | 200 | 9 | 5 |
| 05/28/2010 | 205 | 10 | 12 |
| 05/29/2010 | 197 | 4 | 6 |
| 05/30/2010 | 199 | 8 | 5 |
| 05/31/2010 | 201 | 7 | 4 |
| 06/01/2010 | 203 | 6 | 4 |
| 06/02/2010 | 207 | 8 | 6 |
| 06/03/2010 | 215 | 14 | 16 |
| 06/04/2010 | 208 | 9 | 8 |
| 06/05/2010 | 208 | 8 | 5 |
| 06/06/2010 | 212 | 9 | 7 |
| 06/07/2010 | 218 | 13 | 12 |
| 06/08/2010 | 225 | 19 | 22 |
| 06/09/2010 | 210 | 7 | 8 |
| 06/10/2010 | 211 | 9 | 10 |
| 06/11/2010 | 206 | 5 | 7 |
| 06/12/2010 | 206 | 7 | 5 |
| 06/13/2010 | 207 | 6 | 8 |
| 06/14/2010 | 209 | 10 | 9 |

**Officer**

_____ / /          _____ / /

(c) 1994 - 2005 Information Technologies, Inc.  St. Louis, MO (314) 991-9115

Ex. B

# Cape Girardeau Co. Sheriff's Office

216 N. Missouri  Jackson, MO  63755

## Inmate Daily Count

For All Agencies

01/01/2010  to 03/31/2012

| Date | Daily Inmate Count | New Incarcerations | New Releases |
|------|--------------------|--------------------|--------------|
| 06/15/2010 | 206 | 6 | 8 |
| 06/16/2010 | 207 | 9 | 5 |
| 06/17/2010 | 220 | 18 | 11 |
| 06/18/2010 | 220 | 11 | 10 |
| 06/19/2010 | 219 | 9 | 9 |
| 06/20/2010 | 210 | 0 | 4 |
| 06/21/2010 | 215 | 9 | 8 |
| 06/22/2010 | 215 | 8 | 8 |
| 06/23/2010 | 215 | 8 | 8 |
| 06/24/2010 | 218 | 11 | 7 |
| 06/25/2010 | 219 | 8 | 8 |
| 06/26/2010 | 219 | 8 | 6 |
| 06/27/2010 | 215 | 2 | 7 |
| 06/28/2010 | 220 | 12 | 11 |
| 06/29/2010 | 218 | 9 | 7 |
| 06/30/2010 | 218 | 7 | 5 |
| 07/01/2010 | 227 | 14 | 9 |
| 07/02/2010 | 228 | 10 | 9 |
| 07/03/2010 | 234 | 15 | 6 |
| 07/04/2010 | 234 | 6 | 10 |
| 07/05/2010 | 234 | 10 | 7 |
| 07/06/2010 | 232 | 5 | 11 |
| 07/07/2010 | 233 | 12 | 16 |
| 07/08/2010 | 221 | 4 | 6 |
| 07/09/2010 | 220 | 5 | 9 |
| 07/10/2010 | 217 | 6 | 3 |
| 07/11/2010 | 220 | 6 | 6 |
| 07/12/2010 | 225 | 11 | 15 |
| 07/13/2010 | 219 | 9 | 14 |
| 07/14/2010 | 212 | 7 | 6 |
| 07/15/2010 | 221 | 15 | 5 |
| 07/16/2010 | 235 | 19 | 11 |
| 07/17/2010 | 232 | 8 | 5 |

**Officer**

/   /                                                    /   /

Ex. B

# Cape Girardeau Co. Sheriff's Office
216 N. Missouri  Jackson, MO  63755

## Inmate Daily Count
For All Agencies
01/01/2010  to 03/31/2012

| Date | Daily Inmate Count | New Incarcerations | New Releases |
|------|--------------------|--------------------|--------------|
| 07/18/2010 | 234 | 7 | 9 |
| 07/19/2010 | 240 | 15 | 10 |
| 07/20/2010 | 240 | 10 | 17 |
| 07/21/2010 | 238 | 15 | 11 |
| 07/22/2010 | 235 | 8 | 3 |
| 07/23/2010 | 241 | 9 | 21 |
| 07/24/2010 | 227 | 7 | 5 |
| 07/25/2010 | 225 | 3 | 7 |
| 07/26/2010 | 229 | 11 | 9 |
| 07/27/2010 | 230 | 10 | 14 |
| 07/28/2010 | 222 | 6 | 3 |
| 07/29/2010 | 230 | 11 | 14 |
| 07/30/2010 | 229 | 13 | 8 |
| 07/31/2010 | 226 | 5 | 7 |
| 08/01/2010 | 230 | 11 | 10 |
| 08/02/2010 | 237 | 17 | 14 |
| 08/03/2010 | 229 | 6 | 15 |
| 08/04/2010 | 224 | 10 | 7 |
| 08/05/2010 | 228 | 11 | 6 |
| 08/06/2010 | 228 | 6 | 8 |
| 08/07/2010 | 226 | 6 | 7 |
| 08/08/2010 | 224 | 5 | 6 |
| 08/09/2010 | 229 | 11 | 12 |
| 08/10/2010 | 236 | 19 | 6 |
| 08/11/2010 | 237 | 7 | 16 |
| 08/12/2010 | 237 | 16 | 15 |
| 08/13/2010 | 236 | 14 | 12 |
| 08/14/2010 | 232 | 8 | 8 |
| 08/15/2010 | 229 | 5 | 7 |
| 08/16/2010 | 231 | 9 | 14 |
| 08/17/2010 | 225 | 8 | 15 |
| 08/18/2010 | 211 | 1 | 5 |
| 08/19/2010 | 217 | 11 | 11 |

**Officer**

/   /                              /   /

(c) 1994 - 2005 Information Technologies, Inc.  St. Louis, MO (314) 991-9115

Ex. B

Page 8

# Cape Girardeau Co. Sheriff's Office
216 N. Missouri  Jackson, MO  63755

## Inmate Daily Count
For All Agencies
01/01/2010  to 03/31/2012

| Date | Daily Inmate Count | New Incarcerations | New Releases |
|------|--------------------|--------------------|--------------|
| 08/20/2010 | 214 | 8 | 7 |
| 08/21/2010 | 218 | 11 | 5 |
| 08/22/2010 | 219 | 6 | 2 |
| 08/23/2010 | 227 | 10 | 12 |
| 08/24/2010 | 232 | 17 | 20 |
| 08/25/2010 | 219 | 7 | 4 |
| 08/26/2010 | 229 | 14 | 16 |
| 08/27/2010 | 221 | 8 | 16 |
| 08/28/2010 | 222 | 17 | 10 |
| 08/29/2010 | 218 | 6 | 8 |
| 08/30/2010 | 224 | 14 | 12 |
| 08/31/2010 | 222 | 10 | 8 |
| 09/01/2010 | 220 | 6 | 7 |
| 09/02/2010 | 223 | 10 | 12 |
| 09/03/2010 | 225 | 14 | 8 |
| 09/04/2010 | 224 | 7 | 9 |
| 09/05/2010 | 219 | 4 | 7 |
| 09/06/2010 | 218 | 6 | 6 |
| 09/07/2010 | 226 | 14 | 6 |
| 09/08/2010 | 230 | 10 | 15 |
| 09/09/2010 | 230 | 15 | 20 |
| 09/10/2010 | 227 | 17 | 9 |
| 09/11/2010 | 226 | 8 | 6 |
| 09/12/2010 | 221 | 1 | 5 |
| 09/13/2010 | 226 | 10 | 17 |
| 09/14/2010 | 214 | 5 | 8 |
| 09/15/2010 | 215 | 9 | 7 |
| 09/16/2010 | 219 | 11 | 9 |
| 09/17/2010 | 225 | 15 | 8 |
| 09/18/2010 | 227 | 10 | 10 |
| 09/19/2010 | 222 | 5 | 10 |
| 09/20/2010 | 225 | 13 | 10 |
| 09/21/2010 | 235 | 20 | 16 |

**Officer**

/  /                                    /  /

Ex. B

Page 9

# Cape Girardeau Co. Sheriff's Office

216 N. Missouri  Jackson, MO  63755

## Inmate Daily Count

For All Agencies
01/01/2010  to 03/31/2012

| Date | Daily Inmate Count | New Incarcerations | New Releases |
|------|---------------------|--------------------|--------------|
| 09/22/2010 | 224 | 5 | 8 |
| 09/23/2010 | 239 | 23 | 11 |
| 09/24/2010 | 237 | 9 | 9 |
| 09/25/2010 | 242 | 14 | 14 |
| 09/26/2010 | 231 | 3 | 5 |
| 09/27/2010 | 235 | 9 | 11 |
| 09/28/2010 | 235 | 11 | 11 |
| 09/29/2010 | 229 | 5 | 9 |
| 09/30/2010 | 226 | 6 | 11 |
| 10/01/2010 | 226 | 11 | 14 |
| 10/02/2010 | 221 | 9 | 11 |
| 10/03/2010 | 214 | 4 | 6 |
| 10/04/2010 | 222 | 14 | 6 |
| 10/05/2010 | 224 | 8 | 12 |
| 10/06/2010 | 219 | 7 | 13 |
| 10/07/2010 | 213 | 7 | 4 |
| 10/08/2010 | 218 | 9 | 8 |
| 10/09/2010 | 215 | 5 | 4 |
| 10/10/2010 | 213 | 2 | 5 |
| 10/11/2010 | 214 | 6 | 8 |
| 10/12/2010 | 213 | 7 | 11 |
| 10/13/2010 | 206 | 4 | 10 |
| 10/14/2010 | 205 | 9 | 9 |
| 10/15/2010 | 207 | 11 | 6 |
| 10/16/2010 | 213 | 12 | 3 |
| 10/17/2010 | 214 | 4 | 12 |
| 10/18/2010 | 208 | 6 | 8 |
| 10/19/2010 | 206 | 6 | 7 |
| 10/20/2010 | 213 | 14 | 12 |
| 10/21/2010 | 213 | 12 | 12 |
| 10/22/2010 | 205 | 4 | 8 |
| 10/23/2010 | 203 | 6 | 10 |
| 10/24/2010 | 197 | 4 | 5 |

**Officer**

/ /                    / /

(c) 1994 - 2005 Information Technologies, Inc.  St. Louis, MO (314) 991-9115

Ex. B

# Cape Girardeau Co. Sheriff's Office
216 N. Missouri  Jackson, MO  63755

## Inmate Daily Count
For All Agencies
01/01/2010  to 03/31/2012

| Date | Daily Inmate Count | New Incarcerations | New Releases |
|------|-------------------|---------------------|--------------|
| 10/25/2010 | 205 | 13 | 22 |
| 10/26/2010 | 187 | 4 | 7 |
| 10/27/2010 | 186 | 6 | 6 |
| 10/28/2010 | 200 | 20 | 13 |
| 10/29/2010 | 205 | 18 | 7 |
| 10/30/2010 | 209 | 11 | 4 |
| 10/31/2010 | 213 | 8 | 7 |
| 11/01/2010 | 218 | 12 | 18 |
| 11/02/2010 | 216 | 16 | 20 |
| 11/03/2010 | 206 | 10 | 13 |
| 11/04/2010 | 205 | 12 | 10 |
| 11/05/2010 | 204 | 9 | 6 |
| 11/06/2010 | 205 | 7 | 6 |
| 11/07/2010 | 206 | 7 | 6 |
| 11/08/2010 | 211 | 11 | 10 |
| 11/09/2010 | 206 | 5 | 16 |
| 11/10/2010 | 202 | 12 | 11 |
| 11/11/2010 | 192 | 1 | 5 |
| 11/12/2010 | 202 | 15 | 2 |
| 11/13/2010 | 207 | 7 | 2 |
| 11/14/2010 | 208 | 3 | 10 |
| 11/15/2010 | 206 | 8 | 4 |
| 11/16/2010 | 207 | 5 | 5 |
| 11/17/2010 | 208 | 6 | 8 |
| 11/18/2010 | 210 | 10 | 6 |
| 11/19/2010 | 213 | 9 | 10 |
| 11/20/2010 | 210 | 7 | 9 |
| 11/21/2010 | 205 | 4 | 3 |
| 11/22/2010 | 213 | 11 | 10 |
| 11/23/2010 | 217 | 14 | 19 |
| 11/24/2010 | 200 | 2 | 6 |
| 11/25/2010 | 198 | 4 | 3 |
| 11/26/2010 | 198 | 3 | 0 |

**Officer**

/    /                              /    /

Ex. B

# Cape Girardeau Co. Sheriff's Office

216 N. Missouri  Jackson, MO  63755

## Inmate Daily Count

For All Agencies

01/01/2010  to 03/31/2012

| Date | Daily Inmate Count | New Incarcerations | New Releases |
|------|--------------------|--------------------|--------------|
| 11/27/2010 | 204 | 6 | 5 |
| 11/28/2010 | 200 | 1 | 8 |
| 11/29/2010 | 200 | 8 | 9 |
| 11/30/2010 | 197 | 6 | 6 |
| 12/01/2010 | 205 | 14 | 15 |
| 12/02/2010 | 203 | 13 | 12 |
| 12/03/2010 | 203 | 12 | 11 |
| 12/04/2010 | 199 | 7 | 6 |
| 12/05/2010 | 193 | 0 | 7 |
| 12/06/2010 | 202 | 16 | 17 |
| 12/07/2010 | 192 | 7 | 12 |
| 12/08/2010 | 187 | 7 | 3 |
| 12/09/2010 | 195 | 11 | 8 |
| 12/10/2010 | 194 | 7 | 4 |
| 12/11/2010 | 196 | 6 | 4 |
| 12/12/2010 | 196 | 4 | 10 |
| 12/13/2010 | 192 | 6 | 9 |
| 12/14/2010 | 192 | 9 | 9 |
| 12/15/2010 | 187 | 4 | 7 |
| 12/16/2010 | 189 | 9 | 6 |
| 12/17/2010 | 188 | 5 | 2 |
| 12/18/2010 | 193 | 7 | 5 |
| 12/19/2010 | 194 | 6 | 5 |
| 12/20/2010 | 201 | 12 | 11 |
| 12/21/2010 | 192 | 2 | 16 |
| 12/22/2010 | 178 | 2 | 8 |
| 12/23/2010 | 176 | 6 | 7 |
| 12/24/2010 | 170 | 1 | 1 |
| 12/25/2010 | 172 | 3 | 3 |
| 12/26/2010 | 173 | 4 | 2 |
| 12/27/2010 | 178 | 7 | 13 |
| 12/28/2010 | 171 | 6 | 9 |
| 12/29/2010 | 172 | 10 | 4 |

**Officer**

/   /                                    /   /

(c) 1994 - 2005 Information Technologies, Inc.  St. Louis, MO (314) 991-9115

Ex. B

# Cape Girardeau Co. Sheriff's Office

216 N. Missouri  Jackson, MO  63755

## Inmate Daily Count

For All Agencies

01/01/2010  to 03/31/2012

| Date | Daily Inmate Count | New Incarcerations | New Releases |
|------|--------------------|--------------------|--------------|
| 12/30/2010 | 178 | 10 | 7 |
| 12/31/2010 | 173 | 2 | 8 |
| 01/01/2011 | 173 | 8 | 3 |
| 01/02/2011 | 178 | 8 | 7 |
| 01/03/2011 | 179 | 8 | 14 |
| 01/04/2011 | 176 | 11 | 2 |
| 01/05/2011 | 186 | 12 | 14 |
| 01/06/2011 | 184 | 12 | 11 |
| 01/07/2011 | 186 | 13 | 6 |
| 01/08/2011 | 187 | 7 | 6 |
| 01/09/2011 | 183 | 2 | 6 |
| 01/10/2011 | 190 | 13 | 12 |
| 01/11/2011 | 183 | 5 | 11 |
| 01/12/2011 | 178 | 6 | 8 |
| 01/13/2011 | 180 | 10 | 9 |
| 01/14/2011 | 179 | 8 | 10 |
| 01/15/2011 | 180 | 11 | 8 |
| 01/16/2011 | 180 | 8 | 5 |
| 01/17/2011 | 175 | 0 | 4 |
| 01/18/2011 | 178 | 7 | 5 |
| 01/19/2011 | 178 | 5 | 11 |
| 01/20/2011 | 184 | 17 | 12 |
| 01/21/2011 | 181 | 9 | 1 |
| 01/22/2011 | 186 | 6 | 2 |
| 01/23/2011 | 185 | 1 | 1 |
| 01/24/2011 | 195 | 11 | 13 |
| 01/25/2011 | 193 | 11 | 16 |
| 01/26/2011 | 182 | 5 | 8 |
| 01/27/2011 | 186 | 12 | 6 |
| 01/28/2011 | 197 | 17 | 7 |
| 01/29/2011 | 197 | 7 | 6 |
| 01/30/2011 | 196 | 5 | 5 |
| 01/31/2011 | 203 | 12 | 12 |

**Officer**

/    /                                          /    /

(c) 1994 - 2005 Information Technologies, Inc.  St. Louis, MO (314) 991-9115

Ex. B

# Cape Girardeau Co. Sheriff's Office

Page 13

216 N. Missouri  Jackson, MO  63755

## Inmate Daily Count

For All Agencies

01/01/2010  to 03/31/2012

| Date | Daily Inmate Count | New Incarcerations | New Releases |
|------|-------------------|--------------------|--------------|
| 02/01/2011 | 194 | 3 | 6 |
| 02/02/2011 | 196 | 8 | 7 |
| 02/03/2011 | 207 | 18 | 19 |
| 02/04/2011 | 201 | 13 | 10 |
| 02/05/2011 | 195 | 4 | 6 |
| 02/06/2011 | 195 | 6 | 6 |
| 02/07/2011 | 196 | 7 | 9 |
| 02/08/2011 | 195 | 8 | 12 |
| 02/09/2011 | 194 | 11 | 4 |
| 02/10/2011 | 205 | 15 | 9 |
| 02/11/2011 | 199 | 3 | 8 |
| 02/12/2011 | 203 | 12 | 16 |
| 02/13/2011 | 197 | 10 | 13 |
| 02/14/2011 | 191 | 7 | 6 |
| 02/15/2011 | 191 | 6 | 6 |
| 02/16/2011 | 192 | 7 | 6 |
| 02/17/2011 | 199 | 13 | 9 |
| 02/18/2011 | 198 | 8 | 10 |
| 02/19/2011 | 197 | 9 | 8 |
| 02/20/2011 | 200 | 11 | 11 |
| 02/21/2011 | 193 | 4 | 3 |
| 02/22/2011 | 198 | 8 | 14 |
| 02/23/2011 | 202 | 18 | 13 |
| 02/24/2011 | 196 | 7 | 19 |
| 02/25/2011 | 186 | 9 | 7 |
| 02/26/2011 | 186 | 7 | 3 |
| 02/27/2011 | 193 | 10 | 12 |
| 02/28/2011 | 191 | 10 | 12 |
| 03/01/2011 | 186 | 7 | 12 |
| 03/02/2011 | 182 | 8 | 12 |
| 03/03/2011 | 178 | 8 | 7 |
| 03/04/2011 | 182 | 11 | 10 |
| 03/05/2011 | 173 | 1 | 2 |

**Officer**

_____  / /    _____  / /

    (c) 1994 - 2005 Information Technologies, Inc.  St. Louis, MO (314) 991-9115

Ex. B

# Cape Girardeau Co. Sheriff's Office

216 N. Missouri  Jackson, MO  63755

## Inmate Daily Count

For All Agencies

01/01/2010  to 03/31/2012

| Date | Daily Inmate Count | New Incarcerations | New Releases |
|------|-------------------|--------------------|--------------|
| 03/06/2011 | 179 | 8 | 13 |
| 03/07/2011 | 173 | 7 | 9 |
| 03/08/2011 | 178 | 14 | 11 |
| 03/09/2011 | 174 | 7 | 5 |
| 03/10/2011 | 178 | 9 | 7 |
| 03/11/2011 | 184 | 13 | 9 |
| 03/12/2011 | 180 | 5 | 6 |
| 03/13/2011 | 182 | 8 | 12 |
| 03/14/2011 | 179 | 9 | 7 |
| 03/15/2011 | 182 | 10 | 19 |
| 03/16/2011 | 168 | 5 | 6 |
| 03/17/2011 | 187 | 25 | 18 |
| 03/18/2011 | 184 | 15 | 19 |
| 03/19/2011 | 165 | 0 | 1 |
| 03/20/2011 | 172 | 8 | 11 |
| 03/21/2011 | 172 | 11 | 11 |
| 03/22/2011 | 169 | 8 | 9 |
| 03/23/2011 | 167 | 7 | 6 |
| 03/24/2011 | 178 | 17 | 11 |
| 03/25/2011 | 186 | 19 | 10 |
| 03/26/2011 | 181 | 5 | 5 |
| 03/27/2011 | 179 | 3 | 6 |
| 03/28/2011 | 180 | 7 | 8 |
| 03/29/2011 | 181 | 9 | 17 |
| 03/30/2011 | 171 | 7 | 5 |
| 03/31/2011 | 181 | 15 | 11 |
| 04/01/2011 | 184 | 14 | 8 |
| 04/02/2011 | 188 | 12 | 11 |
| 04/03/2011 | 190 | 13 | 12 |
| 04/04/2011 | 184 | 6 | 12 |
| 04/05/2011 | 175 | 3 | 16 |
| 04/06/2011 | 166 | 7 | 3 |
| 04/07/2011 | 170 | 7 | 8 |

**Officer**

_____  /   /  _____  /   /

(c) 1994 - 2005 Information Technologies, Inc.  St. Louis, MO (314) 991-9115

Ex. B

# Cape Girardeau Co. Sheriff's Office
216 N. Missouri  Jackson, MO  63755

## Inmate Daily Count
For All Agencies
01/01/2010 to 03/31/2012

| Date | Daily Inmate Count | New Incarcerations | New Releases |
|------|--------------------|--------------------|--------------|
| 04/08/2011 | 170 | 8 | 3 |
| 04/09/2011 | 173 | 6 | 4 |
| 04/10/2011 | 177 | 8 | 7 |
| 04/11/2011 | 178 | 8 | 9 |
| 04/12/2011 | 174 | 5 | 7 |
| 04/13/2011 | 182 | 15 | 9 |
| 04/14/2011 | 184 | 11 | 10 |
| 04/15/2011 | 182 | 8 | 3 |
| 04/16/2011 | 184 | 5 | 5 |
| 04/17/2011 | 184 | 5 | 3 |
| 04/18/2011 | 190 | 9 | 9 |
| 04/19/2011 | 188 | 7 | 11 |
| 04/20/2011 | 184 | 7 | 10 |
| 04/21/2011 | 184 | 10 | 3 |
| 04/22/2011 | 193 | 12 | 6 |
| 04/23/2011 | 194 | 7 | 5 |
| 04/24/2011 | 190 | 1 | 5 |
| 04/25/2011 | 199 | 14 | 6 |
| 04/26/2011 | 198 | 5 | 9 |
| 04/27/2011 | 198 | 9 | 16 |
| 04/28/2011 | 191 | 9 | 12 |
| 04/29/2011 | 199 | 20 | 6 |
| 04/30/2011 | 201 | 8 | 6 |
| 05/01/2011 | 200 | 5 | 14 |
| 05/02/2011 | 205 | 19 | 10 |
| 05/03/2011 | 214 | 19 | 3 |
| 05/04/2011 | 224 | 13 | 10 |
| 05/05/2011 | 222 | 8 | 11 |
| 05/06/2011 | 225 | 14 | 10 |
| 05/07/2011 | 221 | 6 | 10 |
| 05/08/2011 | 215 | 4 | 5 |
| 05/09/2011 | 214 | 4 | 3 |
| 05/10/2011 | 216 | 5 | 4 |

**Officer**

/  /                                            /  /

(c) 1994 - 2005 Information Technologies, Inc.  St. Louis, MO (314) 991-9115

Ex. B

# Cape Girardeau Co. Sheriff's Office
216 N. Missouri  Jackson, MO  63755

## Inmate Daily Count
For All Agencies
01/01/2010  to 03/31/2012

| Date | Daily Inmate Count | New Incarcerations | New Releases |
|------|-------------------|--------------------|--------------| 
| 05/11/2011 | 224 | 12 | 24 |
| 05/12/2011 | 210 | 10 | 13 |
| 05/13/2011 | 207 | 10 | 13 |
| 05/14/2011 | 203 | 9 | 3 |
| 05/15/2011 | 205 | 5 | 8 |
| 05/16/2011 | 205 | 8 | 10 |
| 05/17/2011 | 200 | 5 | 13 |
| 05/18/2011 | 197 | 10 | 14 |
| 05/19/2011 | 196 | 13 | 16 |
| 05/20/2011 | 196 | 16 | 11 |
| 05/21/2011 | 200 | 15 | 5 |
| 05/22/2011 | 198 | 3 | 9 |
| 05/23/2011 | 201 | 12 | 11 |
| 05/24/2011 | 209 | 19 | 11 |
| 05/25/2011 | 202 | 4 | 9 |
| 05/26/2011 | 201 | 8 | 8 |
| 05/27/2011 | 204 | 11 | 6 |
| 05/28/2011 | 201 | 3 | 2 |
| 05/29/2011 | 203 | 4 | 7 |
| 05/30/2011 | 200 | 4 | 2 |
| 05/31/2011 | 207 | 9 | 6 |
| 06/01/2011 | 215 | 14 | 10 |
| 06/02/2011 | 210 | 5 | 9 |
| 06/03/2011 | 212 | 11 | 7 |
| 06/04/2011 | 214 | 9 | 7 |
| 06/05/2011 | 210 | 3 | 6 |
| 06/06/2011 | 211 | 7 | 14 |
| 06/07/2011 | 207 | 10 | 17 |
| 06/08/2011 | 193 | 3 | 8 |
| 06/09/2011 | 191 | 6 | 8 |
| 06/10/2011 | 196 | 13 | 5 |
| 06/11/2011 | 196 | 5 | 4 |
| 06/12/2011 | 195 | 3 | 4 |

**Officer**

/  /                              /  /

(c) 1994 - 2005 Information Technologies, Inc.  St. Louis, MO (314) 991-9115

Ex. B

# Cape Girardeau Co. Sheriff's Office
216 N. Missouri  Jackson, MO 63755

## Inmate Daily Count
For All Agencies
01/01/2010 to 03/31/2012

| Date | Daily Inmate Count | New Incarcerations | New Releases |
|------|-------------------|--------------------|--------------|
| 06/13/2011 | 200 | 9 | 15 |
| 06/14/2011 | 193 | 8 | 9 |
| 06/15/2011 | 191 | 7 | 11 |
| 06/16/2011 | 185 | 5 | 10 |
| 06/17/2011 | 188 | 13 | 6 |
| 06/18/2011 | 188 | 6 | 5 |
| 06/19/2011 | 186 | 3 | 7 |
| 06/20/2011 | 186 | 7 | 6 |
| 06/21/2011 | 187 | 7 | 12 |
| 06/22/2011 | 182 | 7 | 3 |
| 06/23/2011 | 184 | 5 | 5 |
| 06/24/2011 | 187 | 8 | 5 |
| 06/25/2011 | 186 | 4 | 6 |
| 06/26/2011 | 184 | 4 | 10 |
| 06/27/2011 | 187 | 13 | 11 |
| 06/28/2011 | 190 | 14 | 7 |
| 06/29/2011 | 192 | 9 | 14 |
| 06/30/2011 | 190 | 12 | 5 |
| 07/01/2011 | 197 | 12 | 4 |
| 07/02/2011 | 203 | 10 | 8 |
| 07/03/2011 | 211 | 16 | 10 |
| 07/04/2011 | 204 | 3 | 5 |
| 07/05/2011 | 204 | 5 | 9 |
| 07/06/2011 | 200 | 5 | 8 |
| 07/07/2011 | 201 | 9 | 7 |
| 07/08/2011 | 202 | 8 | 13 |
| 07/09/2011 | 196 | 7 | 4 |
| 07/10/2011 | 198 | 6 | 8 |
| 07/11/2011 | 201 | 11 | 10 |
| 07/12/2011 | 199 | 8 | 10 |
| 07/13/2011 | 193 | 4 | 6 |
| 07/14/2011 | 194 | 7 | 6 |
| 07/15/2011 | 197 | 9 | 8 |

**Officer**

/  /                              /  /

Ex. B

Page 18

# Cape Girardeau Co. Sheriff's Office
216 N. Missouri  Jackson, MO  63755

## Inmate Daily Count
For All Agencies
01/01/2010  to 03/31/2012

| Date | Daily Inmate Count | New Incarcerations | New Releases |
|------|-------------------|--------------------|--------------|
| 07/16/2011 | 196 | 7 | 9 |
| 07/17/2011 | 195 | 8 | 4 |
| 07/18/2011 | 197 | 6 | 10 |
| 07/19/2011 | 210 | 23 | 6 |
| 07/20/2011 | 214 | 10 | 12 |
| 07/21/2011 | 209 | 7 | 20 |
| 07/22/2011 | 200 | 11 | 5 |
| 07/23/2011 | 202 | 7 | 8 |
| 07/24/2011 | 202 | 8 | 8 |
| 07/25/2011 | 208 | 14 | 8 |
| 07/26/2011 | 209 | 9 | 8 |
| 07/27/2011 | 210 | 9 | 10 |
| 07/28/2011 | 212 | 12 | 9 |
| 07/29/2011 | 216 | 13 | 11 |
| 07/30/2011 | 214 | 9 | 4 |
| 07/31/2011 | 211 | 1 | 8 |
| 08/01/2011 | 206 | 3 | 9 |
| 08/02/2011 | 206 | 9 | 13 |
| 08/03/2011 | 200 | 7 | 8 |
| 08/04/2011 | 196 | 4 | 5 |
| 08/05/2011 | 206 | 15 | 9 |
| 08/06/2011 | 200 | 3 | 3 |
| 08/07/2011 | 199 | 2 | 7 |
| 08/08/2011 | 204 | 12 | 8 |
| 08/09/2011 | 202 | 6 | 13 |
| 08/10/2011 | 197 | 8 | 8 |
| 08/11/2011 | 198 | 9 | 11 |
| 08/12/2011 | 205 | 18 | 8 |
| 08/13/2011 | 202 | 5 | 8 |
| 08/14/2011 | 201 | 7 | 4 |
| 08/15/2011 | 212 | 15 | 15 |
| 08/16/2011 | 201 | 4 | 13 |
| 08/17/2011 | 193 | 5 | 4 |

**Officer**

/  /                                    /  /

  (c) 1994 - 2005 Information Technologies, Inc.  St Louis, MO (314) 991-9115

Ex. B

# Cape Girardeau Co. Sheriff's Office

216 N. Missouri  Jackson, MO  63755

## Inmate Daily Count

For All Agencies

01/01/2010  to 03/31/2012

| Date | Daily Inmate Count | New Incarcerations | New Releases |
|------|--------------------|--------------------|--------------|
| 08/18/2011 | 196 | 7 | 9 |
| 08/19/2011 | 206 | 19 | 10 |
| 08/20/2011 | 207 | 11 | 7 |
| 08/21/2011 | 205 | 5 | 6 |
| 08/22/2011 | 210 | 11 | 15 |
| 08/23/2011 | 211 | 16 | 13 |
| 08/24/2011 | 205 | 7 | 10 |
| 08/25/2011 | 211 | 16 | 10 |
| 08/26/2011 | 215 | 14 | 10 |
| 08/27/2011 | 208 | 3 | 9 |
| 08/28/2011 | 207 | 8 | 8 |
| 08/29/2011 | 221 | 22 | 13 |
| 08/30/2011 | 215 | 7 | 13 |
| 08/31/2011 | 213 | 11 | 5 |
| 09/01/2011 | 220 | 12 | 13 |
| 09/02/2011 | 219 | 12 | 14 |
| 09/03/2011 | 212 | 7 | 3 |
| 09/04/2011 | 216 | 7 | 11 |
| 09/05/2011 | 206 | 1 | 5 |
| 09/06/2011 | 209 | 8 | 4 |
| 09/07/2011 | 218 | 13 | 15 |
| 09/08/2011 | 220 | 17 | 6 |
| 09/09/2011 | 224 | 10 | 11 |
| 09/10/2011 | 216 | 3 | 2 |
| 09/11/2011 | 218 | 4 | 4 |
| 09/12/2011 | 229 | 15 | 12 |
| 09/13/2011 | 228 | 11 | 14 |
| 09/14/2011 | 222 | 8 | 11 |
| 09/15/2011 | 220 | 9 | 14 |
| 09/16/2011 | 224 | 18 | 10 |
| 09/17/2011 | 227 | 13 | 13 |
| 09/18/2011 | 220 | 6 | 11 |
| 09/19/2011 | 218 | 9 | 14 |

**Officer**

_____    /    /          _____    /    /

(c) 1994 - 2005 Information Technologies, Inc. St. Louis, MO (314) 991-9115

Ex. B

# Cape Girardeau Co. Sheriff's Office
216 N. Missouri  Jackson, MO  63755

## Inmate Daily Count
For All Agencies
01/01/2010  to 03/31/2012

| Date | Daily Inmate Count | New Incarcerations | New Releases |
|------|--------------------|--------------------|--------------|
| 09/20/2011 | 212 | 8 | 13 |
| 09/21/2011 | 201 | 2 | 7 |
| 09/22/2011 | 206 | 12 | 11 |
| 09/23/2011 | 204 | 9 | 9 |
| 09/24/2011 | 201 | 6 | 0 |
| 09/25/2011 | 206 | 5 | 1 |
| 09/26/2011 | 218 | 13 | 18 |
| 09/27/2011 | 207 | 7 | 18 |
| 09/28/2011 | 201 | 12 | 9 |
| 09/29/2011 | 200 | 8 | 7 |
| 09/30/2011 | 206 | 13 | 8 |
| 10/01/2011 | 205 | 7 | 5 |
| 10/02/2011 | 206 | 6 | 8 |
| 10/03/2011 | 217 | 19 | 18 |
| 10/04/2011 | 207 | 8 | 8 |
| 10/05/2011 | 203 | 4 | 3 |
| 10/06/2011 | 209 | 9 | 5 |
| 10/07/2011 | 219 | 15 | 9 |
| 10/08/2011 | 217 | 7 | 6 |
| 10/09/2011 | 220 | 9 | 7 |
| 10/10/2011 | 219 | 6 | 4 |
| 10/11/2011 | 219 | 4 | 6 |
| 10/12/2011 | 226 | 13 | 18 |
| 10/13/2011 | 228 | 20 | 18 |
| 10/14/2011 | 214 | 4 | 6 |
| 10/15/2011 | 213 | 5 | 5 |
| 10/16/2011 | 216 | 8 | 8 |
| 10/17/2011 | 223 | 15 | 14 |
| 10/18/2011 | 214 | 5 | 11 |
| 10/19/2011 | 212 | 9 | 10 |
| 10/20/2011 | 210 | 8 | 11 |
| 10/21/2011 | 215 | 16 | 13 |
| 10/22/2011 | 209 | 7 | 8 |

**Officer**

/  /

/  /

(c) 1994 - 2005 Information Technologies, Inc.  St. Louis, MO (314) 991-9115

Ex. B

# Cape Girardeau Co. Sheriff's Office
216 N. Missouri  Jackson, MO  63755

## Inmate Daily Count
For All Agencies
01/01/2010  to 03/31/2012

| Date | Daily Inmate Count | New Incarcerations | New Releases |
|---|---|---|---|
| 10/23/2011 | 210 | 9 | 8 |
| 10/24/2011 | 207 | 5 | 12 |
| 10/25/2011 | 203 | 8 | 14 |
| 10/26/2011 | 197 | 8 | 4 |
| 10/27/2011 | 204 | 11 | 6 |
| 10/28/2011 | 210 | 12 | 8 |
| 10/29/2011 | 215 | 13 | 3 |
| 10/30/2011 | 217 | 5 | 7 |
| 10/31/2011 | 218 | 8 | 11 |
| 11/01/2011 | 212 | 5 | 8 |
| 11/02/2011 | 209 | 5 | 11 |
| 11/03/2011 | 209 | 11 | 4 |
| 11/04/2011 | 217 | 12 | 7 |
| 11/05/2011 | 215 | 5 | 2 |
| 11/06/2011 | 225 | 12 | 16 |
| 11/07/2011 | 219 | 10 | 6 |
| 11/08/2011 | 224 | 11 | 19 |
| 11/09/2011 | 213 | 8 | 7 |
| 11/10/2011 | 217 | 11 | 16 |
| 11/11/2011 | 211 | 10 | 8 |
| 11/12/2011 | 207 | 4 | 4 |
| 11/13/2011 | 210 | 7 | 4 |
| 11/14/2011 | 211 | 5 | 9 |
| 11/15/2011 | 213 | 11 | 10 |
| 11/16/2011 | 206 | 3 | 8 |
| 11/17/2011 | 204 | 6 | 5 |
| 11/18/2011 | 208 | 9 | 11 |
| 11/19/2011 | 200 | 3 | 0 |
| 11/20/2011 | 208 | 8 | 6 |
| 11/21/2011 | 213 | 11 | 15 |
| 11/22/2011 | 212 | 14 | 19 |
| 11/23/2011 | 206 | 13 | 12 |
| 11/24/2011 | 197 | 3 | 6 |

**Officer**

/  /                                                        /  /

Ex. B

# Cape Girardeau Co. Sheriff's Office
216 N. Missouri  Jackson, MO  63755

## Inmate Daily Count
For All Agencies
01/01/2010  to 03/31/2012

| Date | Daily Inmate Count | New Incarcerations | New Releases |
|------|--------------------|--------------------|--------------|
| 11/25/2011 | 199 | 8 | 3 |
| 11/26/2011 | 205 | 9 | 5 |
| 11/27/2011 | 204 | 4 | 4 |
| 11/28/2011 | 213 | 13 | 11 |
| 11/29/2011 | 207 | 5 | 7 |
| 11/30/2011 | 220 | 20 | 17 |
| 12/01/2011 | 216 | 13 | 10 |
| 12/02/2011 | 221 | 15 | 11 |
| 12/03/2011 | 216 | 6 | 4 |
| 12/04/2011 | 216 | 4 | 8 |
| 12/05/2011 | 227 | 19 | 12 |
| 12/06/2011 | 218 | 3 | 8 |
| 12/07/2011 | 217 | 7 | 18 |
| 12/08/2011 | 207 | 8 | 3 |
| 12/09/2011 | 212 | 8 | 12 |
| 12/10/2011 | 203 | 3 | 6 |
| 12/11/2011 | 201 | 4 | 9 |
| 12/12/2011 | 201 | 9 | 12 |
| 12/13/2011 | 197 | 8 | 11 |
| 12/14/2011 | 199 | 13 | 10 |
| 12/15/2011 | 204 | 15 | 11 |
| 12/16/2011 | 207 | 14 | 9 |
| 12/17/2011 | 204 | 6 | 4 |
| 12/18/2011 | 207 | 7 | 6 |
| 12/19/2011 | 207 | 6 | 6 |
| 12/20/2011 | 209 | 8 | 8 |
| 12/21/2011 | 203 | 2 | 5 |
| 12/22/2011 | 214 | 16 | 17 |
| 12/23/2011 | 204 | 7 | 9 |
| 12/24/2011 | 200 | 5 | 7 |
| 12/25/2011 | 198 | 5 | 5 |
| 12/26/2011 | 199 | 6 | 2 |
| 12/27/2011 | 203 | 6 | 8 |

**Officer**

_____ /  /              _____ /  /

(c) 1994 - 2005 Information Technologies, Inc.  St. Louis, MO (314) 991-9115

Ex. B

# Cape Girardeau Co. Sheriff's Office
216 N. Missouri  Jackson, MO  63755

## Inmate Daily Count
For All Agencies
01/01/2010  to 03/31/2012

| Date | Daily Inmate Count | New Incarcerations | New Releases |
|------|--------------------|--------------------|--------------|
| 12/28/2011 | 198 | 3 | 12 |
| 12/29/2011 | 202 | 16 | 17 |
| 12/30/2011 | 198 | 13 | 7 |
| 12/31/2011 | 196 | 5 | 7 |
| 01/01/2012 | 204 | 15 | 7 |
| 01/02/2012 | 203 | 6 | 3 |
| 01/03/2012 | 208 | 8 | 8 |
| 01/04/2012 | 208 | 8 | 11 |
| 01/05/2012 | 206 | 9 | 11 |
| 01/06/2012 | 211 | 16 | 10 |
| 01/07/2012 | 208 | 7 | 9 |
| 01/08/2012 | 202 | 3 | 7 |
| 01/09/2012 | 207 | 12 | 20 |
| 01/10/2012 | 197 | 10 | 9 |
| 01/11/2012 | 193 | 5 | 5 |
| 01/12/2012 | 199 | 11 | 9 |
| 01/13/2012 | 204 | 14 | 7 |
| 01/14/2012 | 209 | 12 | 12 |
| 01/15/2012 | 205 | 8 | 9 |
| 01/16/2012 | 201 | 5 | 5 |
| 01/17/2012 | 205 | 9 | 14 |
| 01/18/2012 | 201 | 10 | 11 |
| 01/19/2012 | 197 | 7 | 9 |
| 01/20/2012 | 195 | 7 | 3 |
| 01/21/2012 | 197 | 5 | 2 |
| 01/22/2012 | 203 | 8 | 5 |
| 01/23/2012 | 212 | 14 | 11 |
| 01/24/2012 | 210 | 9 | 9 |
| 01/25/2012 | 211 | 10 | 8 |
| 01/26/2012 | 211 | 8 | 7 |
| 01/27/2012 | 214 | 10 | 16 |
| 01/28/2012 | 202 | 4 | 5 |
| 01/29/2012 | 205 | 8 | 4 |

**Officer**

/  /                                              /  /

Ex. B

# Cape Girardeau Co. Sheriff's Office
216 N. Missouri  Jackson, MO 63755

Page 24

## Inmate Daily Count
For All Agencies
01/01/2010  to 03/31/2012

| Date | Daily Inmate Count | New Incarcerations | New Releases |
|------|--------------------|--------------------|--------------| 
| 01/30/2012 | 208 | 7 | 8 |
| 01/31/2012 | 208 | 8 | 16 |
| 02/01/2012 | 201 | 9 | 9 |
| 02/02/2012 | 203 | 11 | 8 |
| 02/03/2012 | 210 | 15 | 9 |
| 02/04/2012 | 207 | 6 | 8 |
| 02/05/2012 | 201 | 2 | 3 |
| 02/06/2012 | 217 | 19 | 17 |
| 02/07/2012 | 207 | 7 | 6 |
| 02/08/2012 | 210 | 9 | 9 |
| 02/09/2012 | 205 | 4 | 3 |
| 02/10/2012 | 218 | 16 | 14 |
| 02/11/2012 | 214 | 10 | 9 |
| 02/12/2012 | 211 | 6 | 6 |
| 02/13/2012 | 209 | 4 | 4 |
| 02/14/2012 | 212 | 7 | 3 |
| 02/15/2012 | 215 | 6 | 9 |
| 02/16/2012 | 215 | 9 | 11 |
| 02/17/2012 | 210 | 6 | 6 |
| 02/18/2012 | 210 | 6 | 4 |
| 02/19/2012 | 211 | 5 | 5 |
| 02/20/2012 | 210 | 4 | 5 |
| 02/21/2012 | 213 | 8 | 7 |
| 02/22/2012 | 210 | 4 | 7 |
| 02/23/2012 | 212 | 9 | 8 |
| 02/24/2012 | 211 | 7 | 7 |
| 02/25/2012 | 211 | 7 | 5 |
| 02/26/2012 | 209 | 3 | 3 |
| 02/27/2012 | 217 | 11 | 8 |
| 02/28/2012 | 218 | 9 | 14 |
| 02/29/2012 | 213 | 9 | 1 |
| 03/01/2012 | 220 | 8 | 4 |
| 03/02/2012 | 231 | 15 | 15 |

**Officer**

/ /                                    / /

(c) 1994 - 2005 Information Technologies, Inc.  St. Louis, MO (314) 991-9115

Ex. B

# Cape Girardeau Co. Sheriff's Office
216 N. Missouri  Jackson, MO  63755

## Inmate Daily Count
For All Agencies
01/01/2010  to 03/31/2012

| Date | Daily Inmate Count | New Incarcerations | New Releases |
|---|---|---|---|
| 03/03/2012 | 221 | 5 | 10 |
| 03/04/2012 | 218 | 7 | 14 |
| 03/05/2012 | 219 | 15 | 10 |
| 03/06/2012 | 212 | 3 | 8 |
| 03/07/2012 | 217 | 13 | 7 |
| 03/08/2012 | 222 | 12 | 13 |
| 03/09/2012 | 219 | 10 | 11 |
| 03/10/2012 | 215 | 7 | 7 |
| 03/11/2012 | 215 | 7 | 9 |
| 03/12/2012 | 218 | 12 | 14 |
| 03/13/2012 | 207 | 3 | 8 |
| 03/14/2012 | 212 | 13 | 6 |
| 03/15/2012 | 208 | 2 | 4 |
| 03/16/2012 | 217 | 13 | 8 |
| 03/17/2012 | 216 | 7 | 8 |
| 03/18/2012 | 223 | 15 | 9 |
| 03/19/2012 | 223 | 9 | 11 |
| 03/20/2012 | 223 | 11 | 8 |
| 03/21/2012 | 223 | 8 | 6 |
| 03/22/2012 | 223 | 6 | 9 |
| 03/23/2012 | 223 | 9 | 11 |
| 03/24/2012 | 220 | 8 | 11 |
| 03/25/2012 | 211 | 2 | 5 |
| 03/26/2012 | 222 | 16 | 18 |
| 03/27/2012 | 211 | 7 | 11 |
| 03/28/2012 | 206 | 6 | 6 |
| 03/29/2012 | 211 | 11 | 5 |
| 03/30/2012 | 214 | 8 | 10 |
| 03/31/2012 | 218 | 14 | 10 |

**Officer**

/  /                              /  /

(c) 1994 - 2005 Information Technologies, Inc.  St. Louis, MO (314) 991-9115

Ex. B

# Cape Girardeau Co. Sheriff's Office
216 N. Missouri  Jackson, MO  63755

## Inmate Daily Count
For All Agencies
01/01/2010  to 03/31/2012

| Date | Daily Inmate Count | New Incarcerations | New Releases |
|------|-------------------|--------------------|--------------|
| Total Inmate Days | 170621 | | |
| Lowest Inmate Count | 165 | | |
| Highest Inmate Count | 242 | | |
| Average Inmate Count | 207.8 | | |
| New Incarcerations | 7208 | | |
| Total Releases | 7203 | | |

**Officer**

/    /                              /    /

(c) 1994 - 2005 Information Technologies, Inc.  St. Louis, MO (314) 991-9115

Ex. B

| Date | Total Total for Day | Females |
|---|---|---|
| 11/1/2012 | 169 | 28 |
| 11/2/2012 | 174 | 31 |
| 11/3/2012 | 188 | 35 |
| 11/4/2012 | 186 | 36 |
| 11/5/2012 | 176 | 38 |
| 11/6/2012 | 175 | 35 |
| 11/7/2012 | 172 | 35 |
| 11/8/2012 | 178 | 35 |
| 11/9/2012 | 169 | 34 |
| 11/10/2012 | 180 | 35 |
| 11/11/2012 | 178 | 36 |
| 11/12/2012 | 177 | 33 |
| 11/13/2012 | 175 | 33 |
| 11/14/2012 | 170 | 31 |
| 11/15/2012 | 173 | 31 |
| 11/16/2012 | 177 | 29 |
| 11/17/2012 | 183 | 33 |
| 11/18/2012 | 182 | 33 |
| 11/19/2012 | 173 | 31 |
| 11/20/2012 | 173 | 28 |
| 11/21/2012 | 170 | 29 |
| 11/22/2012 | 165 | 27 |
| 11/23/2012 | 170 | 29 |
| 11/24/2012 | 181 | 32 |
| 11/25/2012 | 186 | 33 |
| 11/26/2012 | 179 | 30 |
| 11/27/2012 | 171 | 27 |
| 11/28/2012 | 168 | 27 |
| 11/29/2012 | 168 | 27 |
| 11/30/2012 | 179 | 29 |
|  |  |  |
| Total | 5265 | 950 |

| Date | Total Total for Day | Females |
|---|---|---|
| 12/1/2012 | 172 | 30 |
| 12/2/2012 | 174 | 31 |
| 12/3/2012 | 180 | 37 |
| 12/4/2012 | 177 | 35 |
| 12/5/2012 | 173 | 32 |
| 12/6/2012 | 171 | 31 |
| 12/7/2012 | 173 | 31 |
| 12/8/2012 | 183 | 36 |
| 12/9/2012 | 183 | 37 |
| 12/10/2012 | 174 | 32 |
| 12/11/2012 | 170 | 31 |
| 12/12/2012 | 165 | 31 |
| 12/13/2012 | 170 | 30 |
| 12/14/2012 | 162 | 32 |
| 12/15/2012 | 170 | 34 |
| 12/16/2012 | 172 | 35 |
| 12/17/2012 | 167 | 31 |
| 12/18/2012 | 168 | 32 |
| 12/19/2012 | 168 | 34 |
| 12/20/2012 | 168 | 33 |
| 12/21/2012 | 171 | 32 |
| 12/22/2012 | 178 | 31 |
| 12/23/2012 | 178 | 30 |
| 12/24/2012 | 175 | 29 |
| 12/25/2012 | 176 | 30 |
| 12/26/2012 | 176 | 30 |
| 12/27/2012 | 179 | 31 |
| 12/28/2012 | 178 | 32 |
| 12/29/2012 | 185 | 34 |
| 12/30/2012 | 186 | 35 |
| 12/31/2012 | 185 | 34 |
| Total | 5407 | 969 |

Ex. B

| Females |
|---|
| 32 |
| 32 |
| 31 |
| 31 |
| 31 |
| 29 |
| 29 |
| 30 |
| 30 |
| 29 |
| 32 |
| 30 |
| 31 |
| 31 |
| 32 |
| 32 |
| 34 |
| 32 |
| 32 |
| 34 |
| 33 |
| 31 |
| 35 |
| 32 |
| 34 |
| 37 |
| 35 |
| 33 |
| 26 |
| 34 |
| 32 |
| 986 |

| Date | Total Total for Day | Females |
|---|---|---|
| 9/1/2012 | 223 | 35 |
| 9/2/2012 | 223 | 36 |
| 9/3/2012 | 217 | 35 |
| 9/4/2012 | 213 | 35 |
| 9/5/2012 | 213 | 34 |
| 9/6/2012 | 215 | 36 |
| 9/7/2012 | 211 | 35 |
| 9/8/2012 | 215 | 38 |
| 9/9/2012 | 216 | 40 |
| 9/10/2012 | 206 | 35 |
| 9/11/2012 | 206 | 35 |
| 9/12/2012 | 211 | 37 |
| 9/13/2012 | 212 | 36 |
| 9/14/2012 | 216 | 37 |
| 9/15/2012 | 217 | 37 |
| 9/16/2012 | 217 | 36 |
| 9/17/2012 | 217 | 35 |
| 9/18/2012 | 209 | 35 |
| 9/19/2012 | 203 | 35 |
| 9/20/2012 | 198 | 35 |
| 9/21/2012 | 199 | 34 |
| 9/22/2012 | 210 | 39 |
| 9/23/2012 | 211 | 39 |
| 9/24/2012 | 211 | 38 |
| 9/25/2012 | 204 | 35 |
| 9/26/2012 | 205 | 33 |
| 9/27/2012 | 201 | 35 |
| 9/28/2012 | 197 | 32 |
| 9/29/2012 | 210 | 36 |
| 9/30/2012 | 211 | 38 |
| Total | 6317 | 1076 |

| Date | Total Total for Day | Females |
|---|---|---|
| 10/1/2012 | 203 | 35 |
| 10/2/2012 | 198 | 34 |
| 10/3/2012 | 192 | 35 |
| 10/4/2012 | 188 | 34 |
| 10/5/2012 | 189 | 33 |
| 10/6/2012 | 199 | 37 |
| 10/7/2012 | 202 | 39 |
| 10/8/2012 | 191 | 35 |
| 10/9/2012 | 192 | 36 |
| 10/10/2012 | 186 | 37 |
| 10/11/2012 | 178 | 35 |
| 10/12/2012 | 170 | 35 |
| 10/13/2012 | 186 | 36 |
| 10/14/2012 | 185 | 35 |
| 10/15/2012 | 173 | 32 |
| 10/16/2012 | 175 | 32 |
| 10/17/2012 | 180 | 32 |
| 10/18/2012 | 177 | 32 |
| 10/19/2012 | 178 | 30 |
| 10/20/2012 | 188 | 31 |
| 10/21/2012 | 192 | 34 |
| 10/22/2012 | 184 | 29 |
| 10/23/2012 | 178 | 28 |
| 10/24/2012 | 176 | 29 |
| 10/25/2012 | 175 | 29 |
| 10/26/2012 | 173 | 28 |
| 10/27/2012 | 183 | 29 |
| 10/28/2012 | 184 | 28 |
| 10/29/2012 | 179 | 29 |
| 10/30/2012 | 171 | 27 |
| 10/31/2012 | 172 | 28 |
| Total | 5697 | 1003 |

Ex. B

| Date | Total Total for Day | Females |
|------|------|------|
| 6/1/2012 | 180 | 23 |
| 6/2/2012 | 183 | 24 |
| 6/3/2012 | 178 | 21 |
| 6/4/2012 | 176 | 20 |
| 6/5/2012 | 174 | 21 |
| 6/6/2012 | 174 | 23 |
| 6/7/2012 | 173 | 21 |
| 6/8/2012 | 174 | 22 |
| 6/9/2012 | 181 | 24 |
| 6/10/2012 | 184 | 23 |
| 6/11/2012 | 179 | 22 |
| 6/12/2012 | 179 | 22 |
| 6/13/2012 | 185 | 25 |
| 6/14/2012 | 185 | 27 |
| 6/15/2012 | 179 | 25 |
| 6/16/2012 | 189 | 30 |
| 6/17/2012 | 193 | 31 |
| 6/18/2012 | 184 | 29 |
| 6/19/2012 | 181 | 31 |
| 6/20/2012 | 172 | 30 |
| 6/21/2012 | 177 | 27 |
| 6/22/2012 | 186 | 28 |
| 6/23/2012 | 191 | 31 |
| 6/24/2012 | 193 | 31 |
| 6/25/2012 | 192 | 32 |
| 6/26/2012 | 195 | 33 |
| 6/27/2012 | 194 | 30 |
| 6/28/2012 | 196 | 30 |
| 6/29/2012 | 197 | 28 |
| 6/30/2012 | 206 | 34 |
| Total | 5530 | 798 |

| Date | Total Total for Day | Females |
|------|------|------|
| 7/1/2012 | 205 | 32 |
| 7/2/2012 | 202 | 30 |
| 7/3/2012 | 199 | 34 |
| 7/4/2012 | 198 | 33 |
| 7/5/2012 | 199 | 34 |
| 7/6/2012 | 195 | 34 |
| 7/7/2012 | 203 | 37 |
| 7/8/2012 | 203 | 39 |
| 7/9/2012 | 192 | 32 |
| 7/10/2012 | 191 | 30 |
| 7/11/2012 | 198 | 31 |
| 7/12/2012 | 195 | 29 |
| 7/13/2012 | 205 | 31 |
| 7/14/2012 | 206 | 32 |
| 7/15/2012 | 209 | 34 |
| 7/16/2012 | 207 | 34 |
| 7/17/2012 | 208 | 32 |
| 7/18/2012 | 195 | 31 |
| 7/19/2012 | 203 | 33 |
| 7/20/2012 | 206 | 35 |
| 7/21/2012 | 205 | 31 |
| 7/22/2012 | 203 | 30 |
| 7/23/2012 | 206 | 33 |
| 7/24/2012 | 202 | 33 |
| 7/25/2012 | 199 | 32 |
| 7/26/2012 | 198 | 32 |
| 7/27/2012 | 201 | 30 |
| 7/28/2012 | 207 | 34 |
| 7/29/2012 | 206 | 32 |
| 7/30/2012 | 196 | 29 |
| 7/31/2012 | 204 | 30 |
| Total | 6246 | 1003 |

| Date | Total Total for Day |
|------|------|
| 8/1/2012 | 203 |
| 8/2/2012 | 207 |
| 8/3/2012 | 208 |
| 8/4/2012 | 216 |
| 8/5/2012 | 213 |
| 8/6/2012 | 205 |
| 8/7/2012 | 194 |
| 8/8/2012 | 193 |
| 8/9/2012 | 197 |
| 8/10/2012 | 194 |
| 8/11/2012 | 204 |
| 8/12/2012 | 202 |
| 8/13/2012 | 204 |
| 8/14/2012 | 202 |
| 8/15/2012 | 204 |
| 8/16/2012 | 204 |
| 8/17/2012 | 200 |
| 8/18/2012 | 202 |
| 8/19/2012 | 208 |
| 8/20/2012 | 202 |
| 8/21/2012 | 204 |
| 8/22/2012 | 201 |
| 8/23/2012 | 205 |
| 8/24/2012 | 209 |
| 8/25/2012 | 215 |
| 8/26/2012 | 217 |
| 8/27/2012 | 209 |
| 8/28/2012 | 215 |
| 8/29/2012 | 214 |
| 8/30/2012 | 206 |
| 8/31/2012 | 205 |
| Total | 6362 |

Ex. B

| Females |
| --- |
|  |
|  |
|  |
|  |
|  |
|  |
|  |
|  |
|  |
|  |
|  |
|  |
|  |
|  |
|  |
|  |
|  |
|  |
|  |
|  |
|  |
|  |
|  |
|  |
|  |
|  |
|  |

| Date | Total Total for Day | Females |
| --- | --- | --- |
| 4/1/2012 | 191 | 23 |
| 4/2/2012 | 191 | 23 |
| 4/3/2012 | 193 | 23 |
| 4/4/2012 | 191 | 24 |
| 4/5/2012 | 194 | 27 |
| 4/6/2012 | 199 | 28 |
| 4/7/2012 | 208 | 30 |
| 4/8/2012 | 209 | 31 |
| 4/9/2012 | 205 | 30 |
| 4/10/2012 | 205 | 30 |
| 4/11/2012 | 204 | 30 |
| 4/12/2012 | 201 | 29 |
| 4/13/2012 | 199 | 27 |
| 4/14/2012 | 212 | 31 |
| 4/15/2012 | 212 | 30 |
| 4/16/2012 | 206 | 24 |
| 4/17/2012 | 202 | 25 |
| 4/18/2012 | 198 | 26 |
| 4/19/2012 | 202 | 27 |
| 4/20/2012 | 202 | 27 |
| 4/21/2012 | 210 | 31 |
| 4/22/2012 | 210 | 32 |
| 4/23/2012 | 205 | 28 |
| 4/24/2012 | 201 | 27 |
| 4/25/2012 | 192 | 24 |
| 4/26/2012 | 199 | 26 |
| 4/27/2012 | 201 | 26 |
| 4/28/2012 | 205 | 28 |
| 4/29/2012 | 204 | 29 |
| 4/30/2012 | 199 | 26 |
| Total | 6050 | 822 |

| Date | Total Total for Day | Females |
| --- | --- | --- |
| 5/1/2012 | 197 | 26 |
| 5/2/2012 | 190 | 26 |
| 5/3/2012 | 194 | 25 |
| 5/4/2012 | 191 | 26 |
| 5/5/2012 | 196 | 27 |
| 5/6/2012 | 202 | 28 |
| 5/7/2012 | 198 | 25 |
| 5/8/2012 | 195 | 26 |
| 5/9/2012 | 194 | 25 |
| 5/10/2012 | 189 | 26 |
| 5/11/2012 | 188 | 28 |
| 5/12/2012 | 196 | 30 |
| 5/13/2012 | 198 | 30 |
| 5/14/2012 | 197 | 28 |
| 5/15/2012 | 199 | 28 |
| 5/16/2012 | 195 | 30 |
| 5/17/2012 | 196 | 29 |
| 5/18/2012 | 195 | 28 |
| 5/19/2012 | 196 | 29 |
| 5/20/2012 | 198 | 29 |
| 5/21/2012 | 199 | 31 |
| 5/22/2012 | 196 | 29 |
| 5/23/2012 | 193 | 30 |
| 5/24/2012 | 189 | 29 |
| 5/25/2012 | 193 | 30 |
| 5/26/2012 | 202 | 32 |
| 5/27/2012 | 203 | 30 |
| 5/28/2012 | 199 | 29 |
| 5/29/2012 | 201 | 28 |
| 5/30/2012 | 184 | 24 |
| 5/31/2012 | 178 | 23 |
| Total | 6041 | 864 |

Ex. B

| Date | Total Total for Day | Females |
|------|------|------|
| 1/2/2012 | | |
| 1/3/2012 | | |
| 1/4/2012 | | |
| 1/5/2012 | | |
| 1/6/2012 | | |
| 1/7/2012 | | |
| 1/8/2012 | | |
| 1/9/2012 | | |
| 1/10/2012 | | |
| 1/11/2012 | | |
| 1/12/2012 | | |
| 1/13/2012 | | |
| 1/14/2012 | | |
| 1/15/2012 | | |
| 1/16/2012 | | |
| 1/17/2012 | | |
| 1/18/2012 | | |
| 1/19/2012 | | |
| 1/20/2012 | | |
| 1/21/2012 | | |
| 1/22/2012 | | |
| 1/23/2012 | | |
| 1/24/2012 | | |
| 1/25/2012 | | |
| 1/26/2012 | | |
| 1/27/2012 | | |
| 1/28/2012 | | |
| 1/29/2012 | | |
| 1/30/2012 | | |
| 1/31/2012 | | |
| Total | | |

| Date | Total Total for Day | Females |
|------|------|------|
| 2/1/2012 | | |
| 2/2/2012 | | |
| 2/3/2012 | | |
| 2/4/2012 | | |
| 2/5/2012 | | |
| 2/6/2012 | | |
| 2/7/2012 | | |
| 2/8/2012 | | |
| 2/9/2012 | | |
| 2/10/2012 | | |
| 2/11/2012 | | |
| 2/12/2012 | | |
| 2/13/2012 | | |
| 2/14/2012 | | |
| 2/15/2012 | | |
| 2/16/2012 | | |
| 2/17/2012 | | |
| 2/18/2012 | | |
| 2/19/2012 | | |
| 2/20/2012 | | |
| 2/21/2012 | | |
| 2/22/2012 | | |
| 2/23/2012 | | |
| 2/24/2012 | | |
| 2/25/2012 | | |
| 2/26/2012 | | |
| 2/27/2012 | | |
| 2/28/2012 | | |
| 2/29/2012 | | |
| | | |
| | | |
| Total | | |

| Date | Total Total for Day |
|------|------|
| 3/1/2012 | |
| 3/2/2012 | |
| 3/3/2012 | |
| 3/4/2012 | |
| 3/5/2012 | |
| 3/6/2012 | |
| 3/7/2012 | |
| 3/8/2012 | |
| 3/9/2012 | |
| 3/10/2012 | |
| 3/11/2012 | |
| 3/12/2012 | |
| 3/13/2012 | |
| 3/14/2012 | |
| 3/15/2012 | |
| 3/16/2012 | |
| 3/17/2012 | |
| 3/18/2012 | |
| 3/19/2012 | |
| 3/20/2012 | |
| 3/21/2012 | |
| 3/22/2012 | |
| 3/23/2012 | |
| 3/24/2012 | |
| 3/25/2012 | |
| 3/26/2012 | |
| 3/27/2012 | |
| 3/28/2012 | |
| 3/29/2012 | |
| 3/30/2012 | |
| 3/31/2012 | |
| Total | |

Ex. B

| Date | Total Total for Day | Females |
|------|------|------|
| 12/1/2013 | 185 | 35 |
| 12/2/2013 | 183 | 33 |
| 12/3/2013 | 183 | 32 |
| 12/4/2013 | 193 | 33 |
| 12/5/2013 | 183 | 31 |
| 12/6/2013 | 188 | 32 |
| 12/7/2013 | 184 | 30 |
| 12/8/2013 | 184 | 31 |
| 12/9/2013 | 184 | 31 |
| 12/10/2013 | 182 | 33 |
| 12/11/2013 | 185 | 35 |
| 12/12/2013 | 196 | 35 |
| 12/13/2013 | 183 | 35 |
| 12/14/2013 | 182 | 36 |
| 12/15/2013 | 183 | 36 |
| 12/16/2013 | 169 | 37 |
| 12/17/2013 | 177 | 33 |
| 12/18/2013 | 179 | 35 |
| 12/19/2013 | 191 | 37 |
| 12/20/2013 | 191 | 39 |
| 12/21/2013 | 188 | 31 |
| 12/22/2013 | 192 | 33 |
| 12/23/2013 | 187 | 30 |
| 12/24/2013 | 189 | 32 |
| 12/25/2013 | 186 | 32 |
| 12/26/2013 | 183 | 39 |
| 12/27/2013 | 185 | 32 |
| 12/28/2013 | 196 | 36 |
| 12/29/2013 | 196 | 36 |
| 12/30/2013 | 189 | 33 |
| 12/31/2013 | 195 | 36 |
| Total | 5771 | 1013 |

Ex. B

| Date | Total Total for Day | Females |
|------|------|------|
| 10/1/2013 | 220 | 38 |
| 10/2/2013 | 213 | 35 |
| 10/3/2013 | 209 | 35 |
| 10/4/2013 | 208 | 34 |
| 10/5/2013 | 215 | 34 |
| 10/6/2013 | 220 | 35 |
| 10/7/2013 | 216 | 35 |
| 10/8/2013 | 204 | 33 |
| 10/9/2013 | 205 | 33 |
| 10/10/2013 | 204 | 31 |
| 10/11/2013 | 201 | 31 |
| 10/12/2013 | 214 | 36 |
| 10/13/2013 | 218 | 37 |
| 10/14/2013 | 215 | 37 |
| 10/15/2013 | 215 | 37 |
| 10/16/2013 | 210 | 36 |
| 10/17/2013 | 205 | 33 |
| 10/18/2013 | 211 | 39 |
| 10/19/2013 | 212 | 39 |
| 10/20/2013 | 211 | 39 |
| 10/21/2013 | 207 | 36 |
| 10/22/2013 | 200 | 33 |
| 10/23/2013 | 198 | 35 |
| 10/24/2013 | 195 | 36 |
| 10/25/2013 | 200 | 38 |
| 10/26/2013 | 203 | 40 |
| 10/27/2013 | 200 | 38 |
| 10/28/2013 | 194 | 36 |
| 10/29/2013 | 195 | 38 |
| 10/30/2013 | 195 | 38 |
| 10/31/2013 | 194 | 37 |
| Total | 6407 | 1112 |

| Date | Total Total for Day | Females |
|------|------|------|
| 11/1/2013 | 186 | 37 |
| 11/2/2013 | 197 | 42 |
| 11/3/2013 | 202 | 43 |
| 11/4/2013 | 196 | 42 |
| 11/5/2013 | 196 | 37 |
| 11/6/2013 | 197 | 37 |
| 11/7/2013 | 198 | 39 |
| 11/8/2013 | 194 | 38 |
| 11/9/2013 | 193 | 36 |
| 11/10/2013 | 194 | 35 |
| 11/11/2013 | 188 | 35 |
| 11/12/2013 | 187 | 36 |
| 11/13/2013 | 186 | 35 |
| 11/14/2013 | 186 | 34 |
| 11/15/2013 | 190 | 36 |
| 11/16/2013 | 196 | 38 |
| 11/17/2013 | 194 | 40 |
| 11/18/2013 | 187 | 37 |
| 11/19/2013 | 189 | 40 |
| 11/20/2013 | 187 | 38 |
| 11/21/2013 | 185 | 39 |
| 11/22/2013 | 181 | 38 |
| 11/23/2013 | 181 | 38 |
| 11/24/2013 | 184 | 37 |
| 11/25/2013 | 176 | 35 |
| 11/26/2013 | 179 | 37 |
| 11/27/2013 | 177 | 37 |
| 11/28/2013 | 176 | 33 |
| 11/29/2013 | 175 | 33 |
| 11/30/2013 | 184 | 35 |
| Total | 5641 | 1117 |

Ex. B

| Total Total for Day | Females |
|---|---|
| 220 | 40 |
| 215 | 41 |
| 215 | 40 |
| 218 | 41 |
| 220 | 39 |
| 225 | 44 |
| 231 | 47 |
| 226 | 44 |
| 222 | 43 |
| 219 | 43 |
| 218 | 44 |
| 220 | 44 |
| 223 | 43 |
| 226 | 43 |
| 222 | 42 |
| 213 | 41 |
| 214 | 40 |
| 211 | 38 |
| 204 | 38 |
| 209 | 40 |
| 212 | 40 |
| 210 | 39 |
| 212 | 41 |
| 211 | 37 |
| 218 | 38 |
| 221 | 41 |
| 216 | 42 |
| 215 | 42 |
| 221 | 41 |
| 217 | 38 |
| 217 | 39 |
| 6741 | 1273 |

| Date | Total Total for Day | Females |
|---|---|---|
| 8/1/2013 | 224 | 41 |
| 8/2/2013 | 226 | 41 |
| 8/3/2013 | 227 | 40 |
| 8/4/2013 | 232 | 39 |
| 8/5/2013 | 226 | 38 |
| 8/6/2013 | 223 | 35 |
| 8/7/2013 | 217 | 34 |
| 8/8/2013 | 223 | 35 |
| 8/9/2013 | 236 | 37 |
| 8/10/2013 | 244 | 41 |
| 8/11/2013 | 245 | 41 |
| 8/12/2013 | 239 | 40 |
| 8/13/2013 | 237 | 39 |
| 8/14/2013 | 239 | 37 |
| 8/15/2013 | 237 | 38 |
| 8/16/2013 | 236 | 41 |
| 8/17/2013 | 214 | 40 |
| 8/18/2013 | 245 | 41 |
| 8/19/2013 | 246 | 41 |
| 8/20/2013 | 235 | 41 |
| 8/21/2013 | 235 | 42 |
| 8/22/2013 | 235 | 43 |
| 8/23/2013 | 236 | 40 |
| 8/24/2013 | 236 | 39 |
| 8/25/2013 | 239 | 39 |
| 8/26/2013 | 230 | 38 |
| 8/27/2013 | 225 | 35 |
| 8/28/2013 | 216 | 35 |
| 8/29/2013 | 217 | 33 |
| 8/30/2013 | 216 | 33 |
| 8/31/2013 | 224 | 38 |
| Total | 7160 | 1195 |

| Date | Total Total for Day | Females |
|---|---|---|
| 9/1/2013 | 230 | 37 |
| 9/2/2013 | 230 | 35 |
| 9/3/2013 | 217 | 33 |
| 9/4/2013 | 217 | 34 |
| 9/5/2013 | 215 | 33 |
| 9/6/2013 | 208 | 33 |
| 9/7/2013 | 220 | 34 |
| 9/8/2013 | 225 | 36 |
| 9/9/2013 | 218 | 35 |
| 9/10/2013 | 210 | 34 |
| 9/11/2013 | 204 | 32 |
| 9/12/2013 | 200 | 32 |
| 9/13/2013 | 202 | 28 |
| 9/14/2013 | 212 | 31 |
| 9/15/2013 | 216 | 34 |
| 9/16/2013 | 210 | 35 |
| 9/17/2013 | 210 | 36 |
| 9/18/2013 | 211 | 39 |
| 9/19/2013 | 212 | 42 |
| 9/20/2013 | 210 | 39 |
| 9/21/2013 | 212 | 39 |
| 9/22/2013 | 216 | 40 |
| 9/23/2013 | 212 | 41 |
| 9/24/2013 | 203 | 38 |
| 9/25/2013 | 206 | 41 |
| 9/26/2013 | 208 | 41 |
| 9/27/2013 | 205 | 35 |
| 9/28/2013 | 216 | 37 |
| 9/29/2013 | 223 | 38 |
| 9/30/2013 | 219 | 38 |
| | | |
| Total | 6397 | 1080 |

Ex. B

| Date | Total Total for Day | Females | | Date | Total Total for Day | Females | | Date |
|------|------|------|---|------|------|------|---|------|
| 5/1/2013 | 214 | 41 | | 6/1/2013 | 214 | 39 | | 7/1/2013 |
| 5/2/2013 | 220 | 44 | | 6/2/2013 | 215 | 39 | | 7/2/2013 |
| 5/3/2013 | 222 | 44 | | 6/3/2013 | 208 | 34 | | 7/3/2013 |
| 5/4/2013 | 238 | 48 | | 6/4/2013 | 210 | 33 | | 7/4/2013 |
| 5/5/2013 | 239 | 49 | | 6/5/2013 | 210 | 37 | | 7/5/2013 |
| 5/6/2013 | 229 | 43 | | 6/6/2013 | 209 | 37 | | 7/6/2013 |
| 5/7/2013 | 238 | 46 | | 6/7/2013 | 209 | 38 | | 7/7/2013 |
| 5/8/2013 | 230 | 48 | | 6/8/2013 | 228 | 45 | | 7/8/2013 |
| 5/9/2013 | 228 | 48 | | 6/9/2013 | 226 | 45 | | 7/9/2013 |
| 5/10/2013 | 222 | 48 | | 6/10/2013 | 222 | 42 | | 7/10/2013 |
| 5/11/2013 | 232 | 51 | | 6/11/2013 | 213 | 37 | | 7/11/2013 |
| 5/12/2013 | 239 | 53 | | 6/12/2013 | 209 | 36 | | 7/12/2013 |
| 5/13/2013 | 227 | 52 | | 6/13/2013 | 208 | 36 | | 7/13/2013 |
| 5/14/2013 | 233 | 51 | | 6/14/2013 | 204 | 36 | | 7/14/2013 |
| 5/15/2013 | 230 | 50 | | 6/15/2013 | 209 | 35 | | 7/15/2013 |
| 5/16/2013 | 224 | 47 | | 6/16/2013 | 213 | 39 | | 7/16/2013 |
| 5/17/2013 | 222 | 43 | | 6/17/2013 | 207 | 33 | | 7/17/2013 |
| 5/18/2013 | 222 | 46 | | 6/18/2013 | 204 | 32 | | 7/18/2013 |
| 5/19/2013 | 238 | 45 | | 6/19/2013 | 211 | 36 | | 7/19/2013 |
| 5/20/2013 | 230 | 45 | | 6/20/2013 | 201 | 33 | | 7/20/2013 |
| 5/21/2013 | 227 | 42 | | 6/21/2013 | 204 | 36 | | 7/21/2013 |
| 5/22/2013 | 224 | 44 | | 6/22/2013 | 213 | 41 | | 7/22/2013 |
| 5/23/2013 | 224 | 46 | | 6/23/2013 | 217 | 41 | | 7/23/2013 |
| 5/24/2013 | 224 | 42 | | 6/24/2013 | 210 | 40 | | 7/24/2013 |
| 5/25/2013 | 226 | 43 | | 6/25/2013 | 209 | 38 | | 7/25/2013 |
| 5/26/2013 | 233 | 46 | | 6/26/2013 | 213 | 38 | | 7/26/2013 |
| 5/27/2013 | 220 | 41 | | 6/27/2013 | 218 | 42 | | 7/27/2013 |
| 5/28/2013 | 226 | 42 | | 6/28/2013 | 217 | 42 | | 7/28/2013 |
| 5/29/2013 | 218 | 37 | | 6/29/2013 | 218 | 40 | | 7/29/2013 |
| 5/30/2013 | 217 | 35 | | 6/30/2013 | 223 | 41 | | 7/30/2013 |
| 5/31/2013 | 214 | 30 | | | | | | 7/31/2013 |
| Total | 7030 | 1360 | | Total | 6372 | 1141 | | Total |

Ex. B

| Date | Total Total for Day | Females |
|---|---|---|
| 3/1/2013 | 218 | 45 |
| 3/2/2013 | 222 | 45 |
| 3/3/2013 | 226 | 46 |
| 3/4/2013 | 214 | 45 |
| 3/5/2013 | 208 | 42 |
| 3/6/2013 | 202 | 42 |
| 3/7/2013 | 201 | 40 |
| 3/8/2013 | 201 | 41 |
| 3/9/2013 | 215 | 43 |
| 3/10/2013 | 219 | 41 |
| 3/11/2013 | 209 | 37 |
| 3/12/2013 | 211 | 43 |
| 3/13/2013 | 210 | 43 |
| 3/14/2013 | 212 | 38 |
| 3/15/2013 | 221 | 38 |
| 3/16/2013 | 238 | 45 |
| 3/17/2013 | 240 | 45 |
| 3/18/2013 | 231 | 41 |
| 3/19/2013 | 229 | 42 |
| 3/20/2013 | 223 | 40 |
| 3/21/2013 | 229 | 39 |
| 3/22/2013 | 233 | 39 |
| 3/23/2013 | 239 | 40 |
| 3/24/2013 | 241 | 38 |
| 3/25/2013 | 236 | 34 |
| 3/26/2013 | 233 | 30 |
| 3/27/2013 | 241 | 33 |
| 3/28/2013 | 231 | 34 |
| 3/29/2013 | 234 | 36 |
| 3/30/2013 | 242 | 38 |
| 3/31/2013 | 236 | 36 |
| Total | 6945 | 1239 |

| Date | Total Total for Day | Females |
|---|---|---|
| 4/1/2013 | 223 | 25 |
| 4/2/2013 | 228 | 27 |
| 4/3/2013 | 223 | 26 |
| 4/4/2013 | 233 | 30 |
| 4/5/2013 | 233 | 28 |
| 4/6/2013 | 227 | 26 |
| 4/7/2013 | 229 | 27 |
| 4/8/2013 | 220 | 21 |
| 4/9/2013 | 216 | 22 |
| 4/10/2013 | 216 | 25 |
| 4/11/2013 | 216 | 27 |
| 4/12/2013 | 218 | 26 |
| 4/13/2013 | 224 | 28 |
| 4/14/2013 | 229 | 28 |
| 4/15/2013 | 224 | 23 |
| 4/16/2013 | 223 | 26 |
| 4/17/2013 | 221 | 29 |
| 4/18/2013 | 219 | 30 |
| 4/19/2013 | 219 | 32 |
| 4/20/2013 | 228 | 35 |
| 4/21/2013 | 230 | 34 |
| 4/22/2013 | 220 | 28 |
| 4/23/2013 | 224 | 31 |
| 4/24/2013 | 228 | 34 |
| 4/25/2013 | 225 | 34 |
| 4/26/2013 | 225 | 32 |
| 4/27/2013 | 229 | 37 |
| 4/28/2013 | 217 | 38 |
| 4/29/2013 | 214 | 34 |
| 4/30/2013 | 212 | 35 |
| | | |
| Total | 6693 | 878 |

Ex. B

Jail Count

| Date | Total Total for Day | Females | | Date | Total Total for Day | Females |
|---|---|---|---|---|---|---|
| 1/1/2013 | 181 | 32 | | 2/1/2013 | 214 | 51 |
| 1/2/2013 | 182 | 33 | | 2/2/2013 | 222 | 53 |
| 1/3/2013 | 189 | 36 | | 2/3/2013 | 221 | 53 |
| 1/4/2013 | 187 | 34 | | 2/4/2013 | 217 | 52 |
| 1/5/2013 | 192 | 38 | | 2/5/2013 | 223 | 51 |
| 1/5/2013 | 188 | 38 | | 2/6/2013 | 218 | 48 |
| 1/6/2013 | 184 | 36 | | 2/7/2013 | 220 | 46 |
| 1/7/2013 | 186 | 37 | | 2/8/2013 | 227 | 47 |
| 1/8/2013 | 206 | 47 | | 2/9/2013 | 234 | 49 |
| 1/9/2013 | 207 | 48 | | 2/10/2013 | 235 | 50 |
| 1/10/2013 | 213 | 49 | | 2/11/2013 | 230 | 49 |
| 1/11/2013 | 218 | 48 | | 2/12/2013 | 232 | 51 |
| 1/12/2013 | 216 | 47 | | 2/13/2013 | 227 | 50 |
| 1/13/2013 | 212 | 48 | | 2/14/2013 | 221 | 49 |
| 1/14/2013 | 210 | 46 | | 2/15/2013 | 218 | 44 |
| 1/15/2013 | 204 | 46 | | 2/16/2013 | 239 | 49 |
| 1/16/2013 | 206 | 46 | | 2/17/2013 | 239 | 49 |
| 1/17/2013 | 207 | 45 | | 2/18/2013 | 232 | 51 |
| 1/18/2013 | 221 | 51 | | 2/19/2013 | 232 | 49 |
| 1/19/2013 | 223 | 51 | | 2/20/2013 | 214 | 47 |
| 1/20/2013 | 215 | 49 | | 2/21/2013 | 214 | 49 |
| 1/21/2013 | 219 | 50 | | 2/22/2013 | 216 | 46 |
| 1/22/2013 | 214 | 48 | | 2/23/2013 | 214 | 45 |
| 1/23/2013 | 214 | 49 | | 2/24/2013 | 218 | 45 |
| 1/24/2013 | 216 | 51 | | 2/25/2013 | 214 | 45 |
| 1/25/2013 | 217 | 52 | | 2/26/2013 | 215 | 42 |
| 1/26/2013 | 217 | 51 | | 2/27/2013 | 214 | 44 |
| 1/27/2013 | 216 | 50 | | 2/28/2013 | 212 | 44 |
| 1/28/2013 | 220 | 55 | | | | |
| 1/29/2013 | 215 | 53 | | | | |
| 1/30/2013 | | | | | | |
| Total | 6195 | 1364 | | Total | 6232 | 1348 |

| Total Total for Day | Females |
|---|---|
| 195 | 31 |
| 202 | 30 |
| 209 | 31 |
| 212 | 34 |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| 818 | 126 |

Ex. B

| Date | Total Total for Day | Females |
|---|---|---|
| 10/1/2014 | 223 | 39 |
| 10/2/2014 | 221 | 38 |
| 10/3/2014 | 222 | 39 |
| 10/4/2014 | 226 | 40 |
| 10/5/2014 | 228 | 38 |
| 10/6/2014 | 232 | 41 |
| 10/7/2014 | 227 | 38 |
| 10/8/2014 | 228 | 40 |
| 10/9/2014 | 236 | 40 |
| 10/10/2014 | 228 | 37 |
| 10/11/2014 | 236 | 38 |
| 10/12/2014 | 238 | 39 |
| 10/13/2014 | 230 | 36 |
| 10/14/2014 | 232 | 38 |
| 10/15/2014 | 231 | 38 |
| 10/16/2014 | 225 | 36 |
| 10/17/2014 | 220 | 35 |
| 10/18/2014 | 222 | 35 |
| 10/19/2014 | 225 | 37 |
| 10/20/2014 | 224 | 39 |
| 10/21/2014 | 219 | 36 |
| 10/22/2014 | 217 | 38 |
| 10/23/2014 | 216 | 37 |
| 10/24/2014 | 221 | 39 |
| 10/25/2014 | 233 | 43 |
| 10/26/2014 | 234 | 42 |
| 10/27/2014 | 230 | 41 |
| 10/28/2014 | 221 | 39 |
| 10/29/2014 | 224 | 39 |
| 10/30/2014 | 222 | 35 |
| 10/31/2014 | 223 | 37 |
| Total | 7014 | 1187 |

| Date | Total Total for Day | Females |
|---|---|---|
| 11/1/2014 | 220 | 36 |
| 11/2/2014 | 222 | 35 |
| 11/3/2014 | 222 | 35 |
| 11/4/2014 | 215 | 37 |
| 11/5/2014 | 211 | 33 |
| 11/6/2014 | 219 | 34 |
| 11/7/2014 | 214 | 33 |
| 11/8/2014 | 216 | 30 |
| 11/9/2014 | 219 | 31 |
| 11/10/2014 | 214 | 33 |
| 11/11/2014 | 210 | 27 |
| 11/12/2014 | 209 | 29 |
| 11/13/2014 | 208 | 28 |
| 11/14/2014 | 209 | 27 |
| 11/15/2014 | 217 | 27 |
| 11/16/2014 | 218 | 27 |
| 11/17/2014 | 215 | 27 |
| 11/18/2014 | 214 | 29 |
| 11/19/2014 | 205 | 29 |
| 11/20/2014 | 202 | 31 |
| 11/21/2014 | 203 | 32 |
| 11/22/2014 | 209 | 31 |
| 11/23/2014 | 205 | 29 |
| 11/24/2014 | 200 | 29 |
| 11/25/2014 | 203 | 31 |
| 11/26/2014 | 206 | 31 |
| 11/27/2014 | 203 | 29 |
| 11/28/2014 | 203 | 30 |
| 11/29/2014 | 211 | 30 |
| 11/30/2014 | 209 | 29 |
| | | |
| Total | 6331 | 919 |

| Date |
|---|
| 12/1/2014 |
| 12/2/2014 |
| 12/3/2014 |
| 12/4/2014 |
| 12/5/2014 |
| 12/6/2014 |
| 12/7/2014 |
| 12/8/2014 |
| 12/9/2014 |
| 12/10/2014 |
| 12/11/2014 |
| 12/12/2014 |
| 12/13/2014 |
| 12/14/2014 |
| 12/15/2014 |
| 12/16/2014 |
| 12/17/2014 |
| 12/18/2014 |
| 12/19/2014 |
| 12/20/2014 |
| 12/21/2014 |
| 12/22/2014 |
| 12/23/2014 |
| 12/24/2014 |
| 12/25/2014 |
| 12/26/2014 |
| 12/27/2014 |
| 12/28/2014 |
| 12/29/2014 |
| 12/30/2014 |
| 12/31/2014 |
| Total |

Ex. B

| Date | Total Total for Day | Females |
|---|---|---|
| 8/1/2014 | 223 | 42 |
| 8/2/2014 | 232 | 46 |
| 8/3/2014 | 229 | 46 |
| 8/4/2014 | 221 | 43 |
| 8/5/2014 | 214 | 39 |
| 8/6/2014 | 213 | 35 |
| 8/7/2014 | 210 | 37 |
| 8/8/2014 | 208 | 37 |
| 8/9/2014 | 213 | 40 |
| 8/10/2014 | 214 | 40 |
| 8/11/2014 | 209 | 37 |
| 8/12/2014 | 205 | 29 |
| 8/13/2014 | 206 | 29 |
| 8/14/2014 | 203 | 34 |
| 8/15/2014 | 207 | 34 |
| 8/16/2014 | 214 | 35 |
| 8/17/2014 | 219 | 35 |
| 8/18/2014 | 212 | 31 |
| 8/19/2014 | 215 | 34 |
| 8/20/2014 | 216 | 37 |
| 8/21/2014 | 209 | 34 |
| 8/22/2014 | 209 | 34 |
| 8/23/2014 | 212 | 35 |
| 8/24/2014 | 213 | 35 |
| 8/25/2014 | 208 | 34 |
| 8/26/2014 | 214 | 32 |
| 8/27/2014 | 221 | 34 |
| 8/28/2014 | 221 | 36 |
| 8/29/2014 | 222 | 34 |
| 8/30/2014 | 228 | 35 |
| 8/31/2014 | 228 | 35 |
| Total | 6668 | 1118 |

| Date | Total Total for Day | Females |
|---|---|---|
| 9/1/2014 | 221 | 33 |
| 9/2/2014 | 222 | 35 |
| 9/3/2014 | 212 | 34 |
| 9/4/2014 | 211 | 31 |
| 9/5/2014 | 207 | 30 |
| 9/6/2014 | 221 | 33 |
| 9/7/2014 | 220 | 34 |
| 9/8/2014 | 215 | 38 |
| 9/9/2014 | 222 | 36 |
| 9/10/2014 | 215 | 33 |
| 9/11/2014 | 214 | 32 |
| 9/12/2014 | 205 | 31 |
| 9/13/2014 | 215 | 35 |
| 9/14/2014 | 215 | 34 |
| 9/15/2014 | 208 | 33 |
| 9/16/2014 | 210 | 32 |
| 9/17/2014 | 209 | 32 |
| 9/18/2014 | 202 | 29 |
| 9/19/2014 | 210 | 39 |
| 9/20/2014 | 216 | 36 |
| 9/21/2014 | 209 | 34 |
| 9/22/2014 | 207 | 32 |
| 9/23/2014 | 206 | 35 |
| 9/24/2014 | 217 | 37 |
| 9/25/2014 | 212 | 35 |
| 9/26/2014 | 215 | 36 |
| 9/27/2014 | 221 | 39 |
| 9/28/2014 | 226 | 39 |
| 9/29/2014 | 219 | 39 |
| 9/30/2014 | 220 | 40 |
| Total | 6422 | 1036 |

Ex. B

| Total Total for Day | Females | | Date | Total Total for Day | Females | | Date | Total Total for Day | Females |
|---|---|---|---|---|---|---|---|---|---|
| 210 | 34 | | 6/1/2014 | 208 | 38 | | 7/1/2014 | 201 | 36 |
| 215 | 36 | | 6/2/2014 | 208 | 40 | | 7/2/2014 | 208 | 37 |
| 219 | 33 | | 6/3/2014 | 202 | 36 | | 7/3/2014 | 208 | 39 |
| 221 | 33 | | 6/4/2014 | 199 | 32 | | 7/4/2014 | 212 | 42 |
| 217 | 31 | | 6/5/2014 | 202 | 31 | | 7/5/2014 | 219 | 43 |
| 210 | 28 | | 6/6/2014 | 201 | 29 | | 7/6/2014 | 219 | 42 |
| 204 | 29 | | 6/7/2014 | 208 | 28 | | 7/7/2014 | 213 | 38 |
| 203 | 28 | | 6/8/2014 | 209 | 30 | | 7/8/2014 | 210 | 38 |
| 203 | 29 | | 6/9/2014 | 208 | 28 | | 7/9/2014 | 215 | 37 |
| 213 | 31 | | 6/10/2014 | 206 | 28 | | 7/10/2014 | 213 | 36 |
| 210 | 30 | | 6/11/2014 | 195 | 23 | | 7/11/2014 | 211 | 36 |
| 205 | 32 | | 6/12/2014 | 202 | 28 | | 7/12/2014 | 223 | 40 |
| 207 | 32 | | 6/13/2014 | 205 | 29 | | 7/13/2014 | 222 | 41 |
| 211 | 31 | | 6/14/2014 | 207 | 32 | | 7/14/2014 | 219 | 40 |
| 204 | 34 | | 6/15/2014 | 213 | 35 | | 7/15/2014 | 222 | 40 |
| 203 | 35 | | 6/16/2014 | 210 | 32 | | 7/16/2014 | 222 | 39 |
| 208 | 36 | | 6/17/2014 | 210 | 30 | | 7/17/2014 | 224 | 41 |
| 206 | 36 | | 6/18/2014 | 211 | 32 | | 7/18/2014 | 229 | 48 |
| 199 | 34 | | 6/19/2014 | 202 | 30 | | 7/19/2014 | 230 | 49 |
| 198 | 35 | | 6/20/2014 | 203 | 30 | | 7/20/2014 | 235 | 49 |
| 198 | 37 | | 6/21/2014 | 207 | 33 | | 7/21/2014 | 230 | 47 |
| 204 | 38 | | 6/22/2014 | 208 | 34 | | 7/22/2014 | 231 | 46 |
| 202 | 36 | | 6/23/2014 | 210 | 33 | | 7/23/2014 | 235 | 45 |
| 208 | 35 | | 6/24/2014 | 206 | 33 | | 7/24/2014 | 226 | 44 |
| 218 | 35 | | 6/25/2014 | 206 | 34 | | 7/25/2014 | 227 | 45 |
| 210 | 43 | | 6/26/2014 | 210 | 35 | | 7/26/2014 | 228 | 43 |
| 212 | 43 | | 6/27/2014 | 208 | 35 | | 7/27/2014 | 228 | 45 |
| 205 | 35 | | 6/28/2014 | 211 | 36 | | 7/28/2014 | 222 | 42 |
| 210 | 36 | | 6/29/2014 | 215 | 38 | | 7/29/2014 | 221 | 42 |
| 210 | 36 | | 6/30/2014 | 208 | 38 | | 7/30/2014 | 221 | 41 |
| 203 | 36 | | | | | | 7/31/2014 | 221 | 39 |
| 6446 | 1021 | | Total | 6198 | 970 | | Total | 6845 | 1290 |

Ex. B

| Date | Total Total for Day | Females |
|---|---|---|
| 3/1/2014 | 193 | 24 |
| 3/2/2014 | 193 | 24 |
| 3/3/2014 | 186 | 26 |
| 3/4/2014 | 177 | 24 |
| 3/5/2014 | 181 | 24 |
| 3/6/2014 | 178 | 24 |
| 3/7/2014 | 178 | 24 |
| 3/8/2014 | 190 | 27 |
| 3/9/2014 | 195 | 24 |
| 3/10/2014 | 188 | 29 |
| 3/11/2014 | 199 | 36 |
| 3/12/2014 | 198 | 34 |
| 3/13/2014 | 196 | 31 |
| 3/14/2014 | 196 | 32 |
| 3/15/2014 | 203 | 31 |
| 3/16/2014 | 202 | 32 |
| 3/17/2014 | 199 | 33 |
| 3/18/2014 | 202 | 37 |
| 3/19/2014 | 200 | 37 |
| 3/20/2014 | 203 | 34 |
| 3/21/2014 | 204 | 32 |
| 3/22/2014 | 210 | 32 |
| 3/23/2014 | 211 | 34 |
| 3/24/2014 | 203 | 33 |
| 3/25/2014 | 204 | 35 |
| 3/26/2014 | 205 | 35 |
| 3/27/2014 | 206 | 32 |
| 3/28/2014 | 200 | 32 |
| 3/29/2014 | 212 | 33 |
| 3/30/2014 | 213 | 23 |
| 3/31/2014 | 214 | 33 |
| Total | 6139 | 941 |

| Date | Total Total for Day | Females |
|---|---|---|
| 4/1/2014 | 210 | 31 |
| 4/2/2014 | 203 | 37 |
| 4/3/2014 | 198 | 34 |
| 4/4/2014 | 195 | 31 |
| 4/5/2014 | 198 | 28 |
| 4/6/2014 | 200 | 28 |
| 4/7/2014 | 196 | 27 |
| 4/8/2014 | 199 | 28 |
| 4/9/2014 | 203 | 29 |
| 4/10/2014 | 201 | 25 |
| 4/11/2014 | 204 | 26 |
| 4/12/2014 | 208 | 31 |
| 4/13/2014 | 211 | 32 |
| 4/14/2014 | 207 | 29 |
| 4/15/2014 | 204 | 30 |
| 4/16/2014 | 207 | 33 |
| 4/17/2014 | 205 | 32 |
| 4/18/2014 | 208 | 32 |
| 4/19/2014 | 216 | 32 |
| 4/20/2014 | 214 | 32 |
| 4/21/2014 | 208 | 31 |
| 4/22/2014 | 208 | 34 |
| 4/23/2014 | 210 | 32 |
| 4/24/2014 | 205 | 33 |
| 4/25/2014 | 207 | 32 |
| 4/26/2014 | 212 | 33 |
| 4/27/2014 | 219 | 37 |
| 4/28/2014 | 211 | 34 |
| 4/29/2014 | 211 | 35 |
| 4/30/2014 | 212 | 35 |
| | | |
| Total | 6190 | 943 |

| Date |
|---|
| 5/1/2014 |
| 5/2/2014 |
| 5/3/2014 |
| 5/4/2014 |
| 5/5/2014 |
| 5/6/2014 |
| 5/7/2014 |
| 5/8/2014 |
| 5/9/2014 |
| 5/10/2014 |
| 5/11/2014 |
| 5/12/2014 |
| 5/13/2014 |
| 5/14/2014 |
| 5/15/2014 |
| 5/16/2014 |
| 5/17/2014 |
| 5/18/2014 |
| 5/19/2014 |
| 5/20/2014 |
| 5/21/2014 |
| 5/22/2014 |
| 5/23/2014 |
| 5/24/2014 |
| 5/25/2014 |
| 5/26/2014 |
| 5/27/2014 |
| 5/28/2014 |
| 5/29/2014 |
| 5/30/2014 |
| 5/31/2014 |
| Total |

Ex. B

**Jail Count**

| Date | Total Total for Day | Females |
|---|---|---|
| 1/1/2014 | 189 | 34 |
| 1/2/2014 | 188 | 34 |
| 1/3/2014 | 189 | 35 |
| 1/4/2014 | 202 | 34 |
| 1/5/2014 | 205 | 38 |
| 1/6/2014 | 196 | 36 |
| 1/7/2014 | 198 | 38 |
| 1/8/2014 | 194 | 36 |
| 1/9/2014 | 198 | 36 |
| 1/10/2014 | 203 | 34 |
| 1/11/2014 | 204 | 35 |
| 1/12/2014 | 203 | 34 |
| 1/13/2014 | 194 | 30 |
| 1/14/2014 | 203 | 39 |
| 1/15/2014 | 194 | 37 |
| 1/16/2014 | 190 | 35 |
| 1/17/2014 | 192 | 34 |
| 1/18/2014 | 199 | 37 |
| 1/19/2014 | 198 | 35 |
| 1/20/2014 | 198 | 35 |
| 1/21/2014 | 199 | 39 |
| 1/22/2014 | 201 | 38 |
| 1/23/2014 | 202 | 35 |
| 1/24/2014 | 201 | 35 |
| 1/25/2014 | 201 | 36 |
| 1/26/2014 | 201 | 33 |
| 1/27/2014 | 195 | 30 |
| 1/28/2014 | 196 | 31 |
| 1/29/2014 | 187 | 30 |
| 1/30/2014 | 190 | 31 |
| 1/31/2014 | 190 | 31 |
| Total | 6100 | 1044 |

| Date | Total Total for Day | Females |
|---|---|---|
| 2/1/2014 | 192 | 30 |
| 2/2/2014 | 189 | 34 |
| 2/3/2014 | 185 | 29 |
| 2/4/2014 | 190 | 30 |
| 2/5/2014 | 191 | 31 |
| 2/6/2014 | 187 | 30 |
| 2/7/2014 | 191 | 30 |
| 2/8/2014 | 188 | 27 |
| 2/9/2014 | 190 | 27 |
| 2/10/2014 | 186 | 28 |
| 2/11/2014 | 184 | 28 |
| 2/12/2014 | 179 | 26 |
| 2/13/2014 | 181 | 27 |
| 2/14/2014 | 179 | 25 |
| 2/15/2014 | 184 | 24 |
| 2/16/2014 | 186 | 25 |
| 2/17/2014 | 183 | 23 |
| 2/18/2014 | 185 | 26 |
| 2/19/2014 | 184 | 27 |
| 2/20/2014 | 183 | 27 |
| 2/21/2014 | 179 | 26 |
| 2/22/2014 | 182 | 28 |
| 2/23/2014 | 186 | 29 |
| 2/24/2014 | 183 | 27 |
| 2/25/2014 | 182 | 26 |
| 2/26/2014 | 186 | 26 |
| 2/27/2014 | 181 | 24 |
| 2/28/2014 | 180 | 24 |
| | | |
| | | |
| | | |
| Total | 5176 | 764 |

Ex. B



# Table A

**Effective from**
**February 11, 2014 - December 2014**

## MO_ Cape Girardeau County Jail
## Calling Rates

| No. | Destination Class | Customer Type | Existing Rates* Connect Charge | Per Minute |
|-----|-------------------|---------------|--------------------------------|------------|
| 1 | Local | Collect (Direct Bill) | 2.25 | 0.40 |
| 2 | IntraLATA Intrastate | Collect (Direct Bill) | 2.25 | 0.40 |
| 3 | InterLATA Intrastate | Collect (Direct Bill) | 2.25 | 0.40 |
| 4 | InterLATA Interstate | Collect (Direct Bill) | - | 0.25 |
| 5 | IntraLATA Interstate | Collect (Direct Bill) | - | 0.25 |
| 6 | Local | AdvanceConnect | 2.25 | 0.40 |
| 7 | IntraLATA Intrastate | AdvanceConnect | 2.25 | 0.40 |
| 8 | InterLATA Intrastate | AdvanceConnect | 2.25 | 0.40 |
| 9 | InterLATA Interstate | AdvanceConnect | - | 0.21 |
| 10 | IntraLATA Interstate | AdvanceConnect | - | 0.21 |

*Interstate rates lowered

Prepared December 11, 2014


PLAINTIFF'S EXHIBIT
3

Tex 13 15-14



# Table B

**Effective from
October 7, 2013 thru February 10, 2014**

## MO_ Cape Girardeau County Jail
## Calling Rates

| No. | Destination Class | Customer Type | Existing Rates | |
| --- | --- | --- | --- | --- |
| | | | Connect Charge | Per Minute |
| 1 | Local | Collect (Direct Bill) | 2.25 | 0.40 |
| 2 | IntraLATA Intrastate | Collect (Direct Bill) | 2.25 | 0.40 |
| 3 | InterLATA Intrastate | Collect (Direct Bill) | 2.25 | 0.40 |
| 4 | InterLATA Interstate | Collect (Direct Bill) | 2.25 | 0.40 |
| 5 | IntraLATA Interstate | Collect (Direct Bill) | 2.25 | 0.40 |
| 6 | Local | AdvanceConnect | 2.25 | 0.40 |
| 7 | IntraLATA Intrastate | AdvanceConnect | 2.25 | 0.40 |
| 8 | InterLATA Intrastate | AdvanceConnect | 2.25 | 0.40 |
| 9 | InterLATA Interstate | AdvanceConnect | 2.25 | 0.40 |
| 10 | IntraLATA Interstate | AdvanceConnect | 2.25 | 0.40 |

*State Cost Recovery Fee of 5% added

Prepared December 11, 2014

Ex. B

 **SECURUS** TECHNOLOGIES

# Table C

**Effective from
February 13, 2013 thru October 6, 2013**

## MO_ Cape Girardeau County Jail
## Calling Rates

| No. | Destination Class | Customer Type | Existing Rates* | |
|---|---|---|---|---|
| | | | Connect Charge | Per Minute |
| 1 | Local | Collect (Direct Bill) | 2.25 | 0.40 |
| 2 | IntraLATA Intrastate | Collect (Direct Bill) | 2.25 | 0.40 |
| 3 | InterLATA Intrastate | Collect (Direct Bill) | 2.25 | 0.40 |
| 4 | InterLATA Interstate | Collect (Direct Bill) | 2.25 | 0.40 |
| 5 | IntraLATA Interstate | Collect (Direct Bill) | 2.25 | 0.40 |
| 6 | Local | AdvanceConnect | 2.25 | 0.40 |
| 7 | IntraLATA Intrastate | AdvanceConnect | 2.25 | 0.40 |
| 8 | InterLATA Intrastate | AdvanceConnect | 2.25 | 0.40 |
| 9 | InterLATA Interstate | AdvanceConnect | 2.25 | 0.40 |
| 10 | IntraLATA Interstate | AdvanceConnect | 2.25 | 0.40 |

*Location Validation fee of $0.25/call added

Prepared December 11, 2014

Ex. B

 **SECURUS** TECHNOLOGIES

# Table D

Effective from
April 20, 2009 thru February 12, 2013

## MO_ Cape Girardeau County Jail
**Calling Rates**

| No. | Destination Class | Customer Type | Existing Rates | |
|-----|-------------------|---------------|----------------|---|
| | | | Connect Charge | Per Minute |
| 1 | Local | Collect (Direct Bill) | 2.00 | 0.40 |
| 2 | IntraLATA Intrastate | Collect (Direct Bill) | 2.00 | 0.40 |
| 3 | InterLATA Intrastate | Collect (Direct Bill) | 2.00 | 0.40 |
| 4 | InterLATA Interstate | Collect (Direct Bill) | 2.00 | 0.40 |
| 5 | IntraLATA Interstate | Collect (Direct Bill) | 2.00 | 0.40 |
| 6 | Local | AdvanceConnect | 2.00 | 0.40 |
| 7 | IntraLATA Intrastate | AdvanceConnect | 2.00 | 0.40 |
| 8 | InterLATA Intrastate | AdvanceConnect | 2.00 | 0.40 |
| 9 | InterLATA Interstate | AdvanceConnect | 2.00 | 0.40 |
| 10 | IntraLATA Interstate | AdvanceConnect | 2.00 | 0.40 |

Prepared December 11, 2014

Ex. B

Contraband Incidents



PLAINTIFF'S EXHIBIT
4
JC 12-15-14
PENGAD 800-631-6989

Ex. B

# Cape Girardeau County Sheriff's Office
## Jail Division Incident Report

A. Cheney
1213-180.368A
Found Contraband
Booking
12/20/2013 @ approximately 7:45 P.M.
12/21/2013 @ approximately 6:20 P.M.
573-243-3551
216 N. Missouri St.

On Friday December 20th, 2013 I, Corrections Officer Cheney was processing in a new inmate identified as Zachariah Sutton. After completing the booking process with Sutton, I then escorted him to the med exam room to search his person for possible contraband and to dress him out in state issue uniform.

During the search process, Sutton asked me if he would be able to keep his white socks that he was wearing. I stated that it would be okay, only after I searched them to ensure there was no contraband in them. Sutton removed his right sock and handed it to me. I then searched the sock and found nothing. Sutton proceeded to remove the rest of his clothing. At that point, I asked him to remove his other sock. Sutton did so and handed it to me. Inside I found a lighter and approximately half a pack of cigarettes. I informed Sutton that the items were contraband and that they would be confiscated. Sutton complained stating "we were always taking his tobacco"

At this point I continued my search by instructing Sutton to face me and lift his arms so that I could check to see if he had anything taped underneath his arms. I then instructed Sutton to turn around with his back to me and squat and cough. When he did so, I observed no other contraband. After that, I instructed him to shower. After Sutton showered, he began to exit. At this point I heard a clanking noise as if something hard and small hit the floor. I looked down at the floor and observed a cell phone lying on the floor by Sutton. I confronted Sutton about the cell phone; Sutton then asked if I wanted that as well. I told him that I did need the phone; Sutton then picked up the phone and began pushing buttons on the phone as if he was trying to send a message. I ordered Sutton to give me the phone but he continued to ignore me. I ordered him again to give me the phone and he stated, "I'm turning it off". Sutton then gave me the phone. After retrieving the phone, Sutton began saying " your new, you can't do nothing, you don't even have a taser" I then ordered Sutton to get dressed out. He complied without further incident.

Once dressed out, I placed the cigarettes and lighter in the safe. I then placed his phone in with the rest of his property.

To ensure he had no further contraband, Sutton was placed in ISO.

I have nothing further to report.

A. Cheney

# Cape Girardeau County Sheriff's Office
## Jail Division Incident Report

---

C17 Tony Baliva
I 1113-146.354
Contraband Found
Old Garage
Sunday November 3rd, 2013 1:09am
Sunday November 3rd, 2013 1:24am

---

On November 3rd 2013 at approximately 1:09am. C27 Davis and myself, C17 Baliva we're conducting a perimeter check in the old jail. After completing checking the kitchen area, we proceeded into the old garage area to exit out the garage to finish our perimeter check. While Officer Davis was calling up to Dispatch for them to open the garage door for us to exit, I was walking by the trash bins waiting for the garage door to open I looked down in one of the bins and noticed it was empty, but also notice in the bottom of the bin that there was a small orange (BIC) lighter in the bottom of the bin. I grabbed the lighter to collect for evidence purposes and put it into a rubber glove. Then Officer Davis and myself proceeded to finish the perimeter check.


I have nothing further to report at this time.


Thank You

C17 Tony Baliva

Ex. B

# Cape Girardeau County Sheriff's Office
## Jail Division Incident Report

C18 Corrections Officer Christian Castellon
Incident Number: I1014-103.381
Incident: Contraband Found
Date of Occurrence: 10-30-2014
Date of Report: 10-30-2014

On Thursday October 30th, 2014 at approximately 03:29 a.m. I, Corrections Officer Christian Castellon, was booking in Tamara Nelson. I escorted Ms. Nelson to medical exam room to be searched.

I instructed Ms. Nelson to begin undressing, then she turned away from me and began to remove her clothing. I directed her to face me as she undressed. When she turned to me I noticed an orange object and a white object in her right hand that was not there previously. I asked Ms. Nelson what was in her hand, and she responded by telling me it was nothing. I took the objects from her hand, and identified them as syringes. Then Ms. Nelson stated to me; "Those are mine, you can't have them." I continued the search without further incident.

Ms. Nelson was housed in holding cell 2, and the syringes were given to Trooper Lomedico and put into evidence for his case.

Ex. B

# Cape Girardeau County Sheriff's Office
## Jail Division Incident Report

C18 Phillip Colyer
I0513-070.356
Contraband Found
B Pod Cell 206
05/16/2013 at approximately 1840
05/16/2013 1920
216 N Missouri ST
Jackson, MO 63755

---

On 05/16/2013 at approximately 1840 C29 Wiseman and myself, C18 Colyer, went into B Pod Cell 206 to secure the belongings of Inmate David Presberry. This was being done per the directive of S07 Stevens to prevent Inmate Presberry's property from being stolen while he is in holding. Upon entering the cell C29 Wiseman asked Inmate Adrian Settles which areas belonged to Inmate Presberry. Inmate Settles pointed out the top bunk and which desk that Presberry used. C29 Wiseman began collecting things from the desk, and I began collecting things from the top bunk. While retrieving the items from under the mattress on the top bunk I found 2 orange colored pills and 2 pink colored pills. Upon finishing the search I asked Nurse Kristin if Presberry took any medication, and if she could identify those pills. Nurse Kristin told me that Presberry doesn't take those medications, and that it's the same pills that Inmate Patrick Rayford in B106 takes. I have nothing further to report at this time.

C18 Colyer

Ex. B

## Cape Girardeau County Sheriff's Office
### Jail Division Incident Report

S58 Phillip Colyer
I1014-127.356
Old Dorm
10/06/2013 @ 1245
10/06/2013 @ 1404
216 North Missouri ST Jackson, MO 63755
(573) 204-2931

On Sunday October 6, 2013 at approximately 1245 I, Deputy Colyer, was collecting trays, cups, and sporks from dorm with Deputy Seib. While walking to each of the bunks collecting the cups and sporks from the inmates, I noticed that there was approximately half a package of cheese slices in Inmate Anthony McGill's bunk. I asked McGill who gave him the cheese, and he told me it was a weekender that has already left, Troy Williams. I placed McGill in hand restraints and took him to visitation for further questioning.

In visitation I asked McGill if he knew whom the weekender received the cheese from, and he told me that he didn't know. I told McGill that I was going to leave him in visitation for a few minutes while I collected his property so none of it could be taken.

While collecting McGill's property from Old Dorm with Deputy Seib, Deputy Kimberly Gaulding contacted me on the radio. She asked if we could move McGill to a cell, and I told her I would move him. I left McGill's property locked in the sally port and went to visitation. I escorted McGill out of visitation and secured him in the Isolation cell.

On my way back to the Old Dorm the Laundry Man Michael Davis told me that he has witnessed McGill bullying the kitchen workers into bringing him items from the kitchen. Davis also told me that he thought Inmate Danny Warren might be bringing McGill items.

I then went down to the kitchen and spoke to each of the kitchen workers individually. I asked them if anyone was pushing them into bringing them items from the kitchen. I was told by 3 of them that McGill would try to get them to bring him items from the kitchen, and go through other inmate's property at night. They also told me that Inmate Eric Thomas was known for passing items from the kitchen to inmates in the juice and water jugs. Inmate Eric Thomas was fired from the kitchen this morning for sleeping, however his fellow kitchen workers thought it was for passing items. Inmate Danny Warren told me that he was in an argument with McGill this morning because of the bullying.

At this point I had reason to believe that Inmate Anthony McGill was the source of the problem. I returned McGill's property to him and relocated him to F pod from the Old Dorm. I have nothing further to report at this time.

Ex. B

# Cape Girardeau County Sheriff's Office
## Jail Division Incident Report

C21 Officer Crites
I0614-035-349A
Possession of Drug Paraphernalia
Booking At Cape Girardeau County Sheriff's Office
June 16th, 2014 at 11:56
June 16th, 2014 at 15:41

On June 16th, 2014, Deputy Carrie Berry brought in two male subjects to be processed into the Cape Girardeau County Jail. Officer Richard Dettmer and Officer William Crites (myself) were entering the booking area to process the two male subjects.

Upon entering the booking area both male subjects were unrestrained. While patting one male subject down, both subjects were asked if there was anything on them that the Deputy may have missed?, both subjects responded with "No". Officer Crites then directed Officer Dettmer to search inmate Brittany Purl. While Officer Dettmer was patting down inmate Brittany Purl there was no contraband found on inmate Purl's person. After Officer Dettmer was directed to search Purl, Officer Crites had taken his eyes off of inmate Purl to focus on the male subject he was searching. In the time Officer Crites was searching the other subject, Inmate Purl had placed a Crack Pipe with Residue under the vault for cash. Officer Dettmer and myself both missed that Purl had done this during the pat down for contraband into the jail facility.

Officer Dettmer and myself later discovered the Paraphernalia pipe, and notified Lt. Stevens the jail supervisor of the incident. Officer Crites then put gloves on and placed the Paraphernalia in an evidence bag and turned it over to Lt. Stevens.

Officer Crites, then spoke with Captain Mulcahy, who then reviewed the video tape and it clearly showed that while Officer Crites was conducting a pat down of one male subject, that he took his eyes off of Inmate Purl. Officer Dettmer, also missed the fact that inmate Purl had placed the paraphernalia on the counter.

I have nothing further to report at this time.

Ex. B

## Cape Girardeau County Sheriff's Office
### Jail Division Incident Report

C21 Officer Crites
I0614-035-349A
Possession of Drug Paraphernalia
Booking At Cape Girardeau County Sheriff's Office
June 16th, 2014 at 11:56
June 16th, 2014 at 15:41

On June 16, 2014, at approximately 9:56 AM, I, Officer Crites, along with Officer Dettmer, entered the jail booking area to accept a male subject from Deputy Berry.

Upon accepting the male, identified as Brittany Purl, Officer Dettmer conducted a brief pat down of his person to check for weapons and contraband prior to placing him in holding cell 2 to await booking procedures.

At approximately 11:56AM, Officer Dettmer located a silver in color smoking device on a counter top in the booking area. The smoking device was wrapped in black electrical tape and appeared to have a burnt residue on one end.

The jail's attending supervisor, Lieutenant Stevens, was notified of the found drug paraphernalia and after being collected and placed into a evidence bag, it was turned over to him.

After a review of video surveillance in the booking area, it was observed that inmate Purl placed the smoking device on the counter top before being placed into the holding cell.

Ex. B

# Cape Girardeau County Sheriff's Office
## Jail Division Incident Report

C27 Davis
I0413-052.337B
Contraband
C Pod Cell 106
Monday, April 1st 2013 @ approximately 12:08 A.M.
Monday, April 1st 2013 @ approximately 12:32 A.M.

---

On the above date and time I, C27 Tom Davis (DSN#337), C29 Wiseman (DSN#342), C23 Mirly (DSN#345) and C16 Jenkins (DSN#353) entered cell 106 in C pod to search for contraband. Upon searching said cell, C29 Wiseman found an object with a pointed tip and a long handle made out of the end of a toothbrush that had a sharpened to a point resting inside an ink pen handle that appeared to be a shank in the property of inmate Maurice Davis (#20110643).   After being questioned by C29 Wiseman, I also questioned inmate Maurice Davis. Maurice Davis stated to me that he used this object "… to thread up my shoes and stuff." The "shank" was taken into the jail booth. I have nothing further to add at this time.

Ex. B

## Cape Girardeau County Sheriff's Office
### Jail Division Incident Report

C24 Eldridge
I0914-085.369
Found Contraband
Kitchen
9/17/2014 2:30 pm
9/17/2014 2:34 pm

---

On Wednesday September 17th 2014 at 2:30 pm I, Correctional Officer Christopher Eldridge (DSN: C24) was contacted by Lt. Todd Stevens (DSN: S07) that kitchen matron  Melissa had found a box cutter in the kitchen. When I arrived to the kitchen Melissa advised me that she had found the box cutter in the drain of the sink in the kitchen. She stated that when she turned on the garbage disposal in the sink she could hear something banging around in the inside.

Melissa said that she stuck her hand down the drain to see what was causing the sound. She then discovered the box cutter in the sink and contacted Lt. Stevens. The razor blade in the box cutter was missing. She said that she looked inside the drain again and it was not in the drain. She said that she looked around further and still could not find the blade part of the box cutter. After some more looking around the blade was still not found. It is unknown if the box cutter had a blade in the first place.

The box cutter appears to be silver in color and has quite a bit of rust on it. It appears to be an older box cutter and the bottom of the box cutter has separated from each other. I have nothing further to report at this time.

Respectfully,



C24 Eldridge

Ex. B

## Cape Girardeau County Sheriff's Office
### Jail Division Incident Report

C28 Koeppel
Information Report
Possible Contraband
A1 Female Pod
September 9, 2011 @ 1945
September 9, 2011 @ 2345
C28 Koeppel

On September 9, 2011 at approximately 1945 I was taking the book cart to A2 when I exited the booth I could smell cigarette smoke. When I entered the moat area the smell of cigarette smoke was very strong by the female pods A1 and A2. When the door opened for A2 the smell was not as strong but I asked the females who was smoking and they all said they were not. During the process of letting the females select books one of the female inmates

**Dilley, Stacy**
**W/F**
**Ss#: 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**
**DOB: 07/31/1981**

Stated to me that she could smell smoke coming from the fire door, which is located right inside the day room door. I put my face to the door and you could smell straight cigarette smoke coming through the crack of the fire door. I then exited the pod with the bookcart and returned to the booth.

S63 Ordonia and myself returned to A1 a few moments later to see if we could locate the tobacco and lighter. When we first asked the pod nobody said a word. We threatened the pod with a 24, hour lock down and a few of the females stated that they didn't smoke and it wasn't them. One female mumbled "well it's gone now", We then exited the pod and told them they were going to be locked down until somebody confessed to possessing the contraband. Upon entering the booth I was informed by my shift supervisor S61 Goehman that I had to contact Capt. Mulcahy before placing a pod on lockdown. I notified the Captain about the situation and was informed to talk to S61 Goehman and to try to find the contraband.

A few minutes after hanging up with the Captain a female from the A1 pod pressed the intercom and asked to come speak to us the female was

**Vallance, Sandra**
**W/F**
**Ss#: 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**
**DOB: 10/18/1963**

Vallance told Officer Ordonia that she wanted to take the blame because she only had a few days left and she didn't want the pod to get locked down. Officer Ordonia explained

EX. B

# Cape Girardeau County Sheriff's Office
## Jail Division Incident Report

to her that if she was not the one with the contraband that she shouldn't take the blame and that he was not going to lock the pod down that he wanted them to "sweat it out". Vallance stated that she wanted to play along by telling the girls she wasn't going to get to leave on Tuesday that she had a new charge for taking the rap and had to stay in custody.

Upon returning to the pod Vallance told the girls in her cell that she was being charged with possessing contraband in a county facility and played it off as if she was really upset about the matter. About 10 minutes later I noticed a female on the day room door holding a note. The inmate was

**Jansen, Brouk**
**W/F**
**Ss#: 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**
**DOB: 04/07/1981**

Jansen placed a note through the window and returned to the pod. The note will be attached to this report. The note read "Dear Ordonia, The older idiot in 201 had the lighter & we all told her to give it here & she flushed it! I will NOT watch Sandra get in trouble for it. Thanks Brouk Jessica Cari Dawnikia" The female the inmates are referring to is

**Dodson, Lorrie**
**W/F**
**Ss#: 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**
**DOB: 03/04/1956**

Dodson is sentenced to our facility for a total of 60 days for Driving while revoked, Driving while intoxicated, and Stealing. When Dodson entered our facility I was the officer to strip, search her. She had nothing on her person when searched, the only place she could have had the lighter would be in her vagina. I notified Sgt Koehler via text message to let him know that Dodson was the inmate with the contraband according to the other female inmates.

I have nothing further to report at this time.

**EX. B**

# Cape Girardeau County Sheriff's Office
## Jail Division Incident Report

C28 Lana Koeppel
I0411-026
Contraband Found
Moat outside A-1
April 11, 2011 @ 1435
April 11, 2011 @ 1445
C28 Lana Koeppel

On April 11, 2011 at approximately 1425 a female inmate in A2 pressed the intercom and told me that she had some information for me. The inmate I am referring to is

**Poole, Christina L.**
**W/F  DOB: 04-20-1984**
**SS#: 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**

Poole informed me that a female inmate in A1 had a bottle of nail polish in a tampon box in her cell. The inmate I am referring to is:

**Knox, Ashunda P.**
**B/F  DOB: 03-02-1986**
**SS#: 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**

At approximately 1435 I called over the intercom in A1-202 and told Knox to bring the nail polish in the tampon box out and set it in the moat area. She complied with no issue. Upon returning to her cell I exited the booth to the moat area to retrieve the tampon box, inside I found a bottle of finger nail polish wrapped inside a sock. The polish was maroon in color and approximately 3 inches in length. When looking through the rest of the contents of the box I also found 1 blue highlighter approximately 5 ½ inches in length and a green highlighter approximately 5 inches in length. Pictures were taken of the contraband and will be forwarded with this report. I have nothing further to report at this time.

EX. B

# Cape Girardeau County Sheriff's Department

## Inter-Office Correspondence

To: LT T.C. Stevens

From: S56 Deputy Seib

Date: 06-29-2014

Reference: Contraband

---

This evening while passing out mail, inmate Hawkins was escorted to the hole by Officer Crites and myself for constantly being on the glass in E pod and refusing to follow numerous directives to stop doing so. While escorting Hawkins to the hole I noticed this hairpin tucked into the pocket on the front of his shirt. I confiscated the hairpin and placed Hawkins into Holding 2.

I have nothing further to report at this time.

S56 Kris Seib

Ex. B

# Cape Girardeau County Sheriff's Department

## Inter-Office Correspondence

To: S14 Koehler

From: S56 Deputy Seib

Date: 12-30-2013

Reference: Contraband found in South Block

---

On December 30th 2013 at approximately 9:02am, I Deputy Kris Seib did speak with inmate Kylee Dalton in regards to contraband that she was aware of in South Block. Inmate Dalton informed that there was and orange lighter in inmate Michelle Burmeister's cell and that inmate Andrea Furguson, a weekender, was bringing unrolled smoking tobacco and some kind of pills when she came in for her weekends. Inmate Dalton did say that Inmate Furguson was bringing the contraband into the jail by way of hiding it inside of her vagina.

At approximately 9:46am myself, Corrections Officer C29 Joshua Wiseman and Corrections Officer C17 Anthony Baliva searched South Block for the contraband that Inmate Kylee Dalton informed us of. Upon searching South block I found and orange lighter inside of a pad inside of a pack of pads in Inmate Michelle Burmeister's cell. Corrections Officer C17 Anthony Baliva found numerous types of extra clothing and bedding inside of South Block as well. All of the contraband was seized.

At approximately 10:05am myself, Corrections Officer C29 Wiseman and Corrections Officer C17 Baliva returned to the Jail Control Booth.

I have nothing further to report at this time.


S56 Deputy Kris Seib

Ex. B

# Cape Girardeau County Sheriff's Department

## Inter-Office Correspondence

To: Captain Mulcahy

From: S56 Deputy Seib

Date: 08-01-2014

Reference: Razor Blade in Trash

---

On 08-01-2014 at approximately 2045, I was taking out the trash and a razor blade fell out of one of the bags onto the ground. I picked it up and brought it back into the facility after finishing the perimeter check.

I have nothing further to report at this time.


S56 Seib

Ex. B

## Cape Girardeau County Sheriff's Office
### Jail Division Incident Report

Matthew Kight
I0109-008A
Contraband Found
Old Dorm
01/31/2009 @ Approximately 2200
01/31/2009 @ 2340
Matthew Kight
573-587-6840
216 N Missouri St. Jackson Mo. 63755

On Saturday January 31, 2009 at approximately 2200 S09 Sergeant Brooks Brockmire, S57 Erik Koehler, C18 Sunni Meyers, C21 John Simmons and myself conducted a search of the Old Dorm. All inmates were instructed to exit the block and wait in the common area. The common area is located in the old jail outside the kitchen where trays are stacked.

Items found during the search are as following:

Two homemade ink pens.
Two sharpies.
One Ink pen.
One metal plate believed to be off of a lighting fixture.
Two pills. (Unidentified)
Five matches
Numerous burnt matches.
A light amount of tobacco remains

Todd Williams is believed to be in possession of one match. Located underneath his mat in bunk 1-10. Donnie Whitney is believed to be in possession of one homemade ink pen, four matches, numerous burnt matches and the light amount of tobacco remains. This was located underneath Mr. Whitney's bunk number 1-11.

Todd Williams, Jeremy Haynes, Donnie Whitney, Dallis Coomer, Rodney Rogers were all questioned about the found contraband. Jeremy Haynes and Dallis Coomer have both worked as Confidential Informants. Rodney Rogers was questioned about tobacco that we suspected on his bunk. Later it was determined it was coffee. Todd Williams was questioned about the match found in his bunk. Todd Williams is supposed to work with jail staff on locating more contraband.

Donnie Whitney is suspected to be in possession of two razors. Brockmire and myself questioned Donnie Whitney. He denied being in possession of the contraband including the razors. However he felt that if given time he could get us that information including

Ex. B

Cape Girardeau County Sheriff's Office
Jail Division Incident Report

the whereabouts of the razor. At the end of the shift Donnie Whitney had yet to provide us with a razor. He was moved to E-pod. Further information on the findings of this contraband may be available at a later time. This is all I have to report at this time.

Ex. B

# Cape Girardeau County Sheriff's Office
## Jail Division Incident Report

Sgt. Brooks M. Brockmire
I0209-009.A256
Contraband
C Pod
Sunday February 22nd, 2009 @ 1954 hours
03-01-2009 @ 2130 hours
Brooks M. Brockmire
573-243-3551
216 N. Missouri St.  Jackson, MO 63755

On Sunday February 22nd, 2009 I was the on-call and I received a call stating that officers in the jail had information that Lazingo Washington was in possession of marijuana. I responded to the office to investigate this incident.

Upon reporting to the office, I was informed that Lazingo Washington was showing inmates in the pod that he had a small amount of marijuana on his person. The inmates stated that he was hiding the marijuana in the waistband of his jail uniform. I then began to observe the inmates in C pod.

While observing the inmates in C pod, I noticed that there were several inmates in a small group at one of the back tables with Washington. These inmates can be identified as:

Washington, Lazingo
B/M

Owens, Michael
W/M

Jean, Allan
W/M

`The above named inmates were sitting at the table playing cards and I then observed inmates Jean walk into cell C-105 and throw something on the floor. He then flushed the toilet and immediately walked back to the table and sat down. I then observed inmate Owens walk into the cell and pick something up. He walked to the shower and then returned to the table.

Deputy Vaccaro, Jamison, Officer Goehman, Gaulding, and I then exited the control booth and proceeded through the OLD jail to enter the fire doors through the pods to C pod. We entered through E pod and made our way to C pod. Before we entered C pod, we had the laundryman push the laundry into the pod to create a distraction. We then made entry to C pod.

Upon entering C pod, Vaccaro and Goehman instructed Washington, Jean, and Owens to show their hands. Washington and Jean complied and were restrained. Inmate Michael

Ex. B

# Cape Girardeau County Sheriff's Office
## Jail Division Incident Report

Owens stood up and turned his back to us and began to walk through the other inmates in the pod. I observed Owens reach into his pants and then place something in his mouth. I restrained Owens and tried to retrieve the object from his mouth. He had already ingested the object. Owens was placed in hand restraints and escorted to the moat area. Upon further observation of his mouth, Deputy Jamison and I could smell the odor commonly associated with marijuana coming from his breath. There was also a small amount of a green leafy substance on Owens tongue.

Owens was placed in holding cell 4 and I contacted Capt. Mulcahy. Mulcahy stated that he would need to contact the United States Marshals.

A short time later, Capt. Mulcahy called me and stated that Marshal Doerge wanted Owens transported to St. Francis Medical center. Deputy Jamison and I transported Owens to the St. Francis Medical Center ER.

When we arrived at the ER, United States Marshal Ned Boyd met us. Boyd helped escort Owens into the hospital.

During triage, Owens was asked a series of questions about why he was at the ER. We informed the triage nurse that Owen had ingested what we believed to marijuana. Owens was then asked to submit to a urine test, in which he stated he would take. X-Rays were later taken and they did not show any abnormalities. The urine test also show that it was negative for THC.

Owens was discharged from the hospital and returned to the custody of the Cape Girardeau County Sheriff's Department and placed into a medical observation cell.

I have nothing further to report at this time.

EX. B

# Cape Girardeau County Sheriff's Department

## Inter-Office Correspondence

To: Lt Stevens

From: C17 Baliva

Date: 09-12-2013

Reference: Contraband Found

---

At approximately 2:50pm C27 Davis, C23 Mirly, C20 Dockins and I were passing commissary  to North block. As we were exiting North, Davis noticed the odor of cigarette smoke. Then Davis and I walked over to the kitchen area to see if it was coming from that direction. We then walked by South and noticed that it was coming from OD. We continued to pass commissary to South. When we were finished we entered OD and began to strip search each inmate, looking for contraband. As we finished searching each inmate we sent them to the kitchen area where Mirly and Dockins supervised them while Davis and I searched OD. Upon searching I found a (Blue Bic Lighter) in the bunk area of 1-16 cabinet area. The bunk, of Dalton Frymire. The lighter was in plain sight as if someone had just dropped the lighter there to dispose it. Davis and I confronted Frymire about the lighter. Frymire stated that he had no idea where the lighter came from and that he was just here to do his time and leave.

I have nothing further to report at this time.


C17 T. Baliva

Ex. B

# Cape Girardeau County Sheriff's Office
## Jail Division Incident Report

S57 Koehler
I0409-017.277
Inmate Contraband
B Pod
04/09/2009
04/10/2009 at 0734
S57 Koehler
216 N. Missouri Street

Today April 09, 2009 while conducting cell searches we found several items that were contraband. Fingernail clippers were found in B-102. I found a container of homemade alcohol in the day room of B pod. The container of alcohol was found in the trashcan under the trash bag. We also found several cells with extra clothes, blankets, and other items.

Lt. Morgan was notified after the homemade alcohol was found along with all the other items to which Lt. Morgan stated that B pod would be on lock down. The inmates of B pod were given the opportunity to confess to the alcohol to which only one inmate came forward. The inmate was Henry Curtis and he stated that the alcohol was his until he was read his rights per Miranda and found out that there were charges that went along with his confession. Then Curtis stated that the alcohol was not his that he was just trying to get the rest of the pod off of lock down.

Ex. B

## Cape Girardeau County Sheriff's Office
### Jail Division Incident Report

S59 Tony Vaccaro
I1209-059
Smoking in Old dorm/Contraband Found
Old Dorm
Saturday, December 12, 2009 @ approximately 2145
Saturday, December 12, 2009 @ 2229
S59 Tony Vaccaro

---

Today, Saturday, December 12, 2009 at approximately 2145 Deputy Blake Jamison and myself, Deputy Tony Vaccaro, responded to a tip, given by inmate Geronimo Hogan, that Levi Elledge and several other inmates in Old Dorm were both smoking cigarettes and concealing smoking related contraband in the Old Dorm area.

Upon arriving to Old Dorm, Deputy Jamison prompted Elledge to prone out so he could be cuffed. Elledge cooperated with the verbal directive. When the subject came to his feet, we found in the pocket of his shirt, tobacco, matches and thin cardboard paper. We then escorted him to booking.

We arrived in the booking area at approximately 2152 and immediately escorted Elledge to Med Exam where we administered both a frisk and strip search of the subject. While searching Elledge we found, on his person, more tobacco and a blue lighter.

After the search of Elledge was conducted in booking, we placed him in Holding 2 and arrived back to the control area at approximately 2157.

Ex. B

## Cape Girardeau County Sheriff's Office
### Jail Division Incident Report

Deputy Gregory Brown S55
I1209-061.A184
Found Contraband
B-Block Cell-207
December 25th, 2009 8:00 A.M.
December 26th, 2009 12:30 A.M.
Deputy Gregory Brown S55
(573) 243-3551
216 N Missouri St
Jackson, MO 63755

On Friday, December 25th, 2009 at approximately 8:00 A.M., I went into cell B-207 to retrieve all of Inmate Shawn McDiffett cell property.  McDiffett is fully identified as:

**McDiffett, Shawn William**
**W/M DOB: 08/29/69**
**SSN# 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**

Captain James Mulcahy placed McDiffett into administrative segregation for the actions towards Correctional Officer Sie Merriman on December 24th, 2009 during the evening shift hours.

While gathering up all of McDiffett cell property, I found the following contraband inside his cell.  McDiffett was the only inmate assigned to that cell.

#1.     Cigarette lighter, red in color, lighter fuel almost gone, hidden inside a sock with plastic around it.
#2.     Inside the plastic, which was in the sock was a couple pieces of rolling papers.
#3.     A peanut butter jar containing what appears to be the beginning of the process of "jail house homemade hooch", this was located in his bunk.
#4.     A peanut butter jar containing what appears to be the final stage of the process of "jail house homemade hooch", this was located in his sink with a towel covering it up.

The contraband was photographed and then was properly disposed of.  Sgt Eric Koehler was informed of my findings.

S55 Brown 12-26-09

Ex. B

# Cape Girardeau County Sheriff's Office
## Jail Division Incident Report

Matthew Kight
I0310-0012.A292
Contraband Found
In front of Old Dorm
Thursday, March 11th, 2010 @ 0900
Sunday, March 14, 2010 @ 1530
Matt Kight
573-243-3551

Thursday, March 11th, 2010 @ approximately 0900 Deputy Gregg Brown was conducting a search of all the kitchen workers before they returned to the Old Dorm. Brown instructed me to assist with searching the kitchen workers. I began a search of trustee identified as:

Mitchell Smies
DOB: 05/24/1988
SSN: 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
W/M

During my search I reached into Smies shirt pocket. In Smies pocket I felt a small ball possibly wrapped in plastic. I pulled the small object from Smies pocket. I was not for sure of its origin. I asked Smies what the object was. He told me it was tobacco. I did not ask Smies any further questions. Due to the fact I had found what I believed to be contraband I began a strip search of Smies in another area of the jail. I striped search Smies in G-1. G-1 is a shower area with complete privacy. Due to the contraband I felt a strip search was necessary. I did not find any further contraband on Smies. At that point I escorted Smies to booking and placed him into holding cell one.

At that point I informed Sergeant Brooks Brockmire of the contraband. I unwrapped the object and determined it to be what I believe to be two small pouches of tobacco. The tobacco had a very strong mint smell. At that point Sergeant Brockmire, Deputy Brown and myself decided to speak with Smies about the tobacco. Brockmire read Smies his Miranda rights. Smies told us that it was pouch tobacco. Smies refused to tell us how he received the tobacco. Smies lost his trustee status and was placed into C-pod. C-pod is a lockdown pod, not an open bay, which Smies is, accustom to. To my knowledge Smies is not receiving good time. At this time we do not have any information on where the contraband came from or how Smies received it. Due to the small content and nature of the contraband, criminal charges have not yet been filed. I have nothing further to report at this time.

EX. B

# Cape Girardeau County Sheriff's Office
## Jail Division Incident Report

Matthew J. Kight
I0310-0017.B292
Contraband Found
Old Dorm
Monday, March 29th, 2010 @ approx. 23:30
Sunday, April 25, 2010 @ 15:00
Matt Kight
573-243-3198
216. North. Missouri Street. Jackson, MO 63755

---

On Monday, March 29th, 2010 I received at tray pass from server Ethan Barnett that there was contraband in the old dorm.  The following identifies Ethan Barnett:

Ethan Barnett
SSN: 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
DOB: 05/09/1989
W/M

I spoke to Barnett in medical iso.  Barnett explained to me that there was Marijuana and possibly pills located in the old dorm.  Further more he explained to me that this contraband was going to the federal inmates.  Barnett felt that if he was to divulge further information he should be granted early release.

I contacted Captain Mulcahy to relay Barnett's request.  Mulcahy informed me that we could not promise such a release.  Furthermore without the contraband in hand and better information he would not deal with Barnett.  Barnett was pretty upset with this information.  Barnett did not want to work with us anymore.  Captain Mulcahy informed this shift to search old dorm anyways.  I then informed Barnett that we were about to search with his help or without.  I informed Barnett it would certainly look better for him if I could tell the Captain he had helped.

Barnett told me that the marijuana would be located in the plunger by the toilets.  At this time approximately 23:30 we searched old dorm.  Deputy David Goehman, Deputy Jason Koch, Officer Randy Koehler, Officer John Simmons and myself entered old dorm.  We had everybody located in the old dorm exit so that they could be search in the common area by Koehler and Simmons.

Immediately Deputy Koch unscrewed the plunger.  In the plunger we located a small baggy of what appeared to be marijuana and a small purple bic lighter.  Koch seized and placed the contraband in his pocket.  Goehman, Koch and myself continued a search of the old dorm.  We located various contraband such as:

Extra Blankets
Extra Sheets
Extra Clothing

Ex. B

## Cape Girardeau County Sheriff's Office
### Jail Division Incident Report

1 Bag of Marijuana
1 Purple bic lighter
4 Razor Guards
15 Oranges given back to head kitchen matron Gila.

After the search the inmates returned to the dorm. Along with the extras and contraband the TV was also taken for temporary reasons. I did have a talk with the trustees in the dorm about the contraband. From what I understand the following day some of the trustees lost their trustee status. Deputy Koch disposed of the marijuana per Captain Mulcahy. It also should be noted that according to Barnett the marijuana came from weekender Chucky Welker. Chucky Welker had served his last weekend and was released earlier in the day. Ethan Barnett was transported to Perry County due to the incident. I have nothing further to report at this time.

Matt Kight

Ex. B

## Cape Girardeau County Sheriff's Office
### Jail Division Incident Report

Sergeant Brooks M. Brockmire
I0410-0031.A256
Found Contraband
C Pod Cell 206
04-22-2010 @ approx 0930 hours
04-22-2010 @ 1000 hours
Brooks M. Brockmire
573-243-3551
216 N. Missouri St.  Jackson, MO 63755

On Thursday April 22, 2010 during the inmates scheduled outside recreation, Sergeant Koehler, Deputy Kight, Officer McClard, and I conducted cell searches in C pod and E pod.

We began searching in C pod. During the course of the search, we found minimal contraband such as a few torn towels and a torn sheet. While searching cell C-206, Deputy Kight located a bottle of "allergy" tablets that contained several pills that did not match. The allergy tablets are an oval shape and are bright pink in color. The bottle also contained the following:

1- Round orange in color pill identified as Haldol 2mg.
1- Round pink in color pill identified as Haldol 2mg.
1- Oval white in color pill identified as Benztropine (Cogentin) 1mg.
1- Round white in color pill. Appeared to be "cheeked" and unable to identify. Possibly Thorazine 100mg.

The inmates that are assigned to this cell are:

STRAYHORN, Jose McGill
DOB: 01-31-1976
SSN: 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
M/B

And,

JOHNSON (CLEMONS), Mario Damont
DOB: 09-01-1973
SSN: 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
M/B

These pills were confiscated and the original allergy tablets were returned to cell C-206.

I have nothing further to report at this time.

Brooks M. Brockmire, Sergeant
Cape Girardeau, County

Ex. B

# Cape Girardeau County Sheriff's Office
## Jail Division Incident Report



04/22/2010

Ex. B

# Cape Girardeau County Sheriff's Office
## Jail Division Incident Report



Ex. B

## Cape Girardeau County Sheriff's Office
### Jail Division Incident Report

Matthew J. Kight
I0410-0031.B292
Contraband Found
C-Pod C-206
Thursday, April 22nd, 2010 at approx. 09:30
Sunday, April 25, 2010 at 12:50
Matt Kight
573-243-3551
216 North Missouri St. Jackson, MO 63755

On Thursday, April 22nd, 2010 at approximately 09:30 Sergeant Brooks Brockmire, Officer Cody McClard, Sergeant Erik Koehler and myself entered C-pod to conduct cell searches. The inmates in C-pod were currently in the recreation yard for their scheduled rec. A small amount of typical contraband was found such as extra clothing and other items not being used for there original intent.

Officer McClard and myself entered cell 206. Upon entering the cell I noticed a bottle of allergy tablets that looked to have other unidentified pills located in the bottle. The bottle of allergy tablets can be purchased off the inmate's commissary. The allergy tablets themselves are typically oval shaped and pink in color. I noticed four pills that did not match this description. I turned the bottle over to Sergeant Brockmire.

Upon entering housing control the allergy tablet bottle and its contents were turned over to Nurse Beth Kelly. Nurse Kelly identified the four pills as following:

1- Round orange in color pill identified as Haldol 2mg.
1- Round pink in color pill identified as Haldol 2mg.
1- Oval white in color pill identified as Benztropine (Cogentin) 1mg.
1- Round white in color pill. Appreared to be "cheeked" and unable to identify. Possibly Thorazine 100mg.

The inmates that are assigned to this cell are:

STRAYHORN, Jose McGill
DOB: 01-31-1976
SSN: 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
M/B

And,

JOHNSON (CLEMONS), Mario Damont
DOB: 09-01-1973
SSN: 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
M/B

Later the bottle and the remaining allergy tablets were returned to C-Pod cell 206. I have nothing further to report at this time.

Ex. B

## Cape Girardeau County Sheriff's Office
### Jail Division Incident Report

Sergeant Brooks M. Brockmire
I0410-0032.A256
Found Contraband
E pod Cell 103
04-22-2010 @ approx 0930 hours
04-22-2010 @ 1000 hours
Brooks M. Brockmire
573-243-3551
216 N. Missouri St.  Jackson, MO 63755

On Thursday April 22, 2010 during the inmates scheduled outside recreation, Sergeant Koehler, Deputy Kight, Officer McClard, and I conducted cell searches in C pod and E pod.

We began searching E pod as soon as the inmates were removed from the pod. The search was conducted throughout the entire common area including the cells. I began to search cell E-103 who was occupied by only one inmate. This inmate can be identified as:

KOELLER, David Edward
DOB: 11-15-1984
SSN: 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
M/W

Upon searching the cell, I discovered that Koeller had several carvings throughout his cell made from bars of soap. I then began to search for the items that he was using to make the carvings. I located a sock under Koeller's bed that had staples in it. It appeared that he was attempting to conceal the contraband from sight. I then located one extra blanket that was jammed between his bunk and the wall. Upon further observation, I noticed that there was a spork that appeared to be burned and carved into, stuck to the bottom of his bunk with a black tar like substance from the window seal.

I then began to check the window seal. When I pushed the window to make sure that it was secure, an approximately 10" piece of plastic fell from the center bar of the window. I also noticed what appeared to be plastic shavings near the lower left corner of the window. I also located several "homemade" strings that were possibly constructed from the material in the jail issued mattresses.

At this point, I radioed for Officer Merriman to send Koeller in from the recreation yard so that I could speak with him. When Koeller entered the pod, I asked him about the window, he stated that he did not know anything about it. I asked Koeller if he had anything else that I should know about and he stated that he did. He removed the following from his shirt pocket:

EX. B

## Cape Girardeau County Sheriff's Office
### Jail Division Incident Report

1- small silver in color "self- tapping" screws
1- metal piece from the rivets used to secure the shower bars to the wall
5- small lead pellets that are possibly remnants of the "bean bag" shotgun loads.

All of the contraband collected during these searches were confiscated and photographed and will be forwarded with this report.

Koeller was placed in holding cell #2 pending the approval for administrative segregation.

I have nothing further to report at this time.

Brooks M. Brockmire, Sergeant
Cape Girardeau, County

Ex. B

Cape Girardeau County Sheriff's Office
Jail Division Incident Report



EX. B

# Cape Girardeau County Sheriff's Office
## Jail Division Incident Report



Ex. B

Cape Girardeau County Sheriff's Office
Jail Division Incident Report



Ex. B

## Cape Girardeau County Sheriff's Office
### Jail Division Incident Report

Matt Kight
I0410-0032.B292
Found Contraband
E-Pod Cell-103
Thursday, April 22nd, 2010 at approx. 09:30
Sunday, April 25, 2010 at 13:44
Matt Kight
573-243-3551
216. North Missouri. St. Jackson MO, 63755
David Koeller

On Thursday, April 22nd, 2010 at approximately 09:30 Sergeant Brooks Brockmire, Officer Cody McClard, Sergeant Erik Koehler and myself entered E-pod to search cells. The inmates in E-pod were located in the recreation yard due to their scheduled rec. I was on the top tier conducting my search of E-pod when I overheard on the radio Sergeant Brockmire asking for David Koeller. One inmate occupies E-103. I entered David Koeller's cell E-103. I noticed Brockmire and Sergeant Koehler appeared to be uncovering a large amount of contraband. I started to assist in the search. Brockmire informed me that we might be looking for a very sharp object. David Koeller is a federal inmate identified as the following:

David E. Koeller
SSN: 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
DOB: 01/15/1984
W/M

At this point and time Koeller entered the pod. Brockmire began to question Koeller on the contraband being located in his cell. During this duration I located some small pebbles probably the remains of the beanbag shotgun rounds. I handed these over to Brockmire. Brockmire and Koehler began to search the cell again. I began to talk with Koehler. At that time Koehler reached into his shirt pocket and handed me several pieces of metal, what appeared to be different kind of staples, nails and screws. I then escorted Koeller to holding cell two where he remained for the duration of the search.

I resumed my search in the booth with all of Koeller property. Officer McClard and Sergeant Koehler assisted. At this point and time I entered holding cell two to search Koeller further. I had walk under the walkthrough magnetizer. I also conducted a strip search. During this strip-search I confiscated a large wooden piece that was probably once a comb. A comb with all the bristles removed. I also took some string that Koeller had in his shoes. It appeared that he was using this string as if it were shoestrings. Koeller informed me that the wooden piece was their hockey puck they use on rec. After further inspection of these items with Captain Mulcahy we concluded that these were probably the items he used to obtain the sawed off piece of plastic approximately 10" long from the window seal. (See Sergeant Brockmire full report.) The string material was very sturdy almost like rope. You could see on the wooden piece where it looked as

Ex. B

# Cape Girardeau County Sheriff's Office
## Jail Division Incident Report

if it had been used in a saw motion.  Koeller for the time being remained in holding cell two.  All contraband was seized.  Pictures were taken of most of Koeller's contraband.  See Sergeant Brockmire's report for pictures and more of the contraband taken from Koeller.  I have nothing further to report at this time.

EX. B

# Cape Girardeau County Sheriff's Office
## Jail Division Incident Report

C22 Austin Clardy
I0510-0048
Found contraband- cigarettes
Old dorm-bunk 1-4
May 14th, 2010 @ approximately 1450
05-14-2010 @ 1519
C22 Clardy
573-243-3551
216 N Missouri St. Jackson, mo 63755

On the 14th of May 2010 five cigarettes came up missing from the kitchen. Sgt. Brockmire ordered a full and complete shakedown of the old dorm at apprx 1445. All inmates were ordered to stay on their bunks. One by one each inmate was strip searched and placed in the hallway. While I C22 Clardy, began searching bunk 1-4 in old dorm after all the inmates were pulled out of the old dorm, I found two soft cover books underneath bunk 1-4 in old dorm. In each book their were two cigarettes a total of four cigarettes. Inmate Eric Holloway was responsible for all property in the 1-4 bunk area including the two soft cover books with the cigarettes in them.

Ex. B

# Cape Girardeau County Sheriff's Office
## Jail Division Incident Report

C26 Brandon Gaulding
I0510-0052.A302
Found Contraband
B-102
05/20/2010 @ approximately 0953
05/20/2010 @ 1115
C26 Brandon Gaulding

On Thursday, May 20, 2010 at 9:50 am, S09 Brockmire, S63 Jamison, C24 Beard and myself entered B-Pod to search for suspected contraband. Sgt. Brockmire had gotten a tip that a lighter was located within B-102. The inmates that are currently being housed in that cell are Brian Todahl and Kenneth Jones. At approximately 0953, Sgt. Brockmire and I entered B-102 to begin our search of this possible lighter while S63 Jamison and C24 Beard conducted a search of cells on the second tier of the pod. S63 Brockmire started searching the bunks within the cell and the mats for possible tears. I started my search in B-102 at the first desk on the left as you enter the cell. I looked in the desk cubbyhole and within seconds located a small purple "bic" lighter behind a book and other miscellaneous papers. I informed S09 Brockmire that I had found the lighter and then handed it to him. S09 Brockmire took the lighter and spoke with the following inmate whose desk it was found in:

Brian Todahl
Race: White  Age: 30
SSN: 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
D.O.B: 03/31/1979

Inmate Todahl admitted that it was indeed his lighter. He openly admitted that he has had it since he was originally brought in on 02/25/2010 and that no one had used iot since it had been brought in. S09 Brockmire and I gathered Inmate Todahls cell property and escorted him to Booking and placed into a holding cell. S63 Jamison, C24 Beard, and myself continued with cell searches. Nothing further follows.

Ex. B

Cape Girardeau County Sheriff's Office
Jail Division Incident Report

S58 Jesse Houseman
I0610-0063
Found Contraband
F-203 Lower
06/19/2010 @ approx 1923
06/19/2010 @ approx 2250
S58 J. Houseman
(573) 243-3551
216 N. Missouri St. Jackson, MO 63755

Tonight at approximately 19:20hrs laundryman Jeremy Haynes gave me a note that read as follows, " F-pod is getting high". At that time I sent the other laundryman Nathan Oxley to clean Iso so I could speak with Jeremy Haynes in private. At approximately 19:23hrs Officer Austin Clardy and myself went back to speak with Haynes about the note. Haynes stated that when he was cleaning the moat he could smell the odor of marijuana coming from under the door. He said he believed they were smoking upstairs.

Shortly after speaking with Haynes Clardy and myself were joined by Deputy Matthew Kight and Officer Cody McClard. Clardy, Kight, McClard and myself went into F-pod through the fire door and went directly upstairs. Upon reaching the upper level I could see a smoky haze over the area between bunks 2-3 and 2-4 I also noticed a congregation of inmates in that area. When I walked between the bunks I could tell that the odor was much stronger in that area. Officer McClard and myself conducted a pat down search of the inmates that were in that area one of which was identified as:

Sherfield, Matthew Tyler
SSN: 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
DOB: 11/30/1991
W/M

After the search we sent all of the inmates out of the pod to G&H hallway so that we could safely conduct cell searches.

After all inmates were secure Officer Clardy and Myself began to search bunks 2-3 and 2-4. After a few minutes of searching I discovered a small plastic bag located at the end of the mat in 2-3 lower. The bag had a strong pungent odor commonly associated with marijuana and there were a few pieces of a green substance left in the bag. I then continued to search the surrounding area and found more small pieces of green substance. I then placed all that I had found back into the plastic bag.

At approximately 19:38 hrs Deputy Kight, Officer McClard, and Officer Clardy escorted the inmate from bunk 2-3lower who was identified as:

**Cape Girardeau County Sheriff's Office**
Jail Division Incident Report

Long, Christopher Joseph
SSN: 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
DOB: 06/26/1978
B/M

And Sherfield out of G&H hallway and down to the visitation area. Sherfield was placed in the inmate visitation room and Long was placed in the video arraignment room. At this time I returned to the control booth with the evidence I had collected and called the on call Sargent Brooks Brockmire. After contacting Sgt. Brockmire I also notified Captain Mulcahy of the situation. At approximately 20:05hrs Officer Clardy and Officer McClard returned to F-pod to continue searching the area for any remaining contraband.

At approximately 20:15 Deputy Kight and I went to the video arraignment room to speak with Mr. Long where Sargent Brockmire shortly joined us. I read Long his rights from a Miranda waiver form and he signed them and agreed to speak with us. Long said he knew there were a few inmates smoking in his bunk but he said he was downstairs while they were smoking it. After we spoke with Long we went to visitation and Spoke with Sherfield.

Once we were in visitation I read a Miranda waiver to Sherfield and upon finishing I asked him if he'd like to speak with us at that time and he sated that he would not. We then exited visitation and returned to the control booth. A few minutes later Officers Clardy and McClard said that they had found some more contraband so I re-entered F-pod. In F-pod they showed me some more ashes they had found and handed me a paper bag that they had found under bunk 2-4. I began looking through the bag and found a burnt match and some burnt paper. Shortly after collecting the contraband Deputy Noisworthy notified me over the radio that Sherfield wished to speak with me.

At Approximately 21:03hrs I returned to visitation to speak with Sherfield. Sherfield said that he would like to speak with me about what happened. At that time I got Sherfield a new Miranda waiver and again advised him of his rights. He then signed the waiver and told me that he had brought the marijuana in with him in his pants after he was arrested. I asked Sherfield if he would be would be willing to fill out a voluntary statement and he agreed to do so. I left Sherfield with the voluntary statement form and a pen in visitation. A few minutes later Sherfield hit the button and said that he was done with his statement. I collected it and Sherfield was later sent back to F-pod.

I later took all of the evidence I had collected downstairs and placed it into evidence bags and sealed it and then placed it in the jail supervisors office and locked the door per Captain Mulcahy's orders for pending review. I have nothing further to report at this time.

S58 J. Houseman

EX. B

# Cape Girardeau County Sheriff's Office
## Jail Division Incident Report

C22 Clardy, Austin
IO710-0075
Contraband found (Meth)
Booking area
07/08/2010 2030
07/08/2010 2216
C22 Clardy, Austin
5733185389
5234 hwy 77 Benton Mo 63771
State Of Missouri
5732433551
216 N Missouri St Jackson Mo. 63755

On July 8, 2010 at approx 2030 while I (C22 Clardy, Austin) was searching through Inmate Kevin J Dennis property I looked inside of a red bic cigarette lighter that was in his property that was properly logged on his property sheet. I then noticed a bag of white powder inside the hollow lighter. I pulled the bag out of the lighter and notified Sgt. Koehler. Then shortly after we did a field test of the substance it came back positive. The substance was placed into evidence locker (fridge) in the road division and this was witnessed by Deputy Ed Curtis.

-See Sgt Koehlers report for further info.

No Further information to disclose at this time.

---

C22 Clardy, Austin

## Cape Girardeau County Sheriff's Office
### Jail Division Incident Report

Deputy Gregory P Brown S55
I0710-0079A.184
Possession of Tobacco and Lighter
A1-Block Cell-203
Wednesday, July 21st, 2010 5:00 A.M.
Wednesday, July 21st, 2010 6:00 A.M.
Deputy Gregory p Brown S55
(573) 243-3551
216 N Missouri St
Jackson, MO 63755

On Wednesday, July 21st, 2010 at approximately 5:00 A.M., Correctional Officer Austin Clardy and myself were both conducting a blockwalk throughout the entire jail area. As I entered A1-Block, I smelt what seemed to be tobacco. I couldn't conduct a walk on the bottom tier of A1-Block do to a female inmate using the restroom. As I entered A2-Block I asked Correctional Officer Clardy if he smelt what seemed to be tobacco. He stated he did smell something and thinking about it, it did smell like tobacco. As I finished the walk in A2-block, I reported back to A1-Block. Once I finished the walk on the bottom tier, I walked up to the top tier to see where the smell of tobacco was coming from. As I passed cell 202, it appeared that the inmate in the cell was pointing over to cell 203. The only female assigned to cell 202 is identified as:

McGhee, Angela Deloris
B/F DOB: 03/10/71
SSN# 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

As I walked back to cell 203 I smelt a strong odor of tobacco coming from the cell. At this point and time Correctional Officer Clardy responded back to my location. I instructed Deputy Blake Jamison to open up cell 203. The smell of tobacco was strong in the cell. Both female inmates denied smoking

Ex. B

# Cape Girardeau County Sheriff's Office
## Jail Division Incident Report

C20 Justin Bromley
I0710-0081-273A
Contraband
A2-104
July 28th, 2010 @ 2133
July 28th, 2010 @ 2139
C20 Justin Bromley
573-243-3551
216 N. Missouri St.
Jackson MO, 63755

Today at approximately 1815, an inmate came to the control booth window for a sick call slip, and also gave me a note. The inmate is identified as:

Cox, Susan Lee
W/F
DOB: 9/01/1947
SSN: 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
Location: A2-104

The note she gave me contained four pieces of an unidentifiable plant substance and read "Marijuana Smoke around 9. Slip some to B pod for light". Susan Cox then went back to A2 pod.

Around approximately 2130, female inmates in A1 hit the intercom button in A1 103. I answered the call to which the inmates replied "They're smoking over there, we don't want any trouble". After hearing this, I promptly turned the monitor on A2. I noticed a few inmates hovering around inside A2-104. I put the intercom button on to listen if there was any illegal activity going on. I heard a female say "shush, it's a cigarette, don't say nothing". Upon hearing this, I turned off the water in A2. I then told S61 Goehman, C23 McClard, C24 Beard and S56 Koch that there was a cigarette in A2. S61 Goehman, C23 McClard, and C24 Beard responded to A1. Once inside A1, I opened the fire door to allow the officers to respond quickly enough that the contraband could not be hidden. With the intercom still on in A2 104, I heard a toilet partially flush. Shortly after, I heard the voice of C23 McClard state: "Dang,. That sucks". At this point, I observed C24 Beard escorting two unidentified female inmates to the front door of A2.

The inmates were identified as:

Lipps, Tristen Denise
W/F
DOB: 8/06/1986
SSN: 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
Location: A2 –102

And

Bloodworth, Lindsay Gaye
W/F
DOB: 9/12/1984
SSN: 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
Location: A2-103

Ex. B

## Cape Girardeau County Sheriff's Office
### Jail Division Incident Report

C24 Beard escorted Lipps and Bloodworth to Holding Cell 1. I then went with Beard to witness him wand down Lipps and Bloodworth with the portable magnetometer, then I turned off the water in Holding cell one in case they still had a lighter concealed upon their persons. After returning to the booth. S56 Koch was on the phone with Captain Mulchay who advised him to lock down A2 pod until further notice.

The contraband was seized for evidence. Pictures were taken of the note and of the evidence. The two female inmates were placed back in their respective cells. I have nothing further to report at this time.


C20 Justin Bromley

Cape Girardeau County Sheriff's Office
Jail Division Incident Report

C26 Brandon Gaulding
I0810-0084.A302
Contraband
A2-202
08/01/2010 at approximately 7:55 a.m.
08/02/2010 at approximately 3:17 a.m.
C26 Brandon Gaulding
(573)243-3551
216 N. Missouri Street

At approximately 7:55 a.m. on Sunday, August 1st, 2010 Correction Officer John Simmons and Correction/Reserve Officer Kimberly Lay were conducting a shift change blockwalk between the midnight shift and oncoming day shift. After both Officers had conducted a head count if pod A1, Officer Simmons informed us over his radio microphone that A1 had the strong smell of what is commonly associated with tobacco smoke coming from the surrounding area outside of cell A1-202.

Immediately after receiving this information, Deputy Goehman, Deputy Houseman, Deputy Noisworthy, and myself gathered latex gloves and entered A1 while Deputy Jamison ran the jail control computer. Deputy Jamison shut off the water leading into A1 so that there would not be a risk of any contraband being flushed in a toilet. Upon entering A1, I proceeded up the stairs leading to the top floor where cell 202 was located. Immediately arriving on the second tier, Deputy Jamison opened the secured cell door leading into cell 202. I then asked both inmates Pauline Starr Clares and Tamara Marie Lutes to exit the cell. Inmate Clares was very hesitant to obey this directive at first, but I again directed her to exit the cell with a firmer tone and she complied. Inmate Lutes was moving very slowly and I again ha to direct her in a firmer voice to exit the cell. I directed them both to go down the stain into the pod common area. As soon as inmate Clares reached the common area, Deputy Noisworthy took her into the common room showers to conduct a strip search for any hidden contraband. While Deputy Noisworthy was conducting the search of inmate Clares, Deputy Houseman, Deputy Goehman, and myself conducted a thorough search of cell 202.

During my search of cell 202, I found a small bible that is commonly issued to the inmates through our jail. Immediately after opening the small bible, I discovered a small amount of smoking tobacco that was still wrapped in the paper commonly used in commercially sold cigarettes. I confiscated this small amount of tobacco and continued with the two other Deputies with the search of cell 202. After we determined that there was not any additional smoking tobacco in the cell, we proceeded down the steps to A1 common area. As we entered the common area we were met by Deputy Noisworthy who informed us that inmate Clares had willingly handed over a small plastic bag that contained three small cigarettes rolled with paper from a small bible (see S59 Stephanie Noisworthy's incident report for more detailed information on her findings).

Inmate Tamara Lutes was instructed to return to cell 202 and Inmate Pauline Clares was escorted into the moat area outside of pod A1. Upon arrival into the moat area, Deputy Jesse Houseman read inmate Clares her Miranda Rights and inmate Clares responded that she understood her rights and was willing to answer any and all questions.

EX. B

Cape Girardeau County Sheriff's Office
Jail Division Incident Report

I then questioned Clares about the tobacco in her cell and the tobacco on her person.  I asked Clares if the tobacco that was found in her possession was indeed hers.  She responded that yes, it was.  I then asked Clares if the bible found in cell 202 was hers. She responded again that yes, it was indeed hers.  I then asked her if the tobacco that was found inside of the bible was hers as well, and yet again, she answered yes.  I then questioned her as to where she was able to come into possession of said tobacco and she stated that it had been given to her as well as given to other inmates by another unknown inmate.  Clares admitted to have previously bringing in tobacco but had given it over to the other Deputy and Corrections officer at that time.  I then began to tell her of the potential consequences of being found to have possession of contraband in a jail facility and the ramifications it could bring.  Inmate Clares then began to break down and cry and stated that she promised that it would never happen again and that she would inform us of any other contraband that made its way into the females pod.  She then began to tell me of other inmates that had supposedly brought in contraband of their own.  I took note of this information and then gave inmate Clares the directive to go back to cell 202.  After Clares returned to her cell, I made my way back into the jail control booth.  I have nothing further to report.

C26 Brandon Gaulding

Ex. B

## Cape Girardeau County Sheriff's Office
### Jail Division Incident Report

C21 John Simmons
I0910-0101
Contraband found
216 North Missouri Street
10/02/2010 @ approx 1330
10/02/2010 @ 1445
John T. Simmons
573-243-3551
216 North Missouri Street Jackson Mo 63755

On Saturday October 2nd, 2010, I was sitting at the housing computer at approximately 1330 hours. Deandre Tipler pushed the intercom in Cellblock B-202. He stated that he just smoked something that made him very high and he needed to get out of the cell. I opened his door and told him to exit. While the door was open, Tiplers celly (Marcus Rice) took Tiplers mat and tossed it out of 202. Officer Gaulding and myself went out to the moat to speak with Tipler. He was being very incoherent. Nurse Kelly checked his vitals. Other than having a little bit higher heart rate nothing was wrong with him. I went back to grab Tiplers property and as I picked up Tiplers mat and out fell a one hitter pipe in the form of a cigarette. At this time we escorted Tipler to Holding 1. Officer Gaulding and myself went back to cell B 202 and conducted a thorough search and there was nothing more to find in the cell. Now we escorted Marcus Rice down to booking to be strip-searched. Nothing was found on his person. Rice was placed in Holding 2.

Rice, Marcus Antonie
03/31/1987
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

Tipler, Deandre Markez
05/06/1991
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

I have nothing further to report at this time.

EX. B

## Cape Girardeau County Sheriff's Office
### Jail Division Incident Report

Matt Kight
I1010-0106.A292
Found Contraband
South Block/ Old Dorm
Saturday, October 9th, 2010 at approximately 1440
Sunday, October 10, 2010 at 1400
Matt Kight
573-243-3551

On Sunday, October 10, 2010 at approximately 1400 Deputy Tina Henderson and myself spoke with kitchen matron Bridgette Duvall. Duvall expressed her concern over possible contraband the kitchen workers may have such as tobacco. Duvall apparently noticed an open box that contained Meals Ready to Eat. (MRE's.) Duvall estimated that 5-7 packages were missing. I remembered that MRE's typically contain one book of matches.

With the information we had, we decided to conduct a search of South block. South block houses our trustees. Approximately 1440 Officer Lana Koeppel, Officer Sie Merriman, Officer Austin Clardy and myself entered South block to conduct a cell search. I directed all inmates currently housed in South to exit the pod immediately. We placed all of South block into the common area by the kitchen. At this time I noticed a strong cigarette like odor coming from Old Dormitory. The Old Dormitory is currently housing weekenders and non-violent sentenced inmates. Officer Koeppel, Officer Merriman, Officer Clardy and myself also directed Old Dorm to exit their pod. Upon entering Old Dorm I noticed an inmate identified by the following:

Cameron Keith Moore
SSN: 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
DOB: 10/02/1990
W/M

I observed Moore on his hands and knees in the shower area by the toilets. Also in this area was inmate Detrayous Dontei Curry who appeared to be using the facility. Also in the area was inmate David Ray Minnick who appeared to be brushing his teeth. Curry is identified as the following:

Detrayous Dontei Curry
SSN: 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
DOB: 01/03/1984
B/M

The following identifies Minnick:

David Ray Minnick

EX. B

# Cape Girardeau County Sheriff's Office
## Jail Division Incident Report

SSN: 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
DOB: 01/18/1990
W/M

In my experience I identified the spot Moore appeared to be tampering with as a hiding spot for contraband. Also upon my entrance into Old Dorm, I noticed Minnick kicking Moore on his side as to alert him to my presence. I found Moore position by a man that is using the restroom very suspicious. Once Curry (Inmate using the bathroom) finished using the bathroom facilities he appeared to bend down and grab a package wrapped in toilet paper. This appeared to be the same area Moore was trying to tamper with. Curry quickly picked the unknown item off the floor and flushed it. It is my belief that this was some type of contraband. The Old Dorm itself was very hazy from a type of smoke. The smell was consistent with somebody smoking cigarettes. All inmates currently housed in Old Dorm were moved to G and H hallway. However I detained Moore, Minnick and Curry. Moore, Minnick and Curry remained with Officer Merriman.

At this time I spoke with the trustees about possible contraband located in their cells. Some trustees admitted to contraband such as earplugs and pens. Ben Savage a server, admitted to having a lighter in his mat. The following identifies Savage:

Benjamin Savage
SSN: 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
DOB: 08/22/1965
W/M

At this point I already have suspected Justin King a kitchen worker to be a suspect. King is currently the baker (Head kitchen worker) and would have had access to the MRE'S. King is a roommate with Savage. The following identifies King:

Justin Ellis King
SSN: 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
DOB: 07/01/1983
W/M

At this point and time Officer Koeppel began searching the Old Dorm. I began searching South block. Officer Clardy and Officer Merriman supervised the inmates left in the common area. During this process Officer Koeppel had to return to housing control to resume assisting with visitation. At this time I instructed Officer Merriman to strip search Curry, Minnick and Moore. Upon strip-searching Moore, Officer Merriman located what appeared to be rolled up toilet paper on Moore's person. Inside the toilet paper were burnt matches, ashes and what appeared to be the remains of tobacco. At this time kitchen matron Bridgette Duvall requested to speak with me.

I made contact with Duvall in the kitchen. She showed me an empty cake batter sack that contained the remains of MRE'S. The sack also contained a used match. At this point I asked for Officer Clardy's assistance in searching Justin King's cell.

Ex. B

Cape Girardeau County Sheriff's Office
Jail Division Incident Report

I began my search of King and Savage's cell. Officer Clardy and I located rolling papers, possible tobacco remains, small Tabasco sauce container and one small green bic lighter. With my previous experience in opening an MRE I know that the Tabasco sauce is associated with a book of matches. The Tabasco sauce containers could have only came from the MRE'S. In each MRE, there is one Tabasco sauce container and one book of matches. The green bic lighter was found in Savage's mat. This should have been the lighter that Savage previously admitted to having.

At this time King requested to speak with me. Officer Clardy and I spoke with King. King admitted to taking one MRE. King also admitted to smoking a cigarette in the kitchen. King informed me that he could hand me one book of matches with only one match missing. King also advised me that the weekenders were bringing in the tobacco. Also I asked King if information was being passed down from trustee to trustee about the available MRE'S and he agreed.

Due to headcount needing to be conducted and lack of Officers available to assist we had to end the search. Officer Clardy and I briefly walked through the remaining cells. Only two cells were thoroughly searched in south block. Officer Koeppel briefly searched Old Dorm. Officer Clardy and I returned to the spot we previously believed Moore was attempting to hide contraband. Officer Clardy located another book of matches. I believe Curry was able to flush some contraband. I believe it was what remained of the tobacco. We were able to confiscate a lot of contraband. I still believe that matches and other contraband remain. The contraband that was confiscated that may be of importance is as follows:

Napkin-Containing tobacco remains, ashes and used matches.

1 small green bic lighter.

3 books of matches. (MRE matches)

1 large fingernail clipper. I located the fingernail clippers in south block cell 6. This appears to have been the laundry workers Tommy Miller and Josh Gephart. The fingernail clippers did not have the filing part torn off. Could have made a perfect "Shank". A shank is typically described as a jailhouse weapon. Jail staff probably passed out this fingernail clipper recently. The clipper would have been sturdy, long and very sharp. This potentially could have been very dangerous!

All trustees were warned about possible punishment with any further problems. The trustee's were allowed to return to South block. South block to my knowledge was on lockdown for the night. Old dorm was also allowed to return to their pod. To my knowledge Old Dorm was on lockdown for the night. The exceptions were Justin King and Cameron Moore. King was placed into B-pod and fired from his kitchen position due to his role in the contraband. Moore was placed into holding cell two and lost his

Ex. B

## Cape Girardeau County Sheriff's Office
### Jail Division Incident Report

visitation for that day due to his role. Currently Moore is being considered for criminal charges.

Most of the contraband has been thrown away including one mat. The fingernail clipper was returned to its proper place with the filing attachment broken off. The opened box of MRE'S is now located in the booth. I still have custody of the bic lighter, matches and napkin. I have nothing further to report at this time.

Kight

Ex. B

## Cape Girardeau County Sheriff's Office
### Jail Division Incident Report

Lieutenant Brooks M. Brockmire
I1010-0109.A256
Found Contraband
E Pod Cell #205
10-20-2010 @ approx. 0930 hours
10-20-2010 @ 1000 hours
Brooks M. Brockmire
573-243-3551
216 N. Missouri St.  Jackson, Mo  63755

On Wednesday October 20, 2010, I instructed jail personnel to conduct a contraband search in C pod. At approximately 0915 hours, all inmates were instructed to exit the block.

At this time, federal inmate William Kaku began to quickly go up the steps towards his cell. I instructed Kaku to come back down the stairs and exit the pod as instructed. Deputy Jamison and I then proceeded up the stairs to stop Kaku from entering his cell. I then asked Kaku why he failed to comply. He became belligerent and began to curse towards Deputy Jamison and I. I then instructed Kaku to place his hands behind his back so that he could be escorted from the block area. He resisted my efforts to secure his hands into the restraints by tensing his arms and shoulders and by stating, "keep your fucking hands off of me." I was able to secure Kaku into hand restraints and then removed him from the block into the moat hallway. He stated that it was just a misunderstanding and that he was just going to wake up his cellmate.

As officers continued to search the inmate housing areas, Deputy Jamison found a black trash bag filled with an unknown liquid, under the top mattress in C Pod, Cell # 205. Jamison turned the bag over to me and upon further inspection I discovered that this substance was what is commonly referred to as "hooch" or "jail house liquor". The bag contained a mixture of fruit that is served on the inmate food trays, bread (for yeast), and sugar.

Kaku was moved into a holding cell pending this report. Photographs were taken of the contraband and will be forwarded with this report.


Brooks M. Brockmire, Lieutenant
Cape Girardeau, County

## Cape Girardeau County Sheriff's Office
### Jail Division Incident Report

C20 Justin Bromley
I1210-0127.273
Hoarding Meds
B-106
12-5-10 @ 1615
12-5-10 @ 2220
C20 Justin Bromley
573-243-3551
216 N. Missouri St.

---

Today at approximately 1615, while conducting med pass with Nurse Olivia, S57 Henderson observed an inmate take his medicine and place it under his mat in his cell. The inmate is identified as:

Davis, Joe David
W/M
SSN: 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
DOB: 10/02/1985
Cell Number: B-106

As I was operating housing control, S57 Henderson called to my attention that she just observed Joe Davis place something that appeared to be his meds underneath the front portion of his bunk underneath his mat in cell B 106 As meds were passed from pod to pod, the cell doors were open for approximately 15 minutes before going closed for the evening. I isolated cell B 106 so that it would not go open at 2100.

Cell doors went closed at approximately 2203, after which, C25 Floyd, C29 Teague and myself went to cell B 106. I instructed inmates Joe Davis and Derek Tucker to remain seated at the benches while C25 Floyd and C29 Teague conducted a search of Joe Davis's bunk for the hoarded meds. C29 Teague located the meds in the location that S57 Henderson described to us. The pills were located in an empty clear plastic deodorant container. Three pills were recovered during the search. Two of the pills were small round and white in color, the other pill was a small orangish-red oblong pill.

After that, we escorted Joe Davis to Holding Two. He was given a mat, a blanket and two sheets. Davis stated that the meds make him fall asleep and that he takes the pills before he goes to bed. We informed Davis that he was to take the meds at med pass and cannot hoard the meds. We then informed him that if he wasn't going to take the meds, he should sign a medical refusal issued by the nurse.

No further incident has occurred at this time.


C20 Justin Bromley

Ex. B

## Cape Girardeau County Sheriff's Office
### Jail Division Incident Report

Lt. Brooks M. Brockmire
I1210-0129.A256
Inmate Misconduct/ Found Contraband
Moat Hallway/ Cell C-107
12-07-2010 @ approx. 1215 hours
12-07-2010 @ 1300 hours
Brooks M. Brockmire
573-243-3551
216 N. Missouri St.  Jackson, Mo 63755

On Tuesday December 7, 2010, I was advised by jail personnel that federal inmate Rudy Gonzales was failing to lockdown. I then responded to C pod and met with Deputy Phillips and Corrections Officer Simmons. They advised me that Gonzales was failing to lockdown due to an issue with his laundry.

I advised the control booth to open the main cellblock slider to C pod. I then instructed inmate Gonzales to step out into the moat area so that we could speak. I asked Gonzales what the problem was, and he stated that he did not have an extra uniform. I then advised Gonzales of the proper procedure for requesting extra items needed, such as laundry, laundry bags, cosmetics, and shoes. He then stated that he was not going to file a request, and began to demand that officers bring him his laundry. I advised Gonzales to calm down, and after I checked his cell for the items in question, the items would be replaced as soon as the request form was completed. Gonzales then became belligerent and began cursing at Corrections Officer Gaulding, who was currently running the control booth, and began calling him a "punk ass bitch", a "faggot", and a "fucking pussy." This appeared to be unprovoked, as Gaulding was merely running the housing computer. Deputy Koch was in the control booth at this time, and later informed me that Officer Gaulding did not say anything to inmate Gonzales to provoke his actions.

Due to Gonzales becoming more aggressive, I asked Gonzales to turn around and cuff up. Gonzales complied with my directive. I then instructed Gonzales to go to booking, and informed him that he was going to be placed in administrative segregation for failing to lockdown, and cursing jail personnel. Gonzales stated that he understood.

Once in the booking area, Gonzales was placed into holding cell #2. Deputy Phillips removed the hand restraints, and told Gonzales to have a seat while I made sure that holding cell #4 was clean and available for use. Gonzales then stated that he did not "give a fuck", and that he was a federal inmate and knew how to "play the game." I asked Gonzales what he meant by this and he stated that he knew that the "fed won't keep me up here, that's not how this shit works."

Deputy Phillips, Officer Simmons, and I then returned to C pod to search Gonzales's cell. Upon entering the cell, we asked his cellmate, Juan Chavez, what property was his and which was his cellmates. Chavez indicated that all of Gonzales's property was located in the desk immediately inside the cell, and that Gonzales was assigned to the top bunk.

EX. B

Cape Girardeau County Sheriff's Office
Jail Division Incident Report

---

Chavez was asked to exit the cell, and he complied. We then began to search the cell. I located three felt tipped pens that had the tips removed. Two of the pens had inserts from an ink pen inside of it, and one pen had what appeared to be lead from a pencil inserted into it. Later in the search, I located an ink pen that was missing the ballpoint insert. I also located a towel that was sewn into a pillow with what appeared to be elastic from the jail issued undergarments. I then located a jail issued orange shirt and a pair of jail issued orange pants under Gonzales's mattress. I checked with Chavez and he stated that he had two uniforms and confirmed that the items located were those of inmate Gonzales.

I returned to booking and confirmed that holding cell #4 was available for use, and instructed Gonzales to enter the cell. He then stated to the officers present "get the fuck out of my face", as they were trying to verify that he received his property. The door was secured and all officers exited the booking area.

Shortly after returning to the control booth, Sergeant Jones of the communications Division contacted jail officers and stated that inmate Gonzales was causing a disturbance to the communications division by repeatedly kicking and hitting the door to the holding cell. It was also discovered that inmate Gonzales had covered the camera with toilet paper and was restricting our ability to monitor his actions.

Deputy Phillips, Officer Simmons, and I proceeded to the booking area. I brought the jail division's Kodak high definition video recorder with us to record our interaction with Gonzales.

Upon entering booking, I informed Gonzales that everything that he said and did was going to be recorded. I then asked dispatch to open the door to holding cell #4. Upon entering the cell, Gonzales immediately approached me and began to demand his uniform. I informed Gonzales that he needed to remove the paper from the surveillance camera. Gonzales then stated, "No I'm not, you take it off." I again instructed Gonzales to remove the paper from the camera. He then placed his hands behind his back and began to walk away from me. He stated, "if you tase me, then it is all on you." I then informed Gonzales that he was getting three warnings to remove the paper from the camera, or I was going to deploy the Taser. I again informed Gonzales that this was the last directive I was going to give him to remove the paper from the camera. Gonzales then stepped onto his bunk and removed it from the camera. He then made the gesture that he was going to throw the paper at me, but instead proceeded to throw the paper onto the ground. I informed Gonzales to have a seat on his bunk and we could discuss his situation, but he continually refused my directive.

Gonzales then began to rant that officers were calling him names and cursing him. I assured him that this was not the case, as I was present throughout this incident. I again informed Gonzales numerous times to simply file the appropriate paperwork, and the items would be given to him promptly. He again stated that he was not going to fill out the paperwork, and continued to curse me, calling me a "dumb ass". I reminded Gonzales that everything was being recorded and he replied, "Fuck that fucking recorder".

Ex. B

Cape Girardeau County Sheriff's Office
Jail Division Incident Report

I again tried to talk to Gonzales about the request. He continued to be belligerent and disrespectful. At that time I instructed all officers to return to the control booth. I exited the cell and retrieved a request form for Gonzales. I placed the request on his bunk and we secured the door to holding cell #4.

Once back in the control booth, Gonzales was on the inter-com and stated that he wanted it documented that he did not get any toilet paper. I immediately went to booking and issued him two rolls of toilet paper. Gonzales then stated that there was something wrong with his sheets and demanded new ones. I pointed to the request form and again informed Gonzales that he needed to submit the proper request for the items that he need.

I have nothing further to report at this time.

Photographs were taken of the contraband found in Gonzales's possession and will be forwarded with this report. The video recording will also be forwarded.

Brooks M. Brockmire, Lieutenant
Cape Girardeau, County

Ex. B

# Cape Girardeau County Sheriff's Office
## Jail Division Incident Report

John Simmons
I1211-075
Found Contraband
216 North Missouri Street Jackson Missouri
12/25/2011 @ 2220
12/26/2011 @ 1500
573-243-3551

December 25th 2011 at approximately 22:20. Deputy Kight and myself (C21 Simmons) were searching South Block. After a thorough search of cell 3. I decided to look under the toilet because I could see a space between the floor and the bottom of the toilet. When I got down to look under it with my flashlight I found a pair of scissors. They appeared to be the type of medical scissors used for cutting bandages. This cell belonged to Inmate Michael Hilderbrand.

**Michael Bryan Hilderbrand**
**SOS: 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**
**DOB: 07/08/1990**

After finding the contraband. S62 Kight went to talk to him. And then after he never confessed to having the scissors in his cell. S62 Kight put his cuffs on Hilderbrand and escorted him to holding 4.

Nothing further to report at this time. See Deputy Kight's report.

Ex. B

## Cape Girardeau County Sheriff's Office
### Jail Division Incident Report

Matthew J. Kight
I0311-014.A292
Contraband Found/ Bertrell Bridges
Old Dorm
Friday, March 4th, 2011 @ approximately 2130
Monday, March 7th, 2011 @ 1135
Matt Kight
573-243-3551
216. North Missouri Street. Jackson MO. 63755

On Friday, March 4th, 2011 at approximately 2100 Deputy Cody McClard and I reported to the Rec yard to watch Old Dorm's activities. We had prior knowledge of possible contraband being brought in by weekenders. One of the weekenders that we believed to be involved is Bertrell Bridges. Officer Aaron Floyd processed Bridges in earlier. Bridges was sent to the Old Dormitory. Bridges mentioned that he had "enemies" in Old Dorm and that he needed to be sent to F-pod. I asked Bridges who his enemies would be. Bridges responded that he did not know and he would just go to Old Dorm. Bridges seemed frustrated. It is my experience that this can sometimes be an indicator of possible hidden contraband. Often when a Weekender is bringing in contraband they already have a prior agreement with somebody in a pod. So it is important to the suspect that they end up in the correct pod.

Deputy McClard and I observed what we believed to be suspicious behavior in the Old Dorm after Bridges arrival. It was at this time we reported to the Recreation yard for a better view. Deputy Kimberley Lay and Officer Jeremy Miller observed from the control booth via camera. McClard and I were able to see the Old Dorm inmates through the windows. After approximately thirty minutes of observation we confirmed that some of the inmates were smoking. I noticed inmates identified as Michael Stearns and Sean Magee smoking. At this time it appeared that Stearns and some of the inmates might have spotted us.

At this time McClard and I quickly entered Old Dorm. We separated inmates Brandon Jeffers, Sean Magee, Michael Stearns and Bertrell Bridges. I quickly began a search on bunk 1-10 located on the back wall to the left. I quickly seized a one orange bic lighter. Due to this I directed the remaining inmates left in Old Dorm to exit. Bridges, Stearns, Magee and Jeffers remained in the sally port. The rest of the inmates stayed in the common area. Officer Floyd kept a visual on the inmates. Officer McClard and I began our search on the Old Dorm. During our search we conducted individual interviews on Magee, Jeffers, Bridges and Stearns.

Through our search and interviews we were able to seize the following:

1 Orange Bic Lighter
1 Partially smoked Cigarette

Ex. B

# Cape Girardeau County Sheriff's Office
## Jail Division Incident Report

1 Large White pill believed to be 800 mg ibuprofen  (Source Drugs.com)
1 bag of what was believed to be tobacco.  The amount was appeared to be equivalent of two cigarettes.

Bertrell Bridges was serving his last weekend.  Bridges was moved to B-pod two serve his final two days.  Sean Magee lost his trustee status and was moved to F-pod.  Michael Stearns lost his trustee status and was moved to F-pod.  I have nothing further to report at this time.

Kight

Ex. B

# Cape Girardeau County Sheriff's Office
## Jail Division Incident Report

C28 Lana Koeppel
I0411-026
Contraband Found
Moat outside A-1
April 11, 2011 @ 1435
April 11, 2011 @ 1445
C28 Lana Koeppel

On April 11, 2011 at approximately 1425 a female inmate in A2 pressed the intercom and told me that she had some information for me. The inmate I am referring to is

**Poole, Christina L.**
**W/F  DOB: 04-20-1984**
**SS#: 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**

Poole informed me that a female inmate in A1 had a bottle of nail polish in a tampon box in her cell. The inmate I am referring to is:

**Knox, Ashunda P.**
**B/F  DOB: 03-02-1986**
**SS#: 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**

At approximately 1435 I called over the intercom in A1-202 and told Knox to bring the nail polish in the tampon box out and set it in the moat area. She complied with no issue. Upon returning to her cell I exited the booth to the moat area to retrieve the tampon box, inside I found a bottle of finger nail polish wrapped inside a sock. The polish was maroon in color and approximately 3 inches in length. When looking through the rest of the contents of the box I also found 1 blue highlighter approximately 5 ½ inches in length and a green highlighter approximately 5 inches in length. Pictures were taken of the contraband and will be forwarded with this report. I have nothing further to report at this time.

EX. B

Cape Girardeau County Sheriff's Office
Jail Division Incident Report

C28 Koeppel
I0511-033.320
Contraband found
Med Exam booking area
May 2, 2011 @0945
May 2, 2011 @0952
C28 Lana Koeppel
573-243-3551
216 N Missouri Jackson Mo 63755

On May 2, 2011 at approx 0930 I brought a female inmate into booking who is in our facility to serve weekends. The Inmate I am referring to is

**Shelley, Reyna Nicole**
**W/F**
**DOB: 01-28-1977**
**SSN: 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**

I took Inmate Shelley into the med exam room located in our booking area to have her dress out into our county issued uniform. Inmate Shelley was very lethargic and kept repeating, "I'm sorry I took Tylenol PM and I'm just really tired." When she was undressed and in her bra and underwear I noticed that tucked into her underwear was a black bic lighter which I removed. When she lifted her bra I noticed a small plastic baggy sticking to her skin. I took the bag from her and asked what it was to which she replied "Oh that's Tylenol it's just Tylenol." Inside the baggy was 5 Tylenol PM tablets which she was trying to conceal and sneak into our facility. Inmate Shelley then put on her county issued uniform and exited the booking area. I placed the found contraband along with this report on Lt. Brockmire's desk in the jail control booth area. I have nothing further to report at this time.

EX. B

# Cape Girardeau County Sheriff's Office
## Jail Division Incident Report

Matthew J. Kight
I0711-047.292.A
Found Contraband
F-pod/C-pod
Saturday, July 9th, 2011 at 6:45 P.M and 10:11 P.M.
Tuesday, July 19th, 2011 at 4:26 A.M
Matt Kight
573-243-3551
216. North Missouri St. Jackson, MO. 63755

---

On Saturday, July 9th, 2011 I (Deputy Matt Kight S62) spoke with inmate Duncan Hahs. Hahs was currently being housed in holding cell four for protective custody. After speaking with Hahs I determined he was upset with his current housing status. Hahs told me that he felt he was being punished instead of those that should be punished. I asked, Hahs to elaborate on his statement. The following identifies Duncan Hahs:

Duncan Tyler Hahs
DOB: 01/01/1988
SSN: 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
W/M

Hahs informed me that he knew the whereabouts of lighters and a homemade tattoo gun. I asked, Hahs what he was looking to gain with this information. He told me he really just didn't think it was fair and that he would like to be moved to B-pod. Hahs stated that inmate Kevin Campbell was in possession of 1 BIC lighter located by his bunk in a milk cartoon. He also stated that cell 203 in C-pod was in possession of a "light" and a tattoo gun. Hahs did not know what the "light" actually was. Approximately an hour later I spoke with Hahs again. Hahs stated that he would bet that jail staff didn't know that a previous altercation was staged. (See report I0711-045.292.A) Hahs also stated that Cell 204 in C-pod was in possession of "Hooch". Hooch is a slang term commonly associated with homemade alcohol. At this time I decided to investigate the accusations.

At 6:54 P.M. Officer Zach Snyder and myself made contact with inmate Kevin Campbell. I told Campbell I knew he had a lighter. I asked Campbell if he would like to cooperate and turnover the lighter to me. Campbell agreed. Campbell returned to his bunk and retrieved 1 white in color BIC lighter. Campbell returned to his pod.

The following Identifies Kevin Campbell:

Kevin Ryan Campbell
DOB: 04/13/1983
SSN: 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
W/M

Ex. B

Cape Girardeau County Sheriff's Office
Jail Division Incident Report

At approximately 10:11 P.M. Officer Josh Beard and myself spoke with inmate Justin Hart. Hart was the inmate Hahs accused of being in possession of a light and tattoo gun. Being that my information was Hart already had tattooed himself, I asked to check his ankles and legs. Located on Hart's right leg was what appeared to be an Eagle. Hart also showed me two names located on his left foot that appeared to be just tattooed. Hart told me he was using triple antibiotic cream to keep the tattoos moist. Hart stated he used a concoction of melted chess pieces, soap and toothpaste. Hart also stated that he was in possession of the tattoo gun. Hart denied having a "light".

The following identifies Justin Hart:

Justin Lee Hart
DOB: 05/23/1987
SSN: 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
W/M

At approximately 10:21 P.M. I spoke with inmate Brandon Moss. Moss was currently Hart's cellmate. I told Moss that I was already aware of the tattoo gun and the "light". Moss agreed that these items where located in his cell. Moss also showed me his arm that had new tattoo on it. Moss stated that Hart gave him the tattoo. Moss offered to show me the location of the items in order to cooperate. Moss, Officer Beard and myself entered Cell 203 in C-pod. Moss handed me a homemade tattoo gun and a piece of paper containing four matches and what appeared to be the remains of tobacco. The tattoo gun consisted jail issued toothbrush wrapped in deodorant stickers containing a staple that appeared to be melted into the toothbrush. The tattoo gun was covered in black ink like substance. Also included was a toothpaste cap containing the ink concoction. Given Moss and Hart's cooperation they were allowed to return to their cell.

The following identifies Brandon Moss:

Brandon Lee Moss
DOB: 01/15/1978
SSN: 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
B/M

At approximately 11:20 P.M. Officer Tyler Stephens and myself entered C-pod cell 204 occupied by inmate Jeffrey Casey in search of "Hooch". I seized one large container that probably contained hooch. The large container is not an approved item. It is usually used for isolated inmates for juice and water. The top of the container had plastic wrap, which could be used to store the fermenting hooch. I could smell an odor that is commonly associated with alcohol type beverages coming from the container. Inmate Jeffrey Casey was permitted to return to his cell being that the container was empty.

The following identifies Jeffrey Casey.

Ex. B

Cape Girardeau County Sheriff's Office

Jail Division Incident Report

Jeffrey David Casey
DOB: 09/25/1981
SSN: 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
W/M

In total the following was seized:

1 White BIC lighter
4 Matches
Tobacco Remains
1 Homeade Tatoo Gun with other items associated with the making of a tattoo
1 Empty Container of "Hooch"

I have nothing further to report at this time.

Ex. B

## Cape Girardeau County Sheriff's Office
### Jail Division Incident Report

Matthew J. Kight
I0711-047.292.A
Found Contraband
F-pod/C-pod
Saturday, July 9th, 2011 at 6:45 P.M and 10:11 P.M.
Tuesday, July 19th, 2011 at 4:26 A.M
Matt Kight
573-243-3551
216. North Missouri St. Jackson, MO. 63755

---

On Saturday, July 9th, 2011 I (Deputy Matt Kight S62) spoke with inmate Duncan Hahs. Hahs was currently being housed in holding cell four for protective custody. After speaking with Hahs I determined he was upset with his current housing status. Hahs told me that he felt he was being punished instead of those that should be punished. I asked, Hahs to elaborate on his statement. The following identifies Duncan Hahs:

Duncan Tyler Hahs
DOB: 01/01/1988
SSN: 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
W/M

Hahs informed me that he knew the whereabouts of lighters and a homemade tattoo gun. I asked, Hahs what he was looking to gain with this information. He told me he really just didn't think it was fair and that he would like to be moved to B-pod. Hahs stated that inmate Kevin Campbell was in possession of 1 BIC lighter located by his bunk in a milk cartoon. He also stated that cell 203 in C-pod was in possession of a "light" and a tattoo gun. Hahs did not know what the "light" actually was. Approximately an hour later I spoke with Hahs again. Hahs stated that he would bet that jail staff didn't know that a previous altercation was staged. (See report I0711-045.292.A) Hahs also stated that Cell 204 in C-pod was in possession of "Hooch". Hooch is a slang term commonly associated with homemade alcohol. At this time I decided to investigate the accusations.

At 6:54 P.M. Officer Zach Snyder and myself made contact with inmate Kevin Campbell. I told Campbell I knew he had a lighter. I asked Campbell if he would like to cooperate and turnover the lighter to me. Campbell agreed. Campbell returned to his bunk and retrieved 1 white in color BIC lighter. Campbell returned to his pod.

The following Identifies Kevin Campbell:

Kevin Ryan Campbell
DOB: 04/13/1983
SSN: 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
W/M

EX. B

## Cape Girardeau County Sheriff's Office
### Jail Division Incident Report

At approximately 10:11 P.M. Officer Josh Beard and myself spoke with inmate Justin Hart. Hart was the inmate Hahs accused of being in possession of a light and tattoo gun. Being that my information was Hart already had tattooed himself, I asked to check his ankles and legs. Located on Hart's right leg was what appeared to be an Eagle. Hart also showed me two names located on his left foot that appeared to be just tattooed. Hart told me he was using triple antibiotic cream to keep the tattoos moist. Hart stated he used a concoction of melted chess pieces, soap and toothpaste. Hart also stated that he was in possession of the tattoo gun. Hart denied having a "light".

The following identifies Justin Hart:

Justin Lee Hart
DOB: 05/23/1987
SSN: 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
W/M

At approximately 10:21 P.M. I spoke with inmate Brandon Moss. Moss was currently Hart's cellmate. I told Moss that I was already aware of the tattoo gun and the "light". Moss agreed that these items where located in his cell. Moss also showed me his arm that had new tattoo on it. Moss stated that Hart gave him the tattoo. Moss offered to show me the location of the items in order to cooperate. Moss, Officer Beard and myself entered Cell 203 in C-pod. Moss handed me a homemade tattoo gun and a piece of paper containing four matches and what appeared to be the remains of tobacco. The tattoo gun consisted jail issued toothbrush wrapped in deodorant stickers containing a staple that appeared to be melted into the toothbrush. The tattoo gun was covered in black ink like substance. Also included was a toothpaste cap containing the ink concoction. Given Moss and Hart's cooperation they were allowed to return to their cell.

The following identifies Brandon Moss:

Brandon Lee Moss
DOB: 01/15/1978
SSN: 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
B/M

At approximately 11:20 P.M. Officer Tyler Stephens and myself entered C-pod cell 204 occupied by inmate Jeffrey Casey in search of "Hooch". I seized one large container that probably contained hooch. The large container is not an approved item. It is usually used for isolated inmates for juice and water. The top of the container had plastic wrap, which could be used to store the fermenting hooch. I could smell an odor that is commonly associated with alcohol type beverages coming from the container. Inmate Jeffrey Casey was permitted to return to his cell being that the container was empty.

The following identifies Jeffrey Casey.

EX. B

## Cape Girardeau County Sheriff's Office
### Jail Division Incident Report

Jeffrey David Casey
DOB: 09/25/1981
SSN: 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
W/M

In total the following was seized:

1 White BIC lighter
4 Matches
Tobacco Remains
1 Homeade Tatoo Gun with other items associated with the making of a tattoo
1 Empty Container of "Hooch"

I have nothing further to report at this time.

Ex. B

## Cape Girardeau County Sheriff's Office
### Jail Division Incident Report

Deputy Brooks M. Brockmire S59
I0911-056.A256
Found Contraband
D Block Cell #202
09-06-2011 @ approx. 0120 hours
09-06-2011 @ 0140 hours
Brooks M. Brockmire
573-243-3551
216 N. Missouri St.  Jackson, MO 63755

On Tuesday September 6, 2011, Deputy Bromley and I were conducting 0100 inmate headcount. Upon entering D block, Deputy Bromley notified me that he detected the odor of an unknown burnt substance, emanating from one of the cells on the top tier of the block.

Upon further inspection, it was determined that the odor was coming from cell #202. I then radioed to the control booth to have the cell door opened. Once the door was opened, it was apparent that something had been burnt in the cell.

Deputy Bromley and I conducted a quick search of the cell. I located a purple in color "ace" brand lighter, in the desk of inmate Darien Boyd.

Boyd stated that the lighter was his and his cellmate did not have anything to do with it. Boyd was then placed in hand restraints by Deputy Bromley and escorted to holding cell #1. While being escorting inmate Boyd to the booking area, he stated that he was smoking dried out orange peels.

I have nothing further to report at this time.

Brooks M. Brockmire, Deputy
Cape Girardeau, County

Ex. B

## Cape Girardeau County Sheriff's Office
### Jail Division Incident Report

Deputy Greg Brown S55
I1011-058.A184
Possession of a Controlled Substance - Cocaine
Medical Exam Room - Booking
Saturday, October 1st, 2011 4:00 A.M.
Monday, October 3rd, 2011 3:00 A.M.
Deputy Greg Brown S55
(573) 243-3551
216 N Missouri St
State of Missouri

---

On Saturday, October 1st, 2011 at approximately 4:00 A.M., I was conducting a booking process on 1 male hispanic inmate identified as:

**Ixba, Santiago Pucheta**
**H/M DOB: 07/25/91**

During the course of the booking process I had to conduct a search of Ixba. Ixba was instructed to enter the medical exam room. There I instructed Ixba to take all his clothing articles except for his underwear and place them on the exam table. I then instructed Ixba to go behind the shower curtain and place his underwear underneath the shower curtain. I then handed Ixba his jail uniform. While Ixba was getting dressed, I conducted a search of his personal clothes. While checking his jeans, in the back pocket was a wallet. Inside the wallet I located a little white plastic bag. The white plastic bag I noticed had some type of substance inside.

I then secured Ixba into holding cell-1 and took the plastic bag inside the dispatch area where I saw Deputy Justin Glastetter. I then showed Deputy Glastetter my finding. While further inspecting his wallet, I came across another little white plastic bag. It to was handed over to Deputy Glastetter. When Deputy Glastetter opened up the bag it contained a white powder substance. Deputy Glastetter then took the substance to the patrol office to be field tested and placed into evidence. I was later informed that the substance tested positive for cocaine.

Deputy Greg Brown S55
October 3rd, 2011

Ex. B

# Cape Girardeau County Sheriff's Office
## Jail Division Incident Report

Deputy Brooks M. Brockmire
I1011-063.A256
Found Contraband/ Use Of Force
E Pod/ Medical Exam
10-30-2011 @ appox. 1:45 P.M.
10-30-2011 @ 3:05 P.M.
Brooks M. Brockmire
573-243-3551
216 N. Missouri St.  Jackson, Mo 63755

On Sunday October 30, 2011, I was monitoring the jail housing area. While walking around the jail control center, I smelled an odor commonly associated with the use of marijuana, coming into the control booth pass through window.

I then instructed Corrections Officer Snyder to let me into the moat hallway to further investigate this odor. Corrections Officer Miller and I then conducted a walk through of the moat hallway.

While in the hallway, I noticed that there was a strong odor emanating from E pod. I then instructed Officer Snyder to open in pod. Officer Miller and I entered E pod and immediately noticed that the smell of marijuana was coming from the top housing area of the pod. While walking on the top tier, the smell of marijuana was strongest in cell 203. At this time, Deputy Kight responded to E pod to assist.

The inmates in cell 203 were taken out of the cell, and escorted out of the pod. The inmates can be identified as follows:

Glass, Cordero Marcell
DOB: 04-21-1992
SSN: 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
B/M

And,

London, Donald William
DOB: 09-29-1961
SSN: 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
W/M

I then escorted Glass to the visitation area, and asked him if he knew why I was there. He stated that he knew that there were several people in the pod that were smoking marijuana. I asked him if he knew where the marijuana came from and he stated that the "guy who came in on Friday brought it in". He stated that he did not know the persons name, but did state that he knew him as "St. Louis", and that he had "dreadlocks". He also explained that an unnamed individual was acting as if he was shaving in the mirrored

Ex. B

# Cape Girardeau County Sheriff's Office
## Jail Division Incident Report

glass in the common area to serve as a lookout, while another person used the extension cord to ignite a piece of paper, causing it to burn and using it to light the marijuana, also known as a "wick."

Upon further investigation, it was determined that an inmate was booked in on Friday that matched this description. This inmate also showed an address out of St. Louis, Mo. The inmate can be identified as follows:

Crenshaw, Ryan Dementral
DOB: 04-08-1990
SSN: 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
M/B

Crenshaw was removed from cell 207 and escorted to holding cell 1. I then informed Crenshaw of his rights per the Miranda decision. Crenshaw stated that he understood his rights as they were explained to him. I then asked him about the marijuana. He stated that he did not know anything about it, and he was not going to be a "snitch."

I then asked Crenshaw if he was on probation and he stated that he was. I asked him to submit a urine sample to test for the use of marijuana. He stated that he would submit to the test.

Deputy Kight and I then entered the Medical Exam room. Crenshaw was instructed to give a sample of his urine. Approximately two minutes passed, and Crenshaw stated, "fuck it, im not doing this shit." I then asked for Crenshaw to return the specimen cup to me.

Crenshaw became belligerent and uncooperative. I instructed Crenshaw to calm down and again directed him to return the specimen cup. Crenshaw took approximately two to three steps backwards, and then threw the sample cup at me. He then turned and in an aggressive manner, began stepping towards deputy Kight.

Deputy Kight and I then attempted to restrain Crenshaw, and he resisted our efforts. Kight and I then assisted Crenshaw to the ground and attempted to place him into hand restraints. Corrections Officer Miller also responded to the incident and attempted to assist in placing restraints on Crenshaw.

Once Crenshaw was secured into hand restraints, he was placed into holding cell 1. Approximately ten minutes later, Deputy Kight, Officer Miller, and I removed the restraints from Crenshaw.

All officers exited the cell without further incident. I have nothing further to report at this time.

Brooks M. Brockmire

Ex. B

# Cape Girardeau County Sheriff's Office
## Jail Division Incident Report

Matthew J. Kight
I1211-075.B292
Found Contraband
Old Dorm and South
Sunday, December 25th, 2011 at approximately 2250
Monday, December 26th, 2011 at 1927
Matt Kight
573-243-3551
216 North Missouri St. Jackson, MO. 63755

On Sunday, December 25th, 2011 at approximately 2250 Officer John Simmons, Officer Ross Fleming and I (Deputy Matt Kight) entered the dormitory located in the old jail for cell searches. All inmates that were currently assigned beds in the dormitory were placed in the common area during cell searches. Officer Fleming remained with the inmates in the common area. At that time Officer Simmons and I searched the dormitory.

During our search we seized extra clothing and one BIC lighter. The lighter was located in the common area beside the TV. The extra clothing was given to the laundry room to be washed and returned to booking. At that time Simmons, Fleming and I returned to the control booth.

Upon further discussion among jail staff we decided to search south block also located in the old jail. The jail's trustees are assigned bunks in this pod. All of the trustees were directed to exit the pod and report to the common area. I made noticed inmate Michael Hilderbrand make eye contact with me multiple times. Hilderbrand appeared to be taking his time and or waiting for me to temporally walk away from his view. In my experience I know that this may mean Hilderbrand was attempting to hide contraband. The following identifies inmate Michael Hilderbrand:

Michael Bryan Hilderbrand
SSN: 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
DOB: 07/08/1990
W/M

Before conducting cell searches I spoke with all the trustees in regards to any possible contraband. I asked all the trustees if anybody wanted to step forward with possible contraband in their cell. I warned that if anybody had contraband in their possession and did not step forward they could face charges. Officer Fleming remained with the trustees. Deputy Jesse Houseman, Officer Simmons and I began to search Hilderbrand's cell, cell five. Hilderbrand was this cell's only occupant. Hilderbrand's cell had a smokey like odor. At this time I returned to the trustees in the common area. It was to my knowledge that Officer Simmons already located one BIC lighter in the shower room lighting fixture.

Ex. B

Cape Girardeau County Sheriff's Office
Jail Division Incident Report

---

I again asked the trustees if they wanted to confess to any contraband. I then specifically asked Hilderbrand the same. Hilderbrand told me he might have some tea from the kitchen and a marker. I returned to South block to further conduct our search.

After further searching of South block I decided to return to the trustees. At this time I individually stripped searched all south block occupants in the shower located in North Block. I also spoke to everybody individually. I again asked Hilderbrand if he had anything to show us in his cell. He replied no. Inmate Rodney Glover said that he would show us where there was a lighter located. Glover led us to the lighting fixture where we previously located the BIC lighter. I explained to Glover we had located this item already. The following identifies inmate Glover:

Rodney Lee Glover Jr.
SSN: 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
DOB: 12/07/1988
W/M

We then spoke to inmate Brandon Dean in south block. Dean showed us where he was keeping some tea wrapped like tobacco. Dean explained that he had attempted to smoke this tea. At this time Officer Simmons checked Hilderbrand's cell again using the same location Dean was using. That is when Simmons located scissors underneath the toilet buried into the floor. These scissors are commonly associated with medical scissors often used to remove sutras. These scissors are typically located in a small packet's in the medical exam room. These packets are in cabinets that can only be accessible by jail staff with a key. The Following identifies inmate Dean:

Brandon Eagleston Dean
SSN: 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
DOB: 01/23/1990
W/M

I returned to the common area to speak with the group of trustees again. Hilderbrand again denied being in possession of any contraband other then a marker and possibly tea. I then placed Hilderbrand in hand restraints and escorting him to holding cell two.

Ex. B

# Cape Girardeau County Sheriff's Office
## Jail Division Incident Report

S58 C. D. McClard
I0112-001.283A
Found Contraband
Medical exam room
12/29/2011 @ 8:00 P.M.
01/03/2012 @ 6:44 P.M.
S58 C. D. McClard
(573) 243-3551
216 N. Missouri St. Jackson Mo 63755
Sandra Christine Williamson
(573) 243-3551
216 N. Missouri St. Jackson Mo 63755

On Thursday December 29th 2011 at 8 P.M., I, Deputy C. McClard, received a Phone call from Correction officer Held who was in the booking area stating she was in need of my assistance.

Once in booking, I was informed by CO Held that while conducting a search of an inmate in our custody an item had fallen from her rectum. The inmate was later identified as Sandra C. Williamson.

The item was a Motorola cellular phone dark grey in color, inside a green and silver case.

CO Held then informed me that she had taken Williamson to the medical exam room to be searched and, once inside the exam room, she explained to Williamson that she was going to be searched. She stated from that point Williamson became extremely nervous and stated that she was about to have a panic attack. Once CO Held began to have Williamson go through the strip-searching process, she had a calm demeanor until she was asked to turn around, squat down, spread her butt-cheeks, and cough three hard times. After given these instructions, Williamson informed CO Held that she just had gallbladder surgery and could not fully squat down. Co Held then told Williamson to squat down as far as she could and cough three times. Williamson slightly squatted and coughed gently one time and then quickly turned around. CO Held told Williamson that it was not satisfactory and to try again giving three hard coughs. Williamson turned around again, squatted approximately the same amount as before, and began to cough. On the second cough, the cell phone fell to the floor from her rectum where the back of her case then broke apart. Williamson then stated, "Well, that's my cell phone!" CO Held then put on a latex glove and picked the cell phone up off the floor. After Williamson dressed out in her orange uniform, CO Held then called me for assistance.

Upon every entrance into the booking area there are signs posted at the doors stating that weapons, drugs, and contraband is not allowed into the jail and it should be given to an officer immediately.

The call phone was later placed into evidence.

Ex. B

# Cape Girardeau County Sheriff's Office
## Jail Division Incident Report

Ex. B

Cape Girardeau County Sheriff's Office
Jail Division Incident Report

Deputy Gregory P Brown S55
I0112-005.A184
Found Contraband
Booking Area – Medical Exam Room
January 13th, 2012 9:30 A.M.
January 17th, 2012 8:00 A.M.
Deputy Gregory P Brown S55
(573) 243-3551
216 N Missouri St
Jackson, MO 63755
State of Missouri

On Friday, January 13th, 2012 at approximately 9:30 A.M. I went to the jail booking area of the Cape Girardeau County Sheriff Department to accept a male inmate that was remanded into the custody of Baliff Bradley Phillips from Division IV at the Cape Girardeau County Courthouse. The male subject was identified as Chad Pack. Pack is fully identified as:

**Pack, Chad Shea**
**W/M DOB: 11/07/88**
**SSN# 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**

After accepting Pack from Baliff Phillips, I began the booking process on Pack. One of the booking procedures is to conduct a search of Pack person and place him in a jail issued uniform.

I instructed Pack to enter the medical exam room. The medical exam room is located in the jail booking area and where the search will be conducted. Once in the medical exam room, I instructed Pack to place all of his clothing articles on the medical exam room bed. Pack placed all his clothing articles on the examination bed. After conducting a search of Pack person, I conducted a search of Pack clothing. I picked up one sock and felt an object concealed in the sock. I took the sock and turned it inside out. Concealed inside the sock was a zip lock bag. Inside the zip lock bag was a brown in color leafy substance. This substance is commonly known as tobacco.

Pack stated to me, "it was worth a shot." "I knew that I was caught when you instructed me to take my socks off."

Deputy Greg Brown 01/17/12

Ex. B

## Cape Girardeau County Sheriff's Office
### Jail Division Incident Report

Deputy Matthew J. Kight
I0112-012.A292
Contraband
E-204
Friday, January 27th, 2011 @ approximately 2133
Sunday, January 29th, 2011 @ 2333

On Friday, January 27th, 2011 I received information from Sergeant Erik Koehler (DSN-277) that inmates Robert Simmons (SSN: 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, DOB: 08/23/1979) and Demarcus Jones (SSN: 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, DOB: 08/23/1988) may be in possession of a lighter. Koehler informed me that it is likely that Simmons and Jones would be passing the lighter between the two of them. Koehler asked that we wait until the doors open for lockdown because that was when supposedly they would smoke dried up oranges.

At approximately 9:33 P.M. Officer Stetson Proffer (DSN-335) and I (Deputy Matthew Kight, DSN-292) overheard Simmons and Jones in E-204. I recognized Simmons voice and overheard him say, "Puff that shit". With my earlier information I believed this to be reason enough to enter cell E-204.

Officer Proffer and I entered E-pod. Upon entering cell 204 I noticed Simmons walking out of the cell. I instructed Simmons to return to the cell. Inmates Jones, Simmons and David Lester (SSN: 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, DOB: 03/10/1991) were in the cell. The cell had a smell commonly associated with burning paper and oranges. I asked Jones, Simmons and Lester what they were smoking. Jones responded oranges. Simmons took one orange BIC lighter out of his shirt pocket and handed it to me. Proffer and I visually inspected cell 204 and did not see any further contraband.

In total we confiscated 1 bag full of dried up orange peels and one orange BIC lighter. Demarcus Jones was moved to C-pod to separate the group. I believe at the time only Simmons and Jones were smoking.

Matt Kight

Ex. B

## Cape Girardeau County Sheriff's Office
### Jail Division Incident Report

Deputy Matthew J. Kight
I0112-012.A292
Contraband
E-204
Friday, January 27th, 2011 @ approximately 2133
Sunday, January 29th, 2011 @ 2333

---

On Friday, January 27th, 2011 I received information from Sergeant Erik Koehler (DSN-277) that inmates Robert Simmons (SSN: 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, DOB: 08/23/1979) and Demarcus Jones (SSN: 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, DOB: 08/23/1988) may be in possession of a lighter. Koehler informed me that it is likely that Simmons and Jones would be passing the lighter between the two of them. Koehler asked that we wait until the doors open for lockdown because that was when supposedly they would smoke dried up oranges.

At approximately 9:33 P.M. Officer Stetson Proffer (DSN-335) and I (Deputy Matthew Kight, DSN-292) overheard Simmons and Jones in E-204. I recognized Simmons voice and overheard him say, "Puff that shit". With my earlier information I believed this to be reason enough to enter cell E-204.

Officer Proffer and I entered E-pod. Upon entering cell 204 I noticed Simmons walking out of the cell. I instructed Simmons to return to the cell. Inmates Jones, Simmons and David Lester (SSN: 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, DOB: 03/10/1991) were in the cell. The cell had a smell commonly associated with burning paper and oranges. I asked Jones, Simmons and Lester what they were smoking. Jones responded oranges. Simmons took one orange BIC lighter out of his shirt pocket and handed it to me. Proffer and I visually inspected cell 204 and did not see any further contraband.

In total we confiscated 1 bag full of dried up orange peels and one orange BIC lighter. Demarcus Jones was moved to C-pod to separate the group. I believe at the time only Simmons and Jones were smoking.

Matt Kight

Ex. B

# Cape Girardeau County Sheriff's Office
## Jail Division Incident Report

C20 Kayla M. Littrell
I112-090.347
Found Contraband
A2 Common Area
05 November 2012 1520
05 November 2012 1531
Kayla M. Littrell
573-243-3551
216 North Missouri St. Jackson, MO 63755
N/A
N/A
N/A

On November 5, 2012 at approximately 1400 Deputy Dace and I escorted inmates Carrie Bell, Sara Cooper, Alisha Gills, Tyrone Deberry, Jones Finley, Daniel Harmon, Edward Parker, Devin Smith, Travis Martin, Christina Steffens, and Elizabeth Wilson to Cape Girardeau County Court House, 100 Court St. Jackson, MO 63755. Once we had arrived court continued as scheduled. We then had left Cape Girardeau County Court House at approximately 1500. As Deputy Dace and I escorted the inmates back, inmate Christina Steffens told me that Mary Dresseler was stealing her ibuprofen and that she was tired of it. Christina Steffens and Elizabeth Wilson had then told me they needed to tell me that Mary Dresseler in Pod A2 has a cell phone. They then proceeded to tell me that she told them that if any of the officers found out she had the cell phone that she was going to try and shove the cell phone in her genitalia.

Once we reached the Sheriff's Office Deputy Dace proceeded to walk all inmates up to the Jail through the Old Jail. Once I entered the jail area I proceeded to tell Lieutenant Todd Stevens and Deputy Tina Henderson what inmate Christina Steffens and Elizabeth Wilson had told me on our way back from court. After I had told them, Lieutenant Stevens, Deputy Henderson, and I then went to Pod A2.

Mary Desseler's bunk was on the floor under the stairs and she was lying on her mat. I then had asked her to get up and to come up with me to the booking area. As Mary Dresseler and I was walking to the entrance of the Pod Lieutenant Stevens then had said that he had found what we were looking for. Lieutenant Stevens then had showed me a black and silver cell phone. After that Mary Dresseler, Lieutenant Stevens, Deputy Henderson, and I then exited the Pod A2.

I then had escorted Mary Dresseler to the booking area where we had gone to the Medical Exam room. Once we got inside I then searched Mary Dresseler, nothing else was found.

Mary Dresseler was then escorted to Holding 1. This is all the information I have at this time. This case is still open.

Ex. B

# Cape Girardeau County Sheriff's Office
## Jail Division Incident Report

Ex. B

## Cape Girardeau County Sheriff's Office
### Jail Division Incident Report

S53 Rueseler
I0212-017.A140
Attempt to Deposit/Deliver/Conceal in or about the Premises of a County Jail an Alkaloid of any kind 221.111 3336599.1 4199 Class D Felony
Sidewalk North High St., outside public defender office, backside of jail
Monday 01-30-12 1600
Wednesday 02-01-12 1400
State of Missouri

---

On Monday, January 30th, 2012, around 4:00 P.M., I was escorting a chain gang of 8 male inmates back to the jail from Div III court. The chain gang was walking down hill on the sidewalk to the west side of North High St., outside the Public Defender's Office on the back side of the jail. The inmate located on the chain gang on the very front, on the right side was identified as:

Norris, Adam (Robert) Christian, (O Dog)
B/M 10-10-70 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
36 N. Henderson, Cape

When the chain gang reached an area outside the front door to the Public Defender's Office, Norris stopped walking, dove across to his left, pulling the inmate beside him and all the subsequent inmates behind him to the left. Norris reached all the way down to the ground into the grass pulling the other inmates with him. Norris picked something up into his hands and stood back up and continued walking. I was to the rear of the chain gang and immediately ran up to Norris who had his hands together clinched tight. I forced his hands open with my hands to remove what Norris had picked up. I found two partially burnt down cigarettes in his hands. I took these items into evidence and placed them in my pocket.

I advised Norris that he had just committed a felony and that I would seek charges against him for attempted delivery of an alkaloid to a county jail. I advised Norris that I had observed him do it, and so had the other 7 other inmates on the chain gang, and that the incident was most likely caught on camera. I reviewed the camera in question with Captain Mulcahy, but unfortunately the incident occurred after we had left the camera frame. All that was caught on camera was all of us walking from the courthouse right up to the location of the incident. I took the cigarette butts containing the alkaloid of nicotine to Captain Mulcahy's office where they were secured in an evidence bag and secured into his filing cabinet in his locked office.

I am referring charges to the Prosecuting Attorney's Office for Attempt to Deliver, Conceal, Deposit, Possess in or about the premises of a county jail, any other Alkaloid of any kind, Class D Felony. 221.111 3336599.1

EX. B

# Cape Girardeau County Sheriff's Office
## Jail Division Incident Report

The other 7 inmates and witnesses to this incident that were on the chain gang were identified as:

    1.) Carpentier, Zach W/M 07-02-92 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 45 S. West End, Cape
    2.) Cowell, Charles W/M 01-02-79 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 228 Albert, Scott City
    3.) Kelley, Richard W/M 01-15-61 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 429 N. Frederick, Cape
    4.) Nall, Shane W/M 12-14-80 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 109 Holmes, Sikeston (MODOC)
    5.) Roberts, Justin W/M 03-23-86 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 614 Olive, Cape
    6.) Walls, Kenneth W/M 10-06-71 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 117 Church, St. Francis, Arkansas
    7.) Brimer, Curtis W/M 11-21-78 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 1369 N. Farmington, Jackson

Ex. B

## Cape Girardeau County Sheriff's Office
### Jail Division Incident Report

Matthew J. Kight
I0212-021.A292
Found Contraband
Old Dorm
Wednesday, February 8th, 2012 @ approximately 2010
Wednesday, February 8th, 2012 @ 1040

On Wednesday, February 08, 2012 at approximately 8:05 P.M. I made contact with inmate Terry Sanders (SSN: 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, DOB: 12/02/1972). Sanders informed me he knew the whereabouts of at least a lighter. Sanders informed me that this information came from F-pod. It is believed that his source was inmate Rodney Glover (SSN: 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, DOB: 12/07/1988). Sanders informed me that the lighter should be located underneath the sliding door of the Old Dormitory. Commonly we house sentenced inmates here.

Upon checking this location I seized one green in color BIC lighter. It was placed in one empty pack of cigarettes. Currently the Old Dorm is not housing any inmates. Due to this I am uncertain of the origins or who may have had the contraband in their possession. Previously our trustees cleaned the old dorm. Due to my prior search no further search was conducted after recovering the BIC lighter.

EX. B

# Cape Girardeau County Sheriff's Office
## Jail Division Incident Report

Deputy Brooks M. Brockmire S59
I0212-022.A256
Found Contraband
South Block Shower Area
02-08-2012 @ approx. 1200 hours
02-09-2012 @ 1240 hours
Brooks M. Brockmire
573-243-3551
216 N. Missouri St.  Jackson, Mo 63755

On Wednesday February 8th, 2012, I received a hand written letter from inmate Rodney Glover. In the letter, Glover stated that he knew the whereabouts of a lighter located in the South Block area.

Lieutenant Stevens and I called Glover to the moat area and spoke with him. We asked Glover where the lighter was located. He stated that it was located in the right hand shower, inside of the light fixture.

Corrections Officer C. Simmons and I responded to the South Block area to conduct a search for contraband. I entered the shower area, and noticed that the light had appeared to be tampered with.

I pushed the light upwards and immediately noticed a small "bic" brand lighter. I confiscated the lighter and returned to the control booth.

Brooks M. Brockmire, Deputy
Cape Girardeau, County

Ex. B

## Cape Girardeau County Sheriff's Office
### Jail Division Incident Report

S52 J Bromley
I0212-024
Found Contraband
Med Exam in Booking
02/09/2012 at approximately 1840
02/09/2012 at approximately 2210
S52 J Bromley
573-243-3551
216 N. Missouri St.

---

Today at approximately 1830, Cape City brought in two male individuals to process. C26 Fleming patted down both individuals before placing them in holding two to await processing. As one C26 Fleming was patting down one of the individuals, C26 Fleming noticed that he was acting nervous. Fleming then asked the individual if he would clear his pockets. The individual claimed that nothing was on him or in his pockets. Fleming then patted down the individual and produced an empty packet of cigarettes from his right front pocket. Fleming then placed the empty cigarette container in the safe behind the booking desk.

The individual was identified as:

Wadlow, Brandon Clyde
W/M
12/26/1977
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

At this point, Wadlow was placed in Holding Two for talking to other inmates in holding instead of listening to the booking officer. C28 Koeppel and myself stayed in booking and processed two other inmates before deciding to take a short break. As I was finishing the booking process on another inmate, C28 Koeppel left the booking area. As I directed the processed inmate to the hallway, I began to head toward the sally port door next to the dispatch entrance.

I almost made it to the sally port door when C26 Fleming called my name over the intercom in the med exam room. He told me that he suspected Wadlow still had something on him, and asked if I would search him before coming back to the booth.
At this point, I grabbed a state uniform and headed to Holding Two. I called Wadlow over to Med Exam where I strip-searched him under the suspicion of contraband.
I noticed that he possessed a rectangular shaped object in his right sock. I asked him "what was in it?" Wadlow replied, "Awe shit, it's a lighter I had in Cape City" I then asked Wadlow to hand me the sock; to which he complied. I then asked him to take his other sock off and hand it to me; Wadlow complied. I turned the sock inside out to discover numerous particles of a dark brown, dry leafy substance with a pungent odor similar to that of tobacco found in cigarettes. The sock appeared to be yellowed from the leafy substance. I then proceeded with the search by asking Wadlow to show me his feet.

## Cape Girardeau County Sheriff's Office
### Jail Division Incident Report

Wadlow showed me his feet, both of which had similar dry leafy particles and a black ashy substance similar to that of cigarette ashes from a crushed cigarette. After that, I asked that Wadlow perform the squat and cough so I could further my search of his person. As Wadlow began to squat, I noticed a piece of green paper sticking out from between his buttocks. I ordered Wadlow to pull the paper out. As he pulled it out, He unfolded the green piece of paper that turned out to be a $20.00 bill of U.S. currency.
Wadlow then handed me the $20.00 bill. With a gloved hand, I confiscated the money, both socks containing the dry leafy substance and the lighter. I then asked Wadlow to again perform the squat and cough to ensure that nothing else was in his rectal area. As he did, I noticed a blue color on his rectum, which appeared as though something else was in further where I couldn't see.

At this point, I gave Wadlow the uniform to dress out in. I then placed him back in Holding Two and turned off the water in the cell to ensure he doesn't flush any other contraband down the toilet.

I have nothing further to report.


S52 J. Bromley

# Cape Girardeau County Sheriff's Office
## Jail Division Incident Report

Deputy Gregory P Brown
I0212-024.B184
Found Contraband
Holding Cell-2
Friday, February 10th, 2012 3:20 A.M.
Friday, February 10th, 2012 4:15 A.M.
Deputy Gregory P Brown
(573) 243-3551
216 N Missouri St
Jackson, MO 63755

---

On Thursday, February 9th, 2012 I was advised during the shift change pass down that an inmate assigned to holding cell-2 was being "dry celled." This inmate is identified as Brandon Wadlow.

**Wadlow, Brandon Clyde**
**W/M DOB: 12/26/77**
**SSN# 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**

The reason for the dry cell was he attempted to smuggle in tobacco into the jail facility by way of concealing it in his socks and a twenty-dollar bill was found in the rectum area of Wadlow during a strip search.

Captain Mulcahy ordered the "dry cell", dry cell meaning no water to either the sink or toilet, checking the toilet regularly.

At approximately 2:45 A.M., I instructed Correctional Officer Jeremy Miller to inspect holding cell-2 toilet. CO Miller advised me that there was something in the toilet. I advised by CO Miller and Correctional Officer Stetson Proffer to report back to the control booth.

At approximately 3:20 A.M., CO Proffer and Myself reported to holding cell-2. CO Proffer went through the toilet. CO Proffer then pointed out to myself an object inside the toilet. I pulled the object out of the toilet and it appeared to me to be a busted balloon, blue in color. All I could see inside the balloon was wet toilet paper with feces in it. I immediately took Wadlow in the medical exam room to be searched. Nothing else was found during the strip-search. CO Proffer and myself also located two cigarette butts inside the holding cell. I continued to look inside the toilet and found another busted balloon, blue in color. Also inside that busted balloon was wet toilet paper with feces in it. The entire cell was searched.

EX. B

Cape Girardeau County Sheriff's Office
Jail Division Incident Report

I questioned Wadlow about my findings of the two-busted balloons by a medical aspect. I asked him if he ingested a balloon with any type of controlled substance in it. Wadlow said he didn't.

Wadlow was then placed back into his cell.

The two pieces of busted balloons and cigarette butts were sealed in a evidence bag and placed in the nurses refrigerator until instructed by supervisor to tell me what the next course of action was.

Captain Mulcahy was notified of my findings.

Greg Brown 02/10/12

## Cape Girardeau County Sheriff's Office
### Jail Division Incident Report

Deputy Brooks M. Brockmire S59
I0412-040.A256
Found Contraband
C Pod Cell 102
04-20-2012 @ approx 1030 hours
04-20-2012 @ 1100 hours
Brooks M. Brockmire
573-243-3551
216 N. Missouri St.  Jackson, Mo 63755

---

On Friday April 20, 2012, Corrections Officer Wiseman and I were instructed to conduct cell searches in cellblock C. All inmates were instructed to lockdown. During our passdown prior to the beginning of our shift, we were advised that midnight shift received a tip that there was possibly homemade alcohol located in cell C102.

Upon entering cellblock C, Corrections Officer Wiseman and I proceeded to Cell C102 and instructed two inmates to exit the cell. The inmates can be identified as follows:

HINKLIN, Mark Allen
DOB: 05-19-1974
SSN: 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
W/M
State Inmate

And,

MIXON, Ricky Nmn Jr.
DOB: 09-03-1984
SSN: 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
B/M
Federal Inmate

The inmates were instructed to be seated in the common area while the search was conducted. Mixon was instructed several times to stay seated while the search was being conducted.

I searched the cell while Corrections Officer Wiseman supervised the inmates in the common area. Upon searching the cell, I located a clear juice container under the bottom bunk in the cell. The container was wrapped in an orange jail issued uniform and tucked in the back corner. I removed the container from under the bunk and noticed that it contained fruit, from the meal trays served over the last few days, pieces of bread, and was topped with a piece of thin plastic.

Mixon and Hinklin were both placed in hand restraints and escorted to the booking area. Hinklin immediately stated that he had nothing to do with this, and that he was "facing

Cape Girardeau County Sheriff's Office
Jail Division Incident Report

enough time as it is." I informed Hinklin that making an alkaloid in a correctional facility could carry a felony charge. Hinklin became very emotionally distraught and again stated that he had nothing to do with it.

I then spoke with Mixon. He stated that he was innocent and stated that he didn't care if he was charged because he was a federal inmate and was facing bigger time. I informed Mixon that he would be moving to a different housing location and an information report would be forwarded to the US Marshals office.

Ex. B

# Cape Girardeau County Sheriff's Office
## Jail Division Incident Report

S57 Tina Henderson
I0512.048194A
Found Contraband
A2-103
May 12, 2012
May 12, 2012 @ 9:19 a.m.
S57 Henderson
573-243-8446
216 N. Missouri St. Jackson, Mo. 63755
N/A
N/A
N/A

On Saturday May 12, 2012 I received a phone call from C22 Chelsea Held advising me that a female identified as:

Eaker, Terrie Lynn
DOB: 04-02-1984
SSN: 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

Had brought in a cell phone. She then advised me that an inmate that was released this morning has given information to C27 Thomas Davis about this matter. Inmate identified as:

Fowler, Margaret Ann
DOB: 07-06-1969
SSN: 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

After arriving at work C22 Held advised me that they had not had time to retrieve the phone yet and that inmate identified as:

Shelton, Lisa Marie
DOB: 01-06-1973
SSN: 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

Has the phone at this time. So I advised Sgt. Erik Koehler about the matter and he advised we would search after block walk was conducted.

Approximately 0758 C22 Held and I entered A2-103 to search for contraband. After entering the cell I advised the two females to get up and exit the call area and have a seat at the table. As the ladies exit the cell the inmates were identified as Lisa Shelton and:

Burmeister, Michelle Kay
DOB: 10-10-1979

Ex. B

# Cape Girardeau County Sheriff's Office
## Jail Division Incident Report

SSN: 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

C22 Held escorted Burmeister to the shower area for strip search as Lisa Shelton had a seat at the table area while I searched the cell. Moments later C22 Held returned to the cell advising me that Burmeister stated that the phone was located underneath her mat and she was the one that brought it in. I immediately went to her bunk went through all of the belongings and located the phone hidden in a bible with the battery laying separately in the bible. I immediately placed the items in an evidence bag and C22 Held and I exited the area and returned to the jail booth.

Ex. B

## Cape Girardeau County Sheriff's Office
### Jail Division Incident Report

Matthew J. Kight
I0512.043.A292
Contraband
F-pod
Sunday, April 29th, 2012 @ approximately 1830
Wednesday, May 2nd, 2012 @ 1900
Matt Kight

---

On Sunday, April 29th, 2012 at approximately 1800, I was informed by Officer Stetson Proffer (DSN-C30) that he had information concerning contraband located in F-pod. I responded to booking. During inmate Michael Martin's (DOB: 12/31/1983, SSN: 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) release he informed Officer Proffer and I (DSN-S62 Matt Kight) of possible marijuana and tobacco use.

Martin explained that the night prior a inmate named "Dre" and others were smoking what he believed to be Marijuana in between bunk's F 1-1 and F 1-2. He also said as late as 4:00 P.M. during church services the same group appeared to be smoking cigarettes. Martin was unsure of the contrabands origins citing possible work release. Martin described three inmates that we identified as Walter Combs (DOB: 01/28/1969, SSN: 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), Otis Rutherford (DOB: 11/05/1986, SSN: 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) and Thomas Kuehn (DOB: 03/20/1970, SSN: 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).

Proffer and I reported to the jail booth to inform jail staff. Upon watching the area in question in F-pod I believed that the smoking was taking place at the current time in bunk F 1-1. Deputy Zachary Snyder (DSN-S56), Deputy Justin Bromley (DSN-S52), Officer Proffer and I responded to F-pod for cell searches. Snyder and I made contact with inmates Combs and Rutherford. Combs and Rutherford was sitting on bunk 1-1 behind the cover of a jail issued sheet. Combs and Rutherford had a lit Cigarette that Combs was placing down when we removed the sheet.

Inmates Combs, Kuehn, Rutherford, Jordan Weaver and Richard Geiger remained in the pod and were strip-searched. The rest of the inmates were placed into G and H hallway, which is located beside F-pod. Combs and Rutherford were temporarily placed into hand restraints. Once being removed from hand restraints Rutherford removed a lighter and three full cigarettes from his underwear. Later, Rutherford would confirm that he had been in possession of his blue bic lighter since his processing. Once the said inmates were searched we conducted a search of bunks 1-1 and 1-2. No other contraband was found.

Proffer and I had further discussion with Combs and Rutherford concerning the origins of the contraband. It was later determined that inmate Marcus Bryan (DOB: 05/18/1975, SSN: 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) was suspected of bringing in the contraband. I made contact with Marcus Bryan. Bryan denied involvement at first. Later Bryan admitted to bringing the contraband into the facility. To Bryan's account he brought in at least 10 full cigarettes and 1 bic lighter. Bryan explained that the rest of the cigarettes had been flushed or

Ex. B

# Cape Girardeau County Sheriff's Office
## Jail Division Incident Report

smoked.  Bryan agreed to give me the lighter.  Bryan did turn over 1 bic lighter after returning to F-pod.

Total seized contraband is as follows:

3 full Cigarettes
2 Bic lighters
1 Cigarette butt

Combs, was placed into B-pod.  F-pod was placed on lockdown for the remainder of the evening.

Matt Kight

Ex. B

# Cape Girardeau County Sheriff's Office
## Jail Division Incident Report

J. Bromley
I0612-059.A.273
Found Contraband
Medical Exam
06/07/2012 @ approximately 10:16 A.M.
06/07/2012 @ approximately 12:56 P.M.
J. Bromley
573-243-3551
216 N. Missouri St. Jackson MO,63755

---

On June 7th, 2012 at approximately 10:16 A.M. C23 Mirly and myself were processing in an inmate sentenced to 10 days shock. The inmate was identified in the booking process as:

Moore, Keilon Trevae
B/M
DOB: 8/20/1992
SSN: 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

  During the booking process, C23 Mirly and myself conducted a search of Moore's person for contraband before issuing him an orange Cape Girardeau County Uniform. While conducting the search, I instructed Moore to remove his socks and turn them inside out to ensure that no contraband was in them. I then observed Moore take his socks off, wad them up, and place them on top of the Cape Girardeau County Issue Uniform. I then instructed Moore to turn the socks inside out, as I had asked previously. Moore then picked up the socks, bent over, and began unraveling his socks. While observing him unravel his socks, I heard a noise that sounded like a small object hitting the ground. I looked over and observed an unknown white pill lying on the ground. At this point, I instructed Moore to place his hands behind his back. I then placed a glove on my hand, and retrieved the white pill. At this point, I instructed Mirly to keep an eye on him while I notified S14 Sgt. Koehler of what was found from the search.

After notifying the Sergeant, I returned to the jail control booth whereby I consulted the nurse about identifying the unknown white pill. The markings on the pill read WATSON 349. The nurse consulted her pill identification manual and determined that the pill was a Hydrocodone 5/500. After the pill was identified as a Hydrocodone 5/500, I advised S14 Sgt. Koehler that the pill was a controlled substance. At this point, S14 Sgt. Koehler notified S06 Captain Mulchay of the situation. The captain replied that we needed to dry cell Moore to ensure no other controlled substances were brought into the facility.

Upon hearing this, I grabbed a plumbing chase key and returned to booking. I cleared out Holding Cell 3 by sweeping out the cell, and then I searched the cell thoroughly to ensure no contraband was left behind. After that, I opened the plumbing chase door and closed the water valve to Holding Cell 3. This procedure is done to ensure that if contraband was missed during a search, an inmate will not be able to flush contraband down the toilet.

Ex. B

# Cape Girardeau County Sheriff's Office
## Jail Division Incident Report

Once Holding Cell 3 was prepped, I then returned to Med Exam where C23 Mirly was still observing Moore. I seized the socks Moore was wearing as well as another pill that fell out of them as evidence. I placed the socks and pills in an evidence bag. I then secured the evidence bag and placed it behind the booking counter. After that, instructed Moore to stand up; I removed the restraints from his hands. As I was doing so, Moore stated that there was a 10-day supply of the pills in his socks. He stated he was bringing them in for his knee. After making these statements, I instructed Moore to dress out in the state issue uniform. After dressing out, I escorted Moore to Holding Cell 3 without further incident. I then secured Moore in Holding Cell 3 for observation to ensure no other contraband was missed.


I have nothing further to report at this time.

Ex. B

Cape Girardeau County Sheriff's Office
Jail Division Incident Report

Deputy Brooks M. Brockmire S59
I0612-060.A256
Found Contraband
D-103
06-11-2012 @ approx. 1330
06-11-2012 @ 1348
Brooks M. Brockmire
573-243-3551
216 N. Missouri St.  Jackson, Mo 63755

On Monday June 11, 2012, Corrections Officer Fleming and Corrections Officer Proffer were conducting tray pass. During the collection of the lunch trays, Fleming stated that he smelled smoke in D pod.

After trays were collected, Lt. Stevens, Corrections Officer Fleming, and I responded to D pod to conduct a search of D pod. I smelled smoke emanating from cell D-103. I then motioned for the control booth to open the cell. The inmates in this cell were identified as follows:

DURHAM, Zachary
DOB: 05-09-1991
SSN: 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

And,

ROBERTS, Justin Lanier
DOB: 03-23-1986
SSN: 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

The inmates were removed from the cell and strip searched. Corrections Officer Fleming and I then conducted a search of cell D-103.

I located a small "hole" in the wall, near the floor that was filled with paper. Upon removing the paper, I noticed that there was a green in color lighter hidden. I removed the lighter and continued to search. No further contraband was located.

EX. B

# Cape Girardeau County Sheriff's Office
## Jail Division Incident Report

Justin Bromley
I-1112-092.A273
Found Contraband
F Pod Bunk 1-6
11-7-2012 @ 0745
11-7-2012 @ 0805
573-243-3551
216 N. Missouri St.

Today at 6:02 A.M. I (Deputy Justin Bromley S52) received a letter from inmate Willis Stiltner. The letter outlined that an inmate in bunk F 1-6 lower had tobacco and other contraband items concealed within his bunk area. Upon reading this letter, I decided to coordinate a search of bunk F 1-6 with officer Benjamin Juergens (C21), and Deputy Matt Kight (S62) at shift change. I searched the Jail ITI and discovered that the inmate residing in bunk F 1-6 was identified as Brendan Duke.

At 7:45 A.M., Deputy Kight, Officer Juergens, and myself entered the side door of F Pod. We proceeded to bunk 1-6. Deputy Kight advised Duke to stand up and place his hands behind his back. I handcuffed Duke and escorted him out the side door from F pod into the jail moat. At this point I escorted Duke to Med Exam. As we entered the booking area, I asked Duke if he had anything on him. Duke looked at me and said yes, "I have pain pills in my sock". I then escorted Duke to Med Exam where I conducted a strip search of his person. Duke handed me his sock that contained the contraband. I then continued the search of his person. Once the search was complete, I had Duke put his clothes back on, then I placed Duke in Holding Cell 1.

Upon returning to the booth, I opened the sock, and discovered several baggies. One bag contained loose brown leafy material with a pungent odor resembling tobacco. Another bag contained 11 blue colored pills with the word "Watson" inscribed on side of the pills. The other bag was filled with what appeared to be broken off matches, compartmentalized in 6 small wrappers and a striking surface to ignite the matches with.

I took the baggie of pills to the Jail Nurse (Olivia Pesina), who identified the pills as Hydrocodone 10/650 by using pill identification software. I took photographs of the contraband with the jail issue Kodak camera. I placed all the contraband recovered into Evidence.

EX. B

# Cape Girardeau County Sheriff's Office
## Jail Division Incident Report

Matt Kight
I1112-092.B292
Contraband
F-pod
Wednesday, November 7th, 2012 @ approximately 0745
Friday, November 9th, 2012 @ approximately 0355

Wednesday, November 7th, 2012 I received information from Deputy Justin Bromley (DSN: 273, S52) of possible contraband located in F-pod. Inmate Willis Stiltner (DOB: 09/24/1971, SSN: 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) gave Deputy Bromley a note with said information. To our knowledge, the inmate possessing the contraband would be Brendan Duke (DOB: 07/08/1980, SSN: 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). Willis detailed that Duke brought the contraband in through his rectum.

At approximately 0745 Officer Ben Juergens (DSN: 344, C21) Deputy Bromley and I (Deputy Matthew Kight, DSN: 292, S62) entered F-pod though the fire door to right of the main sliding door. I instructed inmate Stiltner to stand up and exit his bunk. Deputy Bromley placed him into hand restraints and escorted him to booking for a strip search of his person. I then instructed inmate Jeffery Pirtle (SSN: 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, DOB: 08/31/1977) to stand up and exit the bunk area. I asked Pirtle if he was aware of any contraband located in the area. Pirtle responded no. Pirtle remained in the pod at the seating area. Officer Juergens and I conducted a search of both bunks 1-5 and 1-6. Underneath bunk 1-5 I located a cup, with one pouch commonly associated for tobacco use. Inmate Pirtle was the only person assigned to this bunk. The pouch is usually considered spit less tobacco or snus. It appeared to be used. I then placed inmate Pirtle into hand restraints and escorted him to booking. Officer Juergens remained to search.

Once in booking, I turned over inmate Pirtle to Deputy Bromley for a strip search of his person. Deputy Bromley informed me that he did locate an amount of contraband on inmate Duke's person. Inmate Pirtle claims he was unaware of the tobacco product. To my knowledge both Pirtle and Duke remain in booking per administration.

Deputy Kight

EX. B

# Cape Girardeau County Sheriff's Office
## Jail Division Incident Report

C29 Wiseman
I0413-052.342A
Contraband found
Cell C 106
04/01/2013 @ 0008
04/01/2013 @ 0035

On April 1st, 2013 at approximately 0035 C27 Davis , C23 Mirly, C16 Jenkins, and Myself ( C29 Wiseman ) entered cell C106, belonging to Inmates Davis, Maurice and Triplett, Kwamae, to search it believing that inmate Maurice Davis had possession of a pencil. I searched a desk belonging to inmate Davis and found a tissue with a crushed pill inside, the tissue had been concealed inside of an eyeglass case. When asked about the pill inmate Davis claimed that he didn't know what it was but that it was "some kind of sleeping pill". As I continued searching the cell I noticed on the shelf, also belonging to inmate Davis, two blue pen caps with a small piece of plastic in between. I pulled the caps apart to reveal what appeared to be a section of a toothbrush that had been sharpened to a point. When questioned about the item, Inmate Davis said, " You know what that is. Im in here on some serious stuff. You can charge me for it if you want. Ive been here too long." Upon searching the cell I also noticed that all of the tar sealant had been removed from the inside frame of the window. After entering the jail booth I informed S57 Henderson of the situation. The items were placed in evidence bags and placed on Lt. Stevens Desk. I have nothing further to report.

C29 Josh wiseman

Cape Girardeau County Sheriff's Office
Jail Division Incident Report

Matt Kight
I1112-099.A292
Found Contraband
Kitchen
Friday, November 9th, 2012 @ approximately 0500
Friday, November 16th, 2012 @ 0500

On Friday, November 9th, 2012 at approximately 0500 Officer Ben Juergens (DSN: 344, C21) and I (Deputy Matthew Kight, DSN: 292, S62) conducted a perimeter check. During perimeter check we searched different areas of the kitchen.

During my search of the trustee's bathroom I located one cigarette in-between the toilet paper located by the toilet. It appeared to be rolled with toilet paper and filled with a substance commonly associated with smoking tobacco. At this time I do not have reason to believe it was any of one trustee in particular or of its origins. Officer Juergens and I did watch the kitchen workers that morning for any unusual behavior. Inmate Zach Jones (DOB: 03/07/1985, SSN: 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) did appear to enter the area three times. Other then using the bathroom there should not be any other reason to enter this area. At one point while the kitchen matron was away, the kitchen workers did appear to have a brief conversation in the kitchen in regards to the cigarette. It appears they are under the belief that one of them stole it from each other.

Kight

EX. B

# Cape Girardeau County Sheriff's Office
## Jail Division Incident Report

C20 Kayla M. Littrell
I1212-111.A347
Found Contraband
Booking area
01 December 2012 1740
01 December 2012 1742
Kayla M. Littrell
573-243-3551
216 North Missouri St. Jackson, MO 63755
N/A
N/A
N/A

On December 1, 2012 at approximately 1740 Officer Reyna from Jackson Police Department brought one female, Maria G Deiermann to Cape Girardeau Sheriff's Department as safe keep for Scott County in reference to an outstanding criminal arrest warrant. When inmates are processed in the booking area, their property and persons are searched per standard operating proceedure. Upon searching Deiermann's property, she stated "Your not going to find anything in my purse and the other officer already took the stuff from me." The purse was a red and yellow colored and was turned into the jail staff by Officer Reyna upon reception. The purse had the following contraband:

1. 1 white screw cap container:
   a. 2 blue, gray, and red in color pills.
   b. 1 white in color pill with an oval shape with "N024" on the pill.
2. 1 black in color nylon zippered pouch:
   a. 13 small plastic bags with blue in color stars on them (all empty).
   b. 15 small plastic bags with green in color alien faces on them (all empty).
   c. 1 small plastic bag with blue in color stars on it containing 2 metal razor blades.
   d. 1 small plastic bag with blue in color stars on it containing 4 white in color pills with a white powdery substance inside the capsules.
   e. 1 small plastic bag with green in color alien faces on it containing 2 white in color pills with a white powdery substance inside the capsules.
   f. 1 small plastic bag with green in color alien faces on it containing 2 clear plastic wrappers.

After I had found the contraband, I told Deputy Bromley, the shift supervisor about what was found in Deiermann's purse. I photographed all the contraband that was found and Officer Reyna from Jackson Police Department was advised of the findings. The contraband was then placed in an evidence bag and turned over to Officer Reyna along with the evidence chain of custody.

EX. B

# Cape Girardeau County Sheriff's Office
## Jail Division Incident Report

S65 Walz
I0813-114.363
Contraband Found
Fpod
08/29/2013 at approximately 0900
08/29/2013 at approximately 0943
573-204-2931
Easley, Joseph
(573) 576-3178
4853 ST. HWY 72
Jackson, MO 63755

On Wednesday August 28, 2013 at 5:30pm Correctional Officer Dockins received a call from a man stating that inmate Joseph Easley has been contacting his daughter from a cell phone while he was in jail. They then conducted a quick search of Fpod and nothing was found at that time.

On Thursday August 29, 2013 at 9:00am Lt. Stevens was notified by Nurse Charla that evening shift received a call from an anonymous person stating that inmate Easley was in possession of a cell phone in Fpod. We then called inmate Easley to the moat Deputy Darland patted him down and sat him to the side. Once he was contained Deputy Darland, Sgt Koehler, Lt Stevens and I pat down the rest of Fpod. We then detained them in the G&H hallway. After all inmates were removed from Fpod Deputy Seib brought Inmate Easley into Fpod to be strip searched. Deputy Seib conducted the search he asked inmate Easley to strip down once he removed all his cloths an object fell from his crotch area. The object was a grey in color Samsung flip phone the front screen was cracked before it was in our control. Inmate Easley was then escorted to H-2.

EX. B

# Cape Girardeau County Sheriff's Office
## Jail Division Incident Report

C20 Kayla M. Littrell
I0113-013-A347
Found Contraband
Booking area
18 January 2013
18 January 2013
Kayla M. Littrell
573-243-3551
216 North Missouri St. Jackson, MO 63755
N/A
N/A
N/A

On January 19, 2013 Deputy Jesse Houseman brought one female, Danielle Gail Stilley, to Cape Girardeau Sheriff's Department for a parole/probation violation in reference to an outstanding criminal arrest warrant.

Danielle Gail Stilley
SSN: 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
DOB: 08/11/1992
Address: Pox 6 Olive Branch, IL 62969
Phone number: (618) 776-5201

When inmates are processed in the booking area, their property and persons are searched per standard operating procedure. Upon searching Danielle Stilley's property I found the following contraband:

1. 1 white pill bottle labeled as one a Day multivitamin for women/Prenatal
       a. 4 blue in color, small, oval shaped pills with- G3721 on one side.
2. 1 blue and red in color pair of diagonal cut cutting pliers
3. 1 car shaped pocketknife.
4. 2 9mm rounds.

After I had found the contraband, I showed the pill bottle to Danielle Stilley and she told me "those are Xanex", I told Deputy Bromley, the shift supervisor about what was found in Danielle Stilley's purse. All the contraband that was found was placed in an evidence bag and turned over to Deputy Jesse Houseman.

This is all the information I have at this time.

Ex. B

# Cape Girardeau County Sheriff's Office
## Jail Division Incident Report

Kayla M. Littrell
I0313-048.347A
Contraband found
South Block (H-2)
Monday, March 25th, 2013 @ approximately 04:00p.m.
Tuesday, March 26th, 2013 @ approximately 09:00a.m.

On Monday, March 25th, 2013 at approximately 1550 Lieutenant Stevens informed me that inmate Hannah Mauk has a lighter and would like me to walk on shift change block walk, and to collect it when we reach south block.

Hannah Rose Mauk
Inmate #: 20130088
SSN: 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
DOB: 09/22/1993

Upon reaching south block, Corrections Officer Mirly and Corrections Officer Coyler conducted a head count and I searched inmate Hannah Mauk's cell. A red in color lighter was found in inmate Hannah Mauk's possession.

This is all the information I have at this time.

EX. B

# Cape Girardeau County Sheriff's Office
## Jail Division Incident Report

C27 Davis
I0413-052.337B
Contraband
C Pod Cell 106
Monday, April 1st 2013 @ approximately 12:08 A.M.
Monday, April 1st 2013 @ approximately 12:32 A.M.

---

On the above date and time I, C27 Tom Davis (DSN#337), C29 Wiseman (DSN#342), C23 Mirly (DSN#345) and C16 Jenkins (DSN#353) entered cell 106 in C pod to search for contraband.  Upon searching said cell, C29 Wiseman found an object with a pointed tip and a long handle made out of the end of a toothbrush that had a sharpened to a point resting inside an ink pen handle that appeared to be a shank in the property of inmate Maurice Davis (#20110643).   After being questioned by C29 Wiseman, I also questioned inmate Maurice Davis.  Maurice Davis stated to me that he used this object "… to thread up my shoes and stuff."  The "shank" was taken into the jail booth. I have nothing further to add at this time.


C27 Tom Davis

Ex. B

## Cape Girardeau County Sheriff's Office
### Jail Division Incident Report

C29 Wiseman
I0413-052.342A
Contraband found
Cell C 106
04/01/2013 @ 0008
04/01/2013 @ 0035

On April 1st, 2013 at approximately 0035 C27 Davis , C23 Mirly, C16 Jenkins, and Myself ( C29 Wiseman ) entered cell C106, belonging to Inmates Davis, Maurice and Triplett, Kwamae, to search it believing that inmate Maurice Davis had possession of a pencil. I searched a desk belonging to inmate Davis and found a tissue with a crushed pill inside, the tissue had been concealed inside of an eyeglass case. When asked about the pill inmate Davis claimed that he didn't know what it was but that it was "some kind of sleeping pill". As I continued searching the cell I noticed on the shelf, also belonging to inmate Davis, two blue pen caps with a small piece of plastic in between. I pulled the caps apart to reveal what appeared to be a section of a toothbrush that had been sharpened to a point. When questioned about the item, Inmate Davis said, " You know what that is. Im in here on some serious stuff. You can charge me for it if you want. Ive been here too long." Upon searching the cell I also noticed that all of the tar sealant had been removed from the inside frame of the window. After entering the jail booth I informed S57 Henderson of the situation. The items were placed in evidence bags and placed on Lt. Stevens Desk. I have nothing further to report.

C29 Josh wiseman

Ex. B

# Cape Girardeau County Sheriff's Office
## Jail Division Incident Report

Kayla Littrell
I0413-054.347A
Contraband found
Dorm
April 4, 2013 at approximately 2130
April 4, 2013 at approximately 2230

On Thursday, April 04, 2013 at approximately 2130 Corrections Officer Maranda Sides and I went to Dorm, located in the Old Jail, to search Dorm for possible contraband. During our search I found a blue in color Bic Lighter located at the bottom of Dorm's trashcan.

This is all the information I have at this time.

Ex. B

# Cape Girardeau County Sheriff's Office
## Jail Division Incident Report

J. Bromley
I0413-055.273A
Found Contraband
C106
04/04/2013 @ 2208
04/04/2013 @ 2301
573-243-3551
216 N. Missouri St.

On Thursday April 4th, 2013, at approximately 2208, myself (Deputy Bromley), and Corrections officer Wiseman conducted a search of cell C-106. Lt. Stevens instructed the evening shift to conduct a follow up search of C106 since a shank was located on a prior search a few days ago.  During the search, Officer Wiseman found a small plastic baggie that contained a small quantity of an unknown white in color granular substance. The small baggie was located on the floor in the back portion of the cell. Officer Wiseman seized the small baggie as contraband, and then finished the search of the cell.

Wiseman and myself returned to the booth, where we proceeded to Sgt. Curtis's office. We informed Sgt. Curtis of what we found in the cell. Sgt. Curtis then procured a Cocaine Field Test Kit. A small sample of the white in color granular substance was collected from the bag then tested. According to the test, the white in color granular substance tested positive for cocaine.

The remaining substance was logged into evidence and placed in a secure lock box. Captain Mulcahy was subsequently notified about the results of the search.

Ex. B

## Cape Girardeau County Sheriff's Office
### Jail Division Incident Report

C29 Wiseman
I0413-055.342B
Found Contraband
C- 106
04/04/13 22:08
04/07/13 22:45

At approximately 22:08, S52 Justin Bromley and myself (C29 Josh Wiseman) entered cell C-106 occupied by inmates Davis, Maurice and Triplett, Kwamae to conduct a follow up cell search, as instructed my Lt. Stevens. We were instructed to search the cell due to prior issues with the inmates possessing contraband, such as a possible "shank" that was discovered two days before.

During the cell search I noticed a piece of paper on the floor with 4 corner baggies on top containing an unidentified substance, one being a white granulated substance. When questioned both inmates Triplett and Davis stated that they did not what it was or where it came from. We retrieved the corner baggies and finished the cell search. After entering the Jail Booth we proceeded to the patrol office to ask for Sgt. Curtis' assistance in identifying the substance. A field test was conducted on the corner baggie containing the white granulated substance that was identified to be Cocaine. All evidence was placed in an evidence box to be sent to the lab.  A urine sample was collected and is awaiting to be sent to the lab.  I have nothing further to report.


C29 Josh Wiseman

EX. B

Cape Girardeau County Sheriff's Office
Jail Division Incident Report

J. Bromley
I-0513-071.273A
Found Contraband
E 107
05/20/2013 At 0010
05/20/2013 At 2000
573-243-3551
216 N. Missouri St.
Jackson MO,63755

On Monday May 20th, 2013 at approximately 12:05 A.M. Officer Tom Davis and Officer Josh Wiseman were conducting a shift change head count of the jail. As Officer Davis and Officer Wiseman finished head count in E pod, they advised the control booth that they smelled smoke in the pod. Upon hearing this, Officer Phillip Colyer, Officer Tony Baliva and myself (Deputy Justin Bromley) entered the jail moat and proceeded to E pod to investigate where the smoke was coming from. There was a heavy odor of smoke in the pod. Officer Colyer and I walked over to cell E 107. I noticed a strong odor of smoke coming from the crack of the door. I motioned for the control booth to open the cell. Once the door was open, I ordered the inmates in the cell to step out and sit at the tables.

Once the inmates were sitting at the table, I proceeded to search the cell while Officer Colyer watched the inmates. During the search, I located a red Bic lighter between a sheet and a mat on the top bunk. The inmate on the top bunk was identified as Paris Deshane Thomas.

After locating the lighter, I seized it as contraband and continued searching Thomas's property for more contraband. I located two white deodorant bottles with red caps on them on the shelf above the desk that Thomas was using to store his cell property. I shook them and noticed that they contained something hard by the rattling sound I heard. I seized the two deodorant bottles and finished my search of the cell.

Once out of the cell, I ordered Thomas to place his hands behind his back. I handcuffed Thomas and escorted him to Holding Cell 4 where I secured him without further incident. I then returned to the control booth where I proceeded to open the deodorant bottles to find out what the contents were.

I pried the roller ball out of one Deodorant bottle. I looked inside it and found that it was filled with numerous small balls of wrapped tobacco. I emptied the contents of the first deodorant bottle onto a piece of paper on the control booth desk. I found that the bottle contained 26 small balls of wrapped tobacco, and 7 small balls of rolling papers.

I then pried the roller ball out of the second deodorant bottle; I observed that it was filled with numerous small balls similar to the ones in the first bottle. I emptied the contents of the bottle onto a separate sheet of paper. The second bottle contained 34 small balls of wrapped tobacco.

EX. B

Cape Girardeau County Sheriff's Office
Jail Division Incident Report

At this point, I then took photographs to document the contraband. While I was documenting the contraband, Deputy Zach Snyder called to inform Captain Mulcahy that we had found a large amount of tobacco and a lighter in cell E 107. After that, Deputy Aaron Harris was advised of the situation. Deputy Harris responded to the jail to assist in the logging evidence and to begin a chain of custody. Once that was complete, Deputy Harris took custody of the evidence.

I have nothing further to report at this time.

Ex. B

# Cape Girardeau County Sheriff's Office
## Jail Division Incident Report

Kayla Littrell
I0513-073.347A
Contraband Found
Booking Area
May 23, 2013 @ approximately 2340
May 23, 2013 @ approximately 0000

 On Thursday, May 23, 2013 @ approximately 2250 Deputy Sides brought a female, Julia Nicole Linley, to be processed for a criminal warrant.

Julia Nicole Linley
Inmate # 20131330
SSN: 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
DOB: 07/24/1980

 During the booking process at approximately 2340 while documenting all of inmate Julia Linley's property I found a chap stick cap that had a cigarette bag rolled up inside of it, that was located in her purse. The cigarette bag had a small bag tied in a knot and small loose white in color rocks inside of it. After I got the bag out of the chap stick cap she asked me what I found, I showed the bag to her and she stated that is was not hers, that she didn't know what it was, and that her boyfriend had put it in her purse. After I finished documenting the rest of Julia Linley's property she was placed in holding one and I turned the contraband over to Deputy Sides.

This is all the information I have at this time.

EX. B

# Cape Girardeau County Sheriff's Office
## Jail Division Incident Report

C29 Wiseman
I0613-089.342
Contraband Found
Old Dorm
06/25/2013 @ 2331
06/26/2013 @ 0043

At approximately 2331, C21 Juergens, S55 Darland, and Myself (C29 Wiseman) went to the Old Dorm to conduct a search after smelling smoke on a block walk conducted just before the cell search. While searching I found a lighter glued under one of the picnic tables. The lighter was seized and placed in an evidence bag.
 I have nothing further to report.

C29 Wiseman

Ex. B

## Cape Girardeau County Sheriff's Office
### Jail Division Incident Report

Michael Walz
I0704-092.363
Contraband Found
Fpod Floor
July 4, 2013 @ approximately 8:00p.m.
July 4, 2013 @ approximately 9:40p.m.

At approximately 8:00p.m. Correction Officer Beard, Deputy Littrell, Holman, and I conducted a search for possible contraband in Fpod. During the search I looked through inmate Gross's stuff, located under the stairs on the left side, and found a clear bottle with six oval pink in color pills, and three circle pink in color pills. The items were seized and given to Captain Mulcahy; photos were also taken of the contraband.

Jewel Wayne Gross
Inmate #: 20120990
SSN: 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
DOB: 04/14/1946

This is all the information I have at this time.

Ex. B

# Cape Girardeau County Sheriff's Office
## Jail Division Incident Report

C29 Josh Wiseman
I07143.100.342
Contraband found
F pod
07/17/2013
07/17/2013 0023

At approximately 2130 Myself (C29 Wiseman), S65 Walz, S64 Holman, S59 Litrel went to search F pod. We were searching F pod because I had information of contraband being hidden in a mat belonging to inmate Park, Michael (DOB: 07/14/1982). When I searched inmate Parks mat I found a small lighter in a plastic bag. When questioned about the lighter inmate Park said that he had no idea about the lighter but did tell me about one other lighter in the pod. A follow up search was conducted but nothing was found. Inmate Park was placed in holding without further complications. I have nothing further to report.

C29 Wiseman

Ex. B

# Cape Girardeau County Sheriff's Office
## Jail Division Incident Report

Kayla Littrell
I0713-093.347
Contraband Found
A1 Cell 103, Upper Bunk
July 7, 2013 @ approximately 7:20p.m.
July 7, 2013 @ approximately 8:10p.m.

On Sunday, July 07, 2013 @ approximately 1930 while conducting a pod search for possible contraband I found a small plastic bag with 21 assorted pills, located in cell 103 on the upper bunk. Inmate Sites-Karraker is assigned to the upper bunk located in A1 cell 103.

Sites-Karraker, Theresa Kay
Inmate #: 20131575
SSN: 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
DOB: 08/06/1962

Contraband Found:
12 Tan in color pills that are chopped in half.
6 White in color pills that are chopped in half.
3 Pink in color pills.

All contraband was photographed and this is all the information I have at this time.

Ex. B

## Cape Girardeau County Sheriff's Office
### Jail Division Incident Report

Michael Walz
I0713-104.363
Found Contraband
B pod Cell 205
July 25, 2013 @ approximately 9:45p.m.
July 25, 2013 @ approximately 10:17p.m.

On July 25th 2013 at approximately 9:45p.m. Correctional Officers Mirly, Davis and I Deputy Walz went to B pod to remove Inmate Triplett and Wests belongings from their cell. While gathering their things I found a shampoo bottle filled with liquid and fruits floating at the top. The bottle was found on the far right corner of the nearest desk from the door. The desk appeared to belong to inmate Triplett based on letters and pictures addressed to him.

Triplett, Kwamae Tywon
Inmate #: 20122757
SSN: 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
DOB: 04/28/1992

Contraband Found:
1 Bottle of liquid with Floating Fruit and Bread at the bottom

All contraband was photographed and this is all the information I have at this time.

Ex. B

## Cape Girardeau County Sheriff's Office
### Jail Division Incident Report

S65 Walz
I0813-114.363
Contraband Found
F pod
08/29/2013 at approximately 0900
08/29/2013 at approximately 0943
573-204-2931
Easley, Joseph
(573) 576-3178
4853 ST. HWY 72
Jackson, MO 63755

On Wednesday August 28, 2013 at 5:30pm Correctional Officer Dockins received a call from a man stating that inmate Joseph Easley has been contacting his daughter from a cell phone while he was in jail. They then conducted a quick search of Fpod and nothing was found at that time.

On Thursday August 29, 2013 at 9:00am Lt. Stevens was notified by Nurse Charla that evening shift received a call from an anonymous person stating that inmate Easley was in possession of a cell phone in Fpod. We then called inmate Easley to the moat Deputy Darland patted him down and sat him to the side. Once he was contained Deputy Darland, Sgt Koehler, Lt Stevens and I pat down the rest of Fpod. We then detained them in the G&H hallway. After all inmates were removed from Fpod Deputy Seib brought Inmate Easley into Fpod to be strip searched. Deputy Seib instructed inmate Easley to strip down, once he removed all his cloths an object fell from his crotch area. The object was a grey in color Samsung flip phone the front screen was cracked before it was in our possession. Inmate Easley was then escorted to H-2. Charges will be filed for possession of contraband in a controlled facility.

Ex. B

# Cape Girardeau County Sheriff's Office
## Jail Division Incident Report

S57 Tina Henderson
I0913-115.194
Found Contraband
Med Exam
Saturday September 7, 2013
Saturday September 7, 2013 @ 2219
S57 Henderson
573-243-3551
216 N. Missouri St. Jackson, Mo. 63755

On Saturday September 7, 2013 while searching through the linens in the Med Exam cage I noticed a brown substance with a green leafy like substance inside of it lying in the box along with the uniforms. I then picked it up and asked C26 Brandon Gaulding to come and examine it with me. After examining it he placed it in a sealed bag, then after exiting booking I contacted Sgt. Koehler to notify him of my finding.

Ex. B

## Cape Girardeau County Sheriff's Office
### Jail Division Incident Report

I1013-130.194
Found contraband
Med Exam
Friday October 18, 2013 @ 1850
Friday October 18, 2013 @ 2202
S57 Tina Henderson

While conducting the search of inmate Priscilla Bowen before entering main block area I instructed Bowen to show me the following: bottoms of her feet, palms, behind her ears, stick out her tongue, lift her breast, and lift her abdomen. While lifting her abdomen there was a small white area in the middle I could see where she had not lifted yet. After seeing the white spot I instructed to her to hand me what ever it was. Bowen then grabbed the object from underneath her abdomen and handed it to me, it contained numerous blue pills labeled as Advil PM also with a clear crystal substance wrapped in clear baggy and taped with white tape. I then advised Bowen she could be charged with bringing those into the jail facility, she stated they were just to help her sleep. She was then advised to start her shower process. I then advised S56 Christopher Seib to get gloves and to come retrieve the substance from me. The substance was placed into a plastic evidence bag and contacted the on call supervisor Lt. Todd Stevens.

EX. B

## Cape Girardeau County Sheriff's Office
### Jail Division Incident Report

Kayla Littrell
I1013-134.347
Contraband Found
South Block
October, 22nd, 2013 @ approximately 8:00a.m.
October, 22nd, 2013 @ approximately 10:10a.m.

At approximately 0800 Deputy Coyler and I was conducting a shift change block walk, and during the head count I smelled something burning in south block. I told the females located in south block to hand over the lighter and that I would be back to collect it.

At approximately 0950 I return to south block to collect razors, on the table all razors and one purple in color lighter was sitting on the table.

This is all the information I have at this time.

EX. B

# Cape Girardeau County Sheriff's Office
## Jail Division Incident Report

S58 Phillip Colyer
I1013-140.356
Contraband
F Pod
10/29/13 @ 14:06
10/29/13 @ 15:20
(573) 204-2931
216 North Missouri ST
Jackson, MO 63755

---

On 10/29/13 at approximately 14:06, C23 Mirly and myself were passing out toilet paper and mail to F pod. When we entered F pod I smelt smoke, and I confirmed this with C23 Mirly. We continued to pass out toilet paper and mail to the rest of the jail.

At approximately 14:19 we went back into F pod through the fire door in G&H hallway. C23 Mirly held the fire door open and directed all of the inmates in F pod to line up at the door. We had the inmates exit through the fire door of F pod into G&H hallway one by one. I conducted a pat down search on each inmate as they exited the pod. Then we had the inmates of F pod remain in G&H hallway while we conducted a search of F pod.

While searching F pod C23 Mirly found 2 lighters in the handle of the pod's plunger. We continued to search all of the bunks, and confiscated all of the extra clothing and bedding in the inmates' bunks. F pod is to be lock down for the rest of today, and all of tomorrow per S63 Sgt. Gaulding. I have nothing further to report at this time.

EX. B

# Cape Girardeau County Sheriff's Office
## Jail Division Incident Report

C18 Brently Friedrich
I1113-151.362
contraband
C 106
11/09/2013 07:11 pm
11/09/2013 08:21 pm

I Corrections officer Brently Friedrich was conducting a cell search in C pod.
I Found Contraband in cell C pod 106 it was a small pink pill I noted it and put the pill on the nurse desk so she can observe it.
 I have nothing further at this time.

                                        C18 Friedrich

Ex. B

# Cape Girardeau County Sheriff's Office
## Jail Division Incident Report

C22 homer dillard
I1113-152.367
Contriband found
Cpod 106
11-9-13 1859
11-9-13 2035

I Corrections officer c22 Dillard was conducting a block search in cpod on November 9'2013.Apon searching cell C107 I discovered two white pills inside a napkin on the table.I made a note of it and placed the pills in the nurses station.

EX. B

# Cape Girardeau County Sheriff's Office
## Jail Division Incident Report

Kayla Littrell
I1213-177.347A
Contraband Found
Kitchen
December 15, 2013 @ approximately 1:10p.m.
December 15, 2013 @ approximately 4:25p.m.

At approximately 1250 kitchen Matron Debbie Kelley called up to the jail booth and informed me that she thought the inmates that work in the kitchen were hiding "stuff" and that they were smoking.

Kitchen Workers:

Levi Ross Elledge
Inmate #: 20130392
SSN: 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
DOB: 12/18/1978

Aaron Scott Laughlin
Inmate #: 20132519
SSN: 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
DOB: 02/23/1983

Jeremiah Eugene Dukes
Inmate #: 20132704
SSN: 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
DOB: 10/21/1984

Brett Michaels Dieffenbach
Inmate #: 20132814
SSN: 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
DOB: 11/08/1986

Robert Andrew Bailey
Inmate #: 20132612
SSN: 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
DOB: 01/23/1987

Correction Officer Mirly and I talked with Kitchen Matron Debbie Kelley and Doreen Stevens. Matron Doreen informed me that she saw inmate Levi Elledge reaching on top of the compressor in the refrigerator a few times and Matron Debbie stated that she over heard a couple of the kitchen workers talking about hiding the "stuff" and taking it back to the dorm.

Correction Officer Mirly and I searched the bathroom and the refrigerator, the following contraband was found in the refrigerator on top of the compressor:

1. 3 white in color cigarettes, with one gold in color band around them, and one gold in color eagle on each them.
2. 2 Grizzly cans labeled with Wintergreen Pouches across the cans.
3. 2 Skoal cans labeled with X-tra Wintergreen Pouches across the cans.
4. 1 gray in colored metal object

All five workers were patted down and sent back to the dorm, at approximately 1350 Inmates Levi Elledge, Jeremiah Dukes, Robert Bailey, Brett Dieffenbach, and Aaron

Ex. B

# Cape Girardeau County Sheriff's Office
## Jail Division Incident Report

Laughlin were brought up to the moat to speak with me. I told them that Sergeant Koehler would consider letting them keep their jobs in the kitchen if they told us where and/or whom they are getting the contraband from, all five inmates stated that they did not smoke or chew.

At approximately 1400 the five inmates were moved to the following pods: Levi Elledge to B203, Jeremiah Dukes to C107, Aaron Laughlin to D103, Brett Dieffenbach to F2-4L, and Robert Bailey to D205. At approximately 1432 inmate Dieffenbach informed me that he knows the Kitchen Matron Brigitte Duvall was the person supplying the contraband.

Photos were taken of the contraband and placed in Captain Mulcahy's mail boxed located outside his office door.

Ex. B

# Cape Girardeau County Sheriff's Office
## Jail Division Incident Report

S17 Kimberly D. Gaulding
I1213-178.316
Contraband turned in
Laundry Room
12/15/13 6:05PM
12/15/13 6:10PM
S17 Kimberly D. Gaulding
Michael Davis

---

At approximately 6:05 pm on December 15, 2013, inmate worker Michael Davis asked to speak with me and told me he had something to give me. I went into the laundry room and he retrieved an item from his pocket that appeared to be wrapped in toilet paper. He handed me the item and told me it was a lighter that was found in the Dorms where he is housed. I brought the item back to the control booth and confirmed that it was a small, light blue BIC lighter. I placed the lighter in an evidence bag and placed it in the mailbox of Lt. Stevens along with my report.

I have nothing further to report at this time. Anything further will be submitted in a supplemental report.

Respectfully,

Kimberly D. Gaulding
Sergeant

EX. B

## Cape Girardeau County Sheriff's Office
### Jail Division Incident Report

A. Cheney
1213-180.368A
Found Contraband
Booking
12/20/2013 @ approximately 7:45 P.M.
12/21/2013 @ approximately 6:20 P.M.
573-243-3551
216 N. Missouri St.

---

On Friday December 20th, 2013 I, Corrections Officer Cheney was processing in a new inmate identified as Zachariah Sutton. After completing the booking process with Sutton, I then escorted him to the med exam room to search his person for possible contraband and to dress him out in state issue uniform.

During the search process, Sutton asked me if he would be able to keep his white socks that he was wearing. I stated that it would be okay, only after I searched them to ensure there was no contraband in them. Sutton removed his right sock and handed it to me. I then searched the sock and found nothing. Sutton proceeded to remove the rest of his clothing. At that point, I asked him to remove his other sock. Sutton did so and handed it to me. Inside I found a lighter and approximately half a pack of cigarettes. I informed Sutton that the items were contraband and that they would be confiscated. Sutton complained stating "we were always taking his tobacco"

At this point I continued my search by instructing Sutton to face me and lift his arms so that I could check to see if he had anything taped underneath his arms. I then instructed Sutton to turn around with his back to me and squat and cough. When he did so, I observed no other contraband. After that, I instructed him to shower. After Sutton showered, he began to exit. At this point I heard a clanking noise as if something hard and small hit the floor. I looked down at the floor and observed a cell phone lying on the floor by Sutton. I confronted Sutton about the cell phone; Sutton then asked if I wanted that as well. I told him that I did need the phone; Sutton then picked up the phone and began pushing buttons on the phone as if he was trying to send a message. I ordered Sutton to give me the phone but he continued to ignore me. I ordered him again to give me the phone and he stated, "I'm turning it off". Sutton then gave me the phone. After retrieving the phone, Sutton began saying " your new, you can't do nothing, you don't even have a taser" I then ordered Sutton to get dressed out. He complied without further incident.

Once dressed out, I placed the cigarettes and lighter in the safe. I then placed his phone in with the rest of his property.

To ensure he had no further contraband, Sutton was placed in ISO.

I have nothing further to report.

A. Cheney

EX. B

## Cape Girardeau County Sheriff's Office
### Jail Division Incident Report

Kayla Littrell
I1213-184.347
Contraband Found
South Block
December 28th, 2013 @ approximately 4:30p.m.
December 28th, 2013 @ approximately 4:50p.m.

At approximately 1627 while conducting med pass to south block I smelled tobacco burning and told the females that the contraband needed to be placed on the table, located in the middle of the pod, by the time I come back down there.

At approximately 1630 I informed the females located in south block using the intercom system that I would be down there to collect the contraband in five minutes.

At approximately 1637 after I entered the pod I found the contraband folded up in a yellow piece of paper on the table.

Contraband that was found:
- 2 white in color, rolled cigarettes.
- 1 red in color, BIC lighter.

Photographs were taken of the contraband, placed in an evidence bag, and placed in Captain Mulcahy's mail box.

EX. B

## Cape Girardeau County Sheriff's Office
### Jail Division Incident Report

J. Bromley
I0714-046.273
Found Contraband
Old Dorm
07/26/2014 @ approximately 0003
07/26/2014 @ approximately 0518
573-243-3551
216 N. Missouri St. Jackson MO.


On Saturday July 26th, 2014 at approximately 0003. Deputy Meyer and I(Deputy Bromley) were heading down to south block to turn the water on so inmate Angela Thornton could flush the toilet before have the water shut back off. As We stepped inside from the Rec Yard,  we noticed the pungent smell of tobacco being burnt. We traced the smell to the old dorm.

As we entered the dorm, the smell became stronger. I informed the inmates that the contraband needed to be brought out and handed over, or the cells would be searched. Deputy Meyer went around the cells trying to narrow down the inmates responsible, but could not. No inmates came forward with any contraband.  After that, I called the control booth and requested more officers and some gloves to begin cell searches.

Officers Baliva. Eldridge and Cheney , who were finishing up a shift change block walk, responded to the Old Dorm to assist in the search for the contraband. Once there, all the inmates in the dorm were strip searched one at a time by me then sat down in the common area by Officer Eldridge  while officers Baliva Cheney and Meyer searched bunks and cell property for contraband. As the inmates were being strip searched, Officer Cheney discovered a lighter hidden underneath a mat on bunk 1-2 upper. Inmate Kristopher Blair immediately begin shouting out, "you got to be serious, you hid that underneath my mat" "I ain't going down for this"! I informed Blair to put his hands behind back. I cuffed Blair without further incident and escorted him up to holding two. As I was uncuffing Blair, he stated "I will tell you everything, the whole play by play, I don't even smoke. I won't go down for their bullshit!" I told Blair we would talk soon. I then secured Blair in holding two then went back to the old dorm to continue searching. At this point all but five inmates had been searched. Deputy Meyer, and Officer Baliva were finishing up the cell searches.

After the inmates were searched, we took the contraband out of the dorm, then secured the inmates back in. no tobacco was located, just a small green bic lighter.  After speaking with Blair, he wrote a voluntary statement as to who brought in the tobacco and lighter, and how it was brought in.

EX. B

## Cape Girardeau County Sheriff's Office
### Jail Division Incident Report

I0414-019.342
S60 Josh Wiseman
Contraband Found
Medical Exam
April 27th, 2014 @ 2045
April 27th, 2014 @ 2225


On April 27th, 2014, at approximately 8:45pm, I Deputy Josh Wiseman was in Medical Exam in the booking area dressing out an inmate. The Cape Girardeau Police Department brought Steven D. Clark to the Sheriff's Office in reference to an outstanding criminal arrest warrant through Cape Girardeau County.


As Steven Clark removed his clothes I noticed a blue colored object sticking out of the end of his genitalia. I asked Clark to remove the object and place it on the floor. The object appeared to be a numerous amount of pills encased in a piece of rubber. I asked Clark what was in the object, he stated that it was his Diabetic Medicine. I secured the object, placed Steven Clark into holding, and immediately took the object to my supervisor, Sgt. Kim Gaulding.


I returned to the booking area at Approximately 2200. I asked Steven Clark to exit the Holding cell and I read his Miranda Rights to him. I asked clark what the pills were, he said that he did not know and that he picked them up after someone dropped them. There were 25 pills unmarked pills white in color and 6 chips white in color. The pills were placed into evidence by Sgt. Gaulding and photos were taken.


S60 Josh Wiseman

Ex. B

# Cape Girardeau County Sheriff's Office
## Jail Division Incident Report

Ex. B

# Cape Girardeau County Sheriff's Office
## Jail Division Incident Report

S17 Sgt. Kimberly Gaulding
I0414-019.316B
Contraband Found
Medical Exam
Sunday, April 27, 2014 2045
Sunday, April 27, 2014 2327
S17 Sgt. Kimberly Gaulding

On Sunday, April 27, 2014 at approximately 8:50 PM Deputy Josh Wiseman contacted me, Sgt. Kimberly Gaulding, and told me that he had found contraband while searching a new inmate brought over from Cape Girardeau City Police Department. The inmate was identified as Steven D. Clark. Deputy Wiseman gave me a blue rubber item that appeared to contain numerous pills. At that time, I began taking pictures of the item as I searched it. I cut open the item to view its contents and found 25 pills that were white in color along with 6 chipped pieces of what appeared to be the same pills, also white in color. I then contacted Lt. Todd Stevens for further instruction. After speaking with Lt. Stevens, Deputy Wiseman went down to booking to question Mr. Clark after reading him his Miranda Rights. I put the pills and the rubber they were packaged in into an evidence bag that was then sealed. I have nothing further to report at this time. Any further information will be submitted in a supplemental report.

S17 Sgt. Kimberly Gaulding

EX. B

## Cape Girardeau County Sheriff's Office
### Jail Division Incident Report

I0314-012.320
Paraphanalia
Booking area
March 30, 2014 @ 2110
March 30, 2014 @ 2210
C22 Lana Koeppel
573-200-1550/573-204-9024

On March 30, 2014 at approximately 2110 I was in the booking area going through the property of a female inmate that Cape Girardeau City Police Department brought to our facility who was being held for safe keeping for multiple counties. The inmate I am refering to is:

**Trainor, Lisa Gayle**
**W/F**
**DOB: 03/13/1964**
**SS# 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**

As I was searching through **Trainor's** purse at approximately 09:15 PM I found a cylindrical metal pipe like item that was approximately 4 inches in length and it appeared to be burned at one end. I located this item in a small zippered pocket on the inside of the purse mixed in with makeup and sugar packets. Upon finding the item I set it on the desk and wrapped it in my latex gloves. Deputy Phillip Colyer was in the process of booking the female into our Global booking system.

At approximately 09:20 PM I exited the booking area with the item in my hand still wrapped in my gloves and went downstairs to our road division office and asked Corporal Justin Glastetter and Deputy Miranda Meyers to identify the item I had found. Deputy Miranda Meyers stated that it was drug paraphanalia most commonly used for smoking crack cocaine. She then pointed out that in the end of the pipe that was burnt had what appeared to be pieces of a Brillo pad in it. Corporal Glastetter then contacted Deputy Colyer in the booking area via phone and advised him to notify Captain Mulcahy of what I had found.

At approximately 09:26 PM I entered the jail booth area and spoke with Lieutenant Todd Stevens. When I advised him of what I had found he instructed me to place the item in an evidence bag, write up an incident report and strip search the female inmate to make sure there were no pieces of contraband on her person. After speaking with Lieutenant Stevens I returned to the road office and placed the item in a sealed evidence bag.

At approximately 09:40 PM I returned to the booking area where Deputy Colyer had placed her in a chair in front of the booking desk and stated to **Trainor;** "Miss Trainor, I believe you are aware of what I found in your purse." She responded "Yes ma'am I heard

EX. B

Cape Girardeau County Sheriff's Office
Jail Division Incident Report

the officer say something over the phone." I replied "Ok, I need you to tell me right now if I am going to find anything else on your person or in your property." She responded "No ma'am I do not have anything else on me I swear."

At 09:42 PM I escorted **Trainor** to the medexam room in the booking area where I had her strip her clothing off and proceeded to search her person to make sure there was no contraband. I then had her take a shower located in the med exam room. At approximately 09:51 PM I placed **Trainor** back into holding cell 2 and returned to the jail booth area.

Inmate **Trainor** and her propery were released at approximately 2208 to Officer Brady of Stoddard County which I advised what we had found and the actions we took.

I have nothing further to report at this time.

Ex. B

# Cape Girardeau County Sheriff's Office
## Jail Division Incident Report

Kayla Littrell
I1213-184.347
Contraband Found
South Block
December 28th, 2013 @ approximately 4:30p.m.
December 28th, 2013 @ approximately 4:50p.m.

At approximately 1627 while conducting med pass to south block I smelled tobacco burning and told the females that the contraband needed to be placed on the table, located in the middle of the pod, by the time I come back down there.

At approximately 1630 I informed the females located in south block using the intercom system that I would be down there to collect the contraband in five minutes.

At approximately 1637 after I entered the pod I found the contraband folded up in a yellow piece of paper on the table.

Contraband that was found:
- 2 white in color, rolled cigarettes.
- 1 red in color, BIC lighter.

Photographs were taken of the contraband, placed in an evidence bag, and placed in Captain Mulcahy's mail box.

EX. B



PLAINTIFF'S
EXHIBIT
5
JC 12-15-14

I.    POLICY

The Detention Center shall implement and maintain rules, regulations and procedures pertinent to the efficient handling of incoming and outgoing detainee mail.

To expand the safety and security of the Cape Girardeau County Detention Center for inmates and Staff, all non-privileged correspondence entering the facility **must be Postcards.**

    a. All postcards must be standard white postcards, no index cards or photographs.

    b.  Postcards must be no larger then 5" X 7".

    c. Postcards will have their stamps removed and discarded prior to delivery to the inmate.

    d.  Postcards must be addressed with the return address clearly readable.

    e. There will be no limit on how many postcards Inmates can receive but inmates will be limited on how many can be kept in their cell.

    f.  Unacceptable postcards will be returned to sender

        1) Defaced or altered postcards are unacceptable

        2) No plastic/wrappings on postcards.

        3) No labels or stickers will be accepted

        4) No postcards with watermarks or stains

        5) No postcards with biohazards, including lipsticks or perfumes

        6) No postcards depicting nudity, weapons, alcohol or gang references

II    OUTGOING INMATE MAIL

The outgoing mail format will remain unchanged. Inmates are allowed to send letters or postcards in mail leaving the facility. Detainees may purchase paper, pens and stamped envelopes from the Commissary.  There is no limit restricting the amount of letters the Inmate may send out.

III    PROCEDURES

    a. General Rules and Regulations

        1) General correspondence, such as between the detainee and their families and friends or other persons shall be permitted. All incoming mail will be on plain white postcards, no larger then 5"X7". No photographs, cash, money orders or other personal items will be accepted through incoming mail.

Ex. B

a. Any mail not adhering to this rule will be returned to sender.

b. exceptions to this rule will be legal and religious mail.

2) There is no limitation on the volume of mail a detainee may send or receive or the length, language content, or source of mail, except the limit on how many postcards inmates may keep in their cell which is ten (10). Any further limitations will be taken only where there is clear evidence to justify limitations reasons of public safety, or facility order and security.

3) Correspondence between detainees in the Detention Center is prohibited. Correspondence with detainees in Juvenile Detention is prohibited.

4) Incoming mail/postcards will be monitored to ascertain any attempt of escape, security violations, or conspiracy to introduce contraband. Incoming mail/postcards will be inspected to intercept cash, checks, money orders, or other contraband. Outgoing mail will not be interfered with, except to inspect it there is probable cause to believe that:

a. The mail contains threats of physical harm against other persons

b. The mail contains a threat of criminal activity

c. The mail threatens blackmail or extortion.

d. The mail contains plans to escape

e. Mail contains information, which, if communicated, would create a clear and present danger of violence and physical harm to a human being.

5) Should any of the aforementioned information be found, the mail/postcard shall be investigated for possible additional charges by the Prosecutor Attorney's Office. In each case, the detainee shall be given written notice of the reasons the correspondence is being denied. Copies of such documentation will be placed in the detainee's file.

6) **Official Mail**, which includes, but not limited to, mail from Attorneys, the courts, Officials of the confining authority, state and local chief executive officers, public officials, local, state and federal government correspondence, shall be sent out without being opened and inspected unless there is compelling evidence of prohibited acts listed in subsection III-a-4.Incoming privileged mail will be only inspected for possible contraband but not read, in the presence of the receiving inmate. **To be classified as privileged mail the return address on incoming mail, or on outgoing mail, must clearly identify the authority as a qualified correspondent for privileged mail.**

7) There will be no approved lists of correspondence. There will be no limit on how many postcards inmates can receive but are limited on how many they may keep. The maximum is ten (10) postcards at anyone time inside of the cell.

Ex. B

8) No photographs will be accepted through the mail. Unless approved by Jail Administer or the Assistant Jail Administer.

Ex. B

# NOTICE

# MAIL PROCEDURES

## <u>EFFECTIVE 01/01/2014</u>

To expand the safety and security of the Cape Girardeau County Detention Center for inmates and Staff, the following changes are being implemented to the way in which this facility will handle inmate mail.

All non-privileged correspondence <u>entering</u> the Jail Facility must be post cards

a) All postcards must be standard white postcards, no index cards or photographs.

b) Postcards must be no larger then 5" X 7".

c) Postcards will have their stamps removed and discarded prior to delivery to the inmate.

d) Postcards must be addressed with the return address clearly readable.

e) There will be no limit on how many postcards inmates can receive but inmates will be limited to ten postcards in their cell at any one time.

f) Unacceptable postcards will be returned to sender

1) Defaced or altered postcards are unacceptable

2) No plastic/wrappings on postcards.

3) No labels or stickers will be accepted

4) No postcards with watermarks or stains

5) No postcards with bio-hazards, including lipsticks or perfumes

6) No postcards depicting nudity, weapons, alcohol or gang references



**PLAINTIFF'S EXHIBIT**

6

JC    12-15-14

Ex. B

**The format for out going mail will not change.** Inmates are allowed to send out letters or postcards in mail leaving the Facility. Detainees may purchase paper, pens and stamped envelopes from the Facilities Commissary. There is no limit restricting the amount of letters the inmate may send out.

# NOTICE

## NEW E-MAIL MAIL OPTION

## EFFECTIVE 03/015/2014

## E-MAIL PROCEDURES

The Cape Girardeau County Jail now operates an E-mail program for inmates that would like to utilize this service. This service only allows for incoming E-mails to inmates, no outgoing E-mails will be allowed.

**The rules for this service are as follows:**

-The inmate E-mail address
is **inmatesmail@capecountysheriff.org**

**MUST PUT INMATES NAME IN THE SUBJECT LINE**

-In-coming E-mails are to be limited to 500 words or less.

-The cost of receiving each E-mail is thirty-five cents per E-mail.

TLF000013

Ex. B

-Photographs may also be E-mailed into our Facility at a cost of fifty cents per photograph. All Photographs received will be printed out in black and white.

-Photographs depicting nudity, weapons, alcohol or gang references will not be allowed (If a photograph is questionable then a supervisor will make the final determination if the inmate will receive the photograph).

-An Inmate may only possess ten photographs in their cell at one time.

-An Inmate must have money in their commissary account to pay for the E-Mails and photographs before he/she receives the items.

-This service is a privilege and can be changed at any time.

TLF000014

Ex. B

SECTION 3 PAGE 3

3.10    INMATE DRESS CODE
ALL INMATES WILL DRESS IN COMPLETE UNIFORMS ISSUED BY THIS FACILITY. Inmates will not be allowed out of cell into the day room until they have their uniform on and their cell living area is clean. Any time an inmate is out of the cell/living area he/she must be in their facility issued uniform.

3.11    SMOKING
As of January 15, 1996, the Cape Girardeau County Adult Detention Facility is a SMOKE FREE FACILITY. The use of any type of tobacco product is prohibited. All tobacco products are contraband.

3.12    DAY ROOM USE
All inmates are responsible for the overall cleanliness of the Day Room Area.    Inmates are also responsible for disposing of their own litter and garbage. Liquid spills and/or other substances on floors must be cleaned up.
NOTE: THERE WILL BE ABSOLUTELY NO SLEEPING IN THE DAY ROOM AREAS!

3.13    TELEVISIONS: Will be turned on normally at 06:00 daily.
Televisions will normally be turned off at 10:00 P. M.. Lights out will also be at 10:00 P. M. Any extension on the times above will be submitted through the chain of command by the Shift Supervisor. Inmate arguments over the T.V. will result in loss of T.V. privileges for the entire housing module.

3.14    INMATE FOOD SERVICE
Inmates will be served three wholesome and nutritious meals per day which have been prepared at this facility. Modified diets will be provided to individual inmates when ordered and approved by the medial unit supervisor. Failure to return a food tray after each meal will be considered in direct violation of the facility rules and could result in loss of privileges and criminal prosecution.

3.15    MAIL
A. No restrictions on the amount of mail sent, received or the number of correspondents.

B. All outgoing mail must have your name and return address on the envelope. All outgoing mail may not be sealed, excluding Legal mail. All outgoing legal mail MUST HAVE the words LEGAL MAIL clearly PRINTED on the outside front of the envelope TO THE LEFT OF THE ADDRESS. Legal mail is described as mail being sent to attorneys, judges, courts, elected state officials, probation officers, and detention staff.

C. Incoming letters from the above listed will be delivered unopened based upon the return address. In some cases, this correspondence may be opened in your presence, checked for contraband and handed to you. In no case, will any detention officer read this mail.

D. Items received through the U. S. MAIL, that are available through the commissary will be refused and returned to the sender. Hardbound books are not allowed and will not be received. They will be returned to the sender.
E. Indigent Inmates: When requesting stamps, your letter will be given to Canteen who will place the necessary postage on it and see that it is mailed.



PLAINTIFF'S EXHIBIT
7
JC 12-15-14

Ex. B

# INMATE MAIL FORMAT CHANGE PROPOSAL

October 4, 2013

Lt. T.C. Stevens
Jail Division
Cape Girardeau County Sheriffs Office
216 N. Missouri
Jackson MO. 63755

I am proposing a change in the way our facility allows inmates to receive mail.
Numerous Sheriffs Offices around the country have been implementing a post card only mail policy. This policy only allows post cards to be mailed into a jail facility; with the exception of privileged mail (i.e., legal and religious mail).

The policy change I am requesting would only allow non-privileged correspondence with inmates be written on post cards no larger then 5" x 7". The mail format would not change for inmates sending mail out of the facility. Inmates will still be allowed to purchase paper, envelopes and pens from our Commissary (see copy of proposed policy)

Implementing such a policy has the advantages of:
- A higher level of safety and security of the jail facility
- Possibly less mail coming into the facility
- Less contraband introduced into the facility
- Less manpower spent opening and searching mail
- The Jail is also relieved of the liability of missing property that is mailed into the facility and cannot be given to the inmate.

A few disadvantages are associated with this policy such as:
- Complaints from the inmates and families
- Most postcards are thick and could be used for picking locks and making other forms of contraband.

One of the other possible disadvantages is with the ACLU threatening to bring lawsuits against some of the Facilities using this policy. At this time Doug Bonney, the legal director for the ACLU of Kansas and Western Missouri filed a lawsuit against Wyandotte County Kansas over the Policy. I spoke with Jeffrey Fewell, Jail Warden of the Wyandotte County Sheriffs Office about the ongoing suit. He stated that their policy is compliant with current federal case law and is approved by the National Sheriffs Association. Warden Fewell went on to say that these issues were already upheld in the US Supreme Court (Turner v. Safley). He ended saying that the suit only asks for the policy to be changed and to pay for legal expenses, but he believes they will win the case.

An article by the Salem Oregon Statesmen wrote that when the Phoenix Arizona Sheriffs Office first implemented the policy they were sued. However, a Federal District Court ruled in favor of the jails policy and found there was no infringement on communication.


PLAINTIFF'S EXHIBIT
8
JC 12-15-14B

Another Article by the Kansas City Star quoted Doug Bonney saying at least two counties each in Missouri and Kansas have dumped post-card only mail policies when faced with potential litigation. He also said that last year an Oregon federal judge blocked a Columbia County Jail from enforcing its 2-year-old postcard-only policy, saying it violated the prisoners' free-speech rights, according to the First Amendment Center at Vanderbilt University.

The Correction Law Reporter wrote that there have been five legal skirmishes so far in 2013. One found the rule unconstitutional, four others upheld the rule. The County policy that was found to be unconstitutional was the Columbia Oregon Sheriffs office. It turns out that the Federal Judge issued an injunction on the policy until the trial was completed. It is believed that the complete trial will uphold the post-card only policy on current case law.

Several Missouri Sheriffs Offices have already instituted this policy and have had no issue. Henry County Sheriffs Office has used the policy since 2009 and Jasper County Sheriffs Office has had it since 2010. This policy was also instituted by Maricopa County in Arizona in 2007 along with numerous other Offices around the Country.

TLF000008

Ex. B

I.    POLICY

The Detention Center shall implement and maintain rules, regulations and procedures pertinent to the efficient handling of incoming and outgoing detainee mail.

To expand the safety and security of the Cape Girardeau County Detention Center for inmates and Staff, all non-privileged correspondence entering the facility **must be Postcards.**

   a. All postcards must be standard white postcards, no index cards or photographs.

   b.  Postcards must be no larger then 5" X 7".

   c. Postcards will have their stamps removed and discarded prior to delivery to the inmate.

   d.  Postcards must be addressed with the return address clearly readable.

   e. There will be no limit on how many postcards inmates can receive but inmates will be limited on how many can be kept in their cell.

   f.  Unacceptable postcards will be returned to sender

      1) Defaced or altered postcards are unacceptable

      2) No plastic/wrappings on postcards.

      3) No labels or stickers will be accepted

      4) No postcards with watermarks or stains

      5) No postcards with biohazards, including lipsticks or perfumes

      6) No postcards depicting nudity, weapons, alcohol or gang references

II    OUTGOING INMATE MAIL

The outgoing mail format will remain unchanged. Inmates are allowed to send letters or postcards in mail leaving the facility. Detainees may purchase paper, pens and stamped envelopes from the Commissary.  There is no limit restricting the amount of letters the inmate may send out.

III    PROCEDURES

   a. General Rules and Regulations

      1) General correspondence, such as between the detainee and their families and friends or other persons shall be permitted. All incoming mail will be on plain white postcards, no larger then 5"X7". No photographs, cash, money orders or other personal items will be accepted through incoming mail.

TLF000009

Ex. B

    a.  Any mail not adhering to this rule will be returned to sender.

    b. exceptions to this rule will be legal and religious mail.

2) There is no limitation on the volume of mail a detainee may send or receive or the length, language content, or source of mail, except the limit on how many postcards inmates may keep in their cell which is ten (10). Any further limitations will be taken only where there is clear evidence to justify limitations reasons of public safety, or facility order and security.

3) Correspondence between detainees in the Detention Center is prohibited. Correspondence with detainees in Juvenile Detention is prohibited.

4) Incoming mail/postcards will be monitored to ascertain any attempt of escape, security violations, or conspiracy to introduce contraband. Incoming mail/postcards will be inspected to intercept cash, checks, money orders, or other contraband. Outgoing mail will not be interfered with, except to inspect it there is probable cause to believe that:

    a.  The mail contains threats of physical harm against other persons

    b.  The mail contains a threat of criminal activity

    c.  The mail threatens blackmail or extortion.

    d.  The mail contains plans to escape

    e.  Mail contains information, which, if communicated, would create a clear and present danger of violence and physical harm to a human being.

5) Should any of the aforementioned information be found, the mail/postcard shall be investigated for possible additional charges by the Prosecutor Attorney's Office. In each case, the detainee shall be given written notice of the reasons the correspondence is being denied. Copies of such documentation will be placed in the detainee's file.

6) **Official Mail**, which includes, but not limited to, mail from Attorneys, the courts, Officials of the confining authority, state and local chief executive officers, public officials, local, state and federal government correspondence, shall be sent out without being opened and inspected unless there is compelling evidence of prohibited acts listed in subsection III-a-4. Incoming privileged mail will be only inspected for possible contraband but not read, in the presence of the receiving inmate. **To be classified as privileged mail the return address on incoming mail, or on outgoing mail, must clearly identify the authority as a qualified correspondent for privileged mail.**

7) There will be no approved lists of correspondence. There will be no limit on how many postcards inmates can receive but are limited on how many they may keep. The maximum is ten (10) postcards at anyone time inside of the cell.

TLF000010

Ex. B

8) No photographs will be accepted through the mail. Unless approved by Jail Administer or the Assistant Jail Administer.

TLF000011

Ex. B

# CAPE GIRARDEAU COUNTY JAIL
# INMATE RULES HANDBOOK

**EMERGENCY EVACUATION PLAN:**

Our Fire detection plan is one of the best designed for a detention facility. However should the alarm sound, you should wait for direction from one of the control room officers. Officers may be in the process of evacuating a housing unit closer to the emergency than the one you are presently housed in, do not panic, remain calm and cooperate with all instructions.

1. In case of fire, smoke or other emergency, notify the control room officer immediately.
2. Only one person should speak, as more than one person speaking at the same time causes the sound to be distorted, making it difficult to understand the nature of the problem.
3. While waiting for the officer to evacuate from your housing area, get down on your hands and knees to remove yourself from smoke or other dangerous fumes that may be caused by the fire, smoke or other emergency.
4. When the officer opens the door, exit the housing unit single file so the officer can complete a count to ensure all residents are evacuated and no one is missing or still inside the housing unit.
5. The officer will escort you to another area where medical personnel will check you out as soon as practical.
6. Once you arrive at the evacuation area you will be asked to sit single file against a wall in order that a recount of names can be completed in order to ensure that all in danger have been evacuated.

Your cooperation with this procedure may save your life as well as others within this facility.

**INMATE RESPONSIBILITIES:**

1. All orders, directives and instructions from a staff member SHALL BE OBEYED! NO QUESTIONS ASKED.
2. All officers or deputies shall be addressed as "C.O.", "Deputy", "Sir", "Ma'am", "Mr.", "Ms." or "Mrs.".
3. Each inmate is responsible for maintaining appropriate personal hygiene. Inmates are also responsible for keeping their assigned living quarters and common areas clean and in good order.
4. All vents must remain uncovered in order to maintain proper air circulation throughout the facility.
5. All surfaces must remain free of signs, pictures and other items. Writing on or defacing the walls, doors, furniture and other facility property will not be tolerated.
6. Tampering with any locking device, life support or fire control system or device is not permitted.
7. Cleaning materials will be supplied daily to clean mattresses and cell areas. Blankets will be exchanged for clean blankets on a weekly basis.
8. Each inmate will wear appropriate clothing at all times.
   A. The issued jumpsuit or pant/shirt uniform will be worn at all times when you are outside your cell. This includes the issued armband.
   B. Inmate clothing will be washed or exchanged at regular intervals. The clothing will not be marked on in any way. See schedule.
   C. Inmate clothing will be worn in the appropriate way. (i.e. Shirts and pants will NOT be worn inside out or backwards, NOTHING will be worn on head or neck, and pants will NOT sag.)

**DAMAGE TO COUNTY PROPERTY WILL RESULT IN A LOSS OF PRIVILEGES AND THE FILING OF FELONEY CHARGES AGAINST YOU.** All laws and statutes of the state of Missouri shall apply. Damage also applies to another person's property.

9. Each inmate shall behave in a manner so as not to disrupt the order of the facility. Fighting, group disturbances, loud and obscene language or demonstrations will result in disciplinary action. Inmates will not lean, sit or exercise on the railings of the stairway.


PLAINTIFF'S EXHIBIT 9  12-15-14  Ex. B

stairway or the second floor. Inmates will only be on the stairways or balcony for the purpose of entering or exiting their cells. Inmates will not run in the cell area. Inmates will not swing or climb on any of the furnishings in the day area. Inmates will not congregate or sleep on the balcony.

10. Inmates will be allowed to have the following items.
    a.    3 pair white socks
    b.    3 pair white brief/boxer briefs underwear
    c.    A bible or Koran or any other religious materials.
    d.    10-3 x 5 photographs. No Polaroid's.
    e.    Legal Mail and Personal Mail
          *Effective March 19th, 2007, Packages of Socks and Underwear will no longer be accepted at the Sheriff Department, except for Female Inmates.*

11. No tobacco products, matches or lighters of any kind will be allowed inside the jail facility.
12. No tape recorders, tape players, headsets, earphones or clocks will be allowed inside the facility.
13. Inmates will not use the intercom to ask for the time of day.
14. Inmates will not loiter around the windows or door area.
15. When daily counts occur, the inmates will follow the directives from the staff conducting the count and remain there until the count is completed or until instructed otherwise by the staff.

CONTRABAND is defined as any item or articles, which is not issued by a facility staff member, medically prescribed or purchased from the commissary. Issued items will be considered contraband when they are altered or found in excessive quantities. This would include but not limited to the trading, sharing and or loaning of personal possessions by inmates of this facility.

ADMINISTRATIVE ACTION
For the safety and security of all inmates, visitors and staff, you will be required to comply with all rules and regulations, applicable laws and staff directives. Violations may result in administrative actions, criminal prosecution, civil prosecution or combinations thereof.

Major violations will enact administrative actions up to 30 days administrative segregation housing and loss of privileges per violation.
1.   Murder
2.   Taking and or holding hostages.
3.   Assaulting any person
4.   Fighting
5.   Threatening any county employee
6.   Threatening another person with bodily harm
7.   Engaging in sexual acts with another
8.   Making sexual threats or proposals
9.   Extortion or black mail
10.  Escaping, attempting to, planning to, or aiding in an escape.
11.  Arson
12.  Property damage in excess of $50.00
13.  Stealing
14.  Tampering with locking devices
15.  Possession of explosive materials, ammunition, weapons, firearms, knives, edged weapons or unauthorized tools
16.  Possession/Use of any narcotics/medications not issued by the medical staff
17.  Possession of any needles or syringes
18.  Possession of any smoking materials
19.  Creating a disturbance in a housing unit requiring the removal of the accused individual(s) to restore order to the area
21.  Rioting or encouraging others to riot
22.  Giving or offering any official or employee a bribe
23.  Throwing any substance or object at or on any employee.
24.  Refusing to obey an order from any staff member concerning security procedures
25.  Interfering with count
26.  Spitting at or on any employee
27.  Making any intoxicants or alkaloids

Minor Violations will enact administrative actions up to 15 days administrative segregation housing and or loss of privileges per violation.

TLF000002

Ex. B

Upon review by the administrative staff, further administrative sanctions may be taken. Prohibited activity shall include but not be limited to the following acts, whether completed or attempted.

1. Refusing to wear identification wristband
2. Refusing to return to or go to an assigned area
3. Being in an unauthorized area
4. Defacing living areas, windows, doors or any county property
5. Indecent exposure
6. Wearing a disguise or mask
7. Adulteration of any food or drink
8. Misuse of authorized medication
9. Possession of any property belonging to another
10. Malingering or feigning any illness
11. Failure to follow safety or sanitation operations
12. Misuse or abuse of any county property
13. Unauthorized use of mail or the telephone
14. Unauthorized contact with the general public
15. Unauthorized taking of extra food
16. Unauthorized food in cell areas
17. Possession of any money or currency
18. Possession of any unauthorized clothing
19. Lying or providing a false statement to a staff member
20. Possession of any gambling materials
21. Tattooing or self-mutilation
22. Property damage in value of less than $50.00
23. Disobeying an order from a staff member not pertaining to security measures
24. Creating a disturbance in a housing area in which order is restored without the removal of the accused individual(s) from the area.
25. Violation of visitation rules
26. Possession of contraband other than weapons, drugs or destructive materials
27. Tapping or banging on windows.
28. Misuse of intercom
29. Not in complete county uniform when required
30. Bed not made when not in use
31. Posting, fastening, pasting, sticking or hanging items on walls, windows, ceiling, light fixtures, railings, etc.
32. Congregating, loitering, hanging or climbing on walkways, tiers or railings
33. Obstructing, altering or tampering with the vents, windows, window seals or other fixtures
34. Obstructing, altering or tampering with the T.V., cable or electrical cords or plugs

Attempting to commit any of the above offenses or aiding another person to commit any of the above offenses, and/or making plans to commit any of the above offenses, shall be considered the same as a commission of the crime itself.

Inmate Request forms
1. A Request form is to be use when requesting items needed or information needed.
   A. Example of items needed would be a replacement uniform or hygiene pack.
   B. Example of information needed would be you're out date or you're next court date.
The jail staff will answer all request forms as soon as they are received and time allows.

Inmate Grievance & Administrative Procedures
1. An inmate who feels him/herself to be the subject of improper treatment or to have been improperly denied some privilege or service may submit his/her grievance in writing on the GRIEVANCE form to a staff member.
2. The Sergeant and/or the Lieutenant shall investigate the allegations of the grievance and shall make a preliminary response to the inmate.
3. An inmate who wishes to appeal the decision of the staff member may submit a Grievance form to Captain within 72 hours of receiving the decision from the staff member. The Jail Administrator will provide a response within 7 days to the inmate thereafter. The Jail Administrator will be final authority in the grievance process.
4. A Grievance will also need to be filled out when a request form was not answered.
All Grievances are reviewed by the Lieutenant and may be passed on to the Captain depending on the nature of the Grievance.

Ex. B

**Officer Complaint forms**
1. Officer Complaint forms are provided if you have a complaint against an officer. You simply ask for an officer compliant form during head count. All officer complaint forms come with a envelop for your to seal the complain form in and the envelop is preaddressed to Captain Ruthann Dickerson.

The inmates Request forms, Inmate Grievance forms and Officer Compliant forms are handed out during head count. You simply ask for the form and you will receive the needed form.

Improper use of these forms will result in a slower response time. If for example a request is put on an Inmate Grievance form the form will be returned to you to be placed on an inmate request form.

**General Provisions**
1. Upon incarceration, a medical questionnaire will be completed on each inmate. The medical coordinator will review this initial screening within 14 days. Those inmates who require a medical examination will have appointments set by the medical staff. All medication on a person or needing to be filled will be evaluated immediately to ensure consistent medical care. Any special dietary requests or allergies must be confirmed and ordered by the medical staff. Any religious dietary changes will be honored on the condition that a bona fide church or religious organization can verify them.
2. A telephone will be available upon completion of the booking process, unless restricted for administrative reasons. ALL CALLS ARE COLLECT. DO NOT ASK THE STAFF TO USE THE EMPLOYEES PHONE. THERE IS NO SUCH THING AS A FREE PHONE CALL!
3. If no administrative actions or violations of the rules and regulations have occurred; inmates will be permitted use of the day room phone. Phones will be available after the morning meal until lockdown (excluding meal times).
4. Basic hygienic items and clothing will be provided.
5. The laundry worker will pick up laundry as per the posted laundry schedule.
6. Showers will be restricted to 5:00 am to 6:00 am each morning, Monday thru Saturday. No showers will be offered on Sundays. Administrative segregation inmates will receive showers during their recreation time.
7. Inmates will attend only one activity at any given time. An inmate will not be called out of one activity to attend another except for legal matters.
8. At lock down, all lights (except night-lights) and televisions will be turned off.
9. Inmates will be housed or moved to any unit or facility deemed necessary by the detention staff.
10. Commissary is available for inmates to purchase. Commissary will be offered once a week. Commissary will not be traded between inmates. Basic hygiene items will be given to those inmates determined to be indigent. Care packages are available upon request. A $2 charge will be charged to your account for each care pack.
11. Upon release from the facility, all personal property will be released to you. The jail facility and or the Sheriff's Office will not be responsible for lost property. Neither money nor property will be left or transferred to another inmate.

**VISITATION:** Only one visit per visitation day. Immediate family only (i.e. mother, father, grandmother, grandfather, sister, brother, wife, husband, son or daughter) no second-generation family will be allowed in (i.e. Aunts, uncles, cousins, in-laws)
1. No children under the age of 16 years old are allowed to be inside the facility.
2. Visitors are required to present one of the following photographic identification formats, Valid State Issued operator license or I.D. card, U.S. Government passport or a U.S. government issued I.D. card. If last names are different, proof of relationship will be required; birth certificate or marriage license will have to be seen along with proper I.D.
3. For immediate family members who live in excess of 120 miles from Jackson, Missouri, the inmate may request prior arrangements for this visit. The request must be approved in advance and shall not interfere with the operation of the facility.
4. Visitation will be terminated when deemed necessary for the safety and security of the facility, inmates, visitors and staff or for violation of rules and regulations.

**LAW LIBRARY**
1. A law library is available for use on a verbal request basis. No items will be removed from the law library. Damages to items will be charged to the inmates account. Photocopies

TLF000004

Ex. B

will be made available to the inmates at a rate of .15 cents per copy for pro se motions only. Copies have to be pre-approved by the shift supervisor.
2. No more than one inmate will be allowed the use of the law library at any given time. Law books shall not enter any blocks.

HEALTH CARE
1. An inmate who believes he/she requires medical attention may submit a Medical Request Form to the medical staff.
2. Health care personnel will be available to consult with inmates when deemed necessary.
3. Emergency medical treatment will be provided if the circumstances require such treatment.
4. Medication will be provided to the inmates as prescribed by the medical staff.

GENERAL DAY BY DAY SCHEDULE FOR INMATES (SUBJECT TO CHANGE)
1. 12:00 Midnight to 5:00 A.M.    Inmates locked down, lights out.
2. 5:00 A.M. to 6:00 A.M.        Showers, razors for designated pods (No showers on Sundays)
3. 6:00 A.M. to 7:30 A.M.        Personal hygiene and breakfast, armbands will be presented. Failure to present them and failure to be present will result in disciplinary action.
4. 7:30 A.M. to 8:00 A.M.        Inmates locked down, trays collected, headcount.
5. 8:00 A.M.                     Medications dispensed.
6. 8:00 A.M. to 11:00 A.M.       During warm days, weather permitting outside recreation. When outside recreation is over, inmate will be out of their cells to use telephones, watch television, etc. Cleaning supplies may be issued at this time to clean out cells and the dayrooms. When no outdoor recreation is conducted, inmates will be let out of cells no later than 9:00 A.M.
7. 11:00 A.M. to 12:00 noon      Cleaning supplies will be collected
8. 12:00 noon to 1:00 P.M.       Lunch, armbands will be presented. Failure to present them and failure to be present will result in disciplinary action.
9. 1:00 P.M.                     Inmates locked down, trays from meal collected
10. 1:00 P.M. to 4:00 P.M.       Inmates locked down
11. 4:00 P.M.                    Headcount
12. 5:00 P.M. to 6:00 P.M.       Medications dispensed. Dinner served, armbands will be presented. Failure to present them and failure to be present will result in disciplinary action.
13. 6:00 P.M.                    Trays collected
14. 6:00 P.M. to 10:00 P.M.  -   Inmates out of cells to use phones, watch television, etc.
15. 10:00 P.M.                   Inmates are locked down, lights out. Television, phones turned off. Cleaning supplies issued to clean dayrooms only.

Extra Activities During The Week

1. Tuesdays: Church services provided during the evening. (Christian in nature.)
2. Thursdays: Commissary passed out
3. Saturdays: Visitation. See the rules governing visitation.
4. Sundays: Church service provided in the afternoon. (Christian in nature.)

| Privileges | Rights |
|---|---|
| 1. Telephone | 1. Shelter |
| 2. Television | 2. Bed & Bedding |
| 3. Commissary | 3. Clothing |
| 4. Furlough | 4. Due Process |
| 5. More than 1 hour out of cells | 5. Legal Council |
| 6. Trustee status | 6. Medical Care |
| 7. Regular visits | 7. Prescription Medications (If authorized by doctor) |
| | 8. Adult Food Requirements |
| 8. Special Visits | 9. Grievance |
| 9. Work Release | 10. Fair & Lawful Treatment |
| 10. Good Time | 11. Federal & Missouri State Laws |

TLF000005

Ex. B