UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION

| | |
|---|---|
| CHERYL SIMPSON, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 1:14-CV-13 (CEJ) |
| | ) |
| COUNTY OF CAPE GIRARDEAU, MISSOURI, | ) ) |
| | ) |
| Defendant. | ) |

**MEMORANDUM AND ORDER**

This matter is before the Court on the parties' cross-motions for summary judgment. All issues are fully briefed.

On January 1, 2014, the Cape Girardeau County jail imposed a "postcard only" policy for nonprivileged correspondence mailed to its inmates. Plaintiff Cheryl Simpson alleges that the policy impermissibly restricts the ability of outside correspondents to communicate with inmates, in violation of the First and Fourteenth Amendments. She brings this action pursuant to 42 U.S.C. § 1983, seeking declaratory and injunctive relief against defendant Cape Girardeau County.

### I. Background

Plaintiff's son was an inmate at the Cape Girardeau County jail from August 2013 to February 2014. Plaintiff regularly corresponded with her son during his incarceration. *Declaration of Cheryl Simpson at ¶¶4-5*.

Before January 2014, the jail did not limit the number of letters an inmate could receive, and excluded only hardbound books and items that were available to inmates through the commissary. See *Pl. Ex. 7* [Doc. #33-2 at 241]. In October

2013, Lieutenant Todd Stevens proposed changing the policy regarding incoming mail to limit nonprivileged correspondence to postcards. *Deposition of Todd Stevens at 27*. He identified the following benefits of such a policy: (1) "a higher level of safety and security" at the jail; (2) "possibly less mail coming into the facility;" (3) "less contraband introduced" into the jail; (4) "less manpower spent opening and searching mail;" and (5) reduced liability for "missing property that is mailed into the facility and cannot be given to the inmate." *Proposal* [Doc. #30-3]. He identified possible disadvantages as well: (1) complaints from inmates and their families; (2) "Most postcards are thick and could be used for picking locks and making other forms of contraband;" and (3) legal challenges to the policy. Id. He noted that the policy had been adopted by "several" Missouri sheriffs' offices. Id. Sheriff John Jordan adopted the policy as proposed, and it went into effect on January 1, 2014. *Stevens Dep. at 27-28*.

The policy states that its purpose is to "expand the safety and security" for "inmates and Staff." All nonprivileged correspondence entering the jail must be written on "standard white postcards," no larger than 5" by 7", with a legible return address. *Policy at § I* [Doc. #30-3]. "Unacceptable" postcards — *i.e.*, index cards, photographs, and postcards that are defaced or altered, or have labels, stickers, stains, watermarks, or "biohazards, including lipsticks or perfumes" — are returned to the sender. All stamps are removed and discarded before the cards are given to the inmate. While an inmate may receive an unlimited number of postcards, only ten postcards may be kept in an inmate's cell. Id. According to the policy, incoming postcards are monitored "to ascertain any attempt at escape, security violations, or conspiracy to introduce contraband." *Policy at § III(a)(4)*. In the event that such

information is found, the inmate is "given written notice of the reasons the correspondence is being denied." *Id*. at § III(a)(5). Photographs are accepted through the mail only with the approval of a jail administrator. *Id*. at § III(a)(8).

Before the postcard-only policy went into effect on January 1, 2014, plaintiff routinely sent multi-page letters and photographs to her son. *Simpson Decl. at ¶¶9, 13*. Other family members also corresponded with him. *Id. at ¶15*. After the policy was in place, she was unable to send photographs, financial documents, and news clippings. *Id. at ¶ 20*. Plaintiff felt unable to correspond with her son about private matters on postcards because they could be read by anyone who handled them during delivery, including postal carriers, other inmates, and other jail employees not assigned to review the mail. *Id. at ¶¶12, 24, 28*. Her son's reintegration after release was affected by plaintiff's inability to communicate with him about private matters during the last two months of his incarceration. *Id. at ¶19*. The policy also placed a logistical and financial burden on plaintiff because she had to go to multiple post offices to obtain sufficient postcards. *Id. at ¶14*.

Plaintiff visited her son at the jail on a weekly basis. *Id. at ¶22*. Visits were limited to 15 minutes in duration. The jail did not permit contact visits and plaintiff communicated with her son over a telephone system. Plaintiff asserts, and defendant disputes, that the telephones often did not work properly. Conversations using the telephone system could be overheard by other visitors and inmates.

Between 2009 and 2014, the number of inmates at the Cape Girardeau County jail ranged between 168 and 241 inmates, with an average daily count of 207 inmates. In 2014, the jail had 23 full-time employees, including 19 deputies or corrections officers. *Stevens Dep. at pp. 11-12*. The jail does not keep records of

how many pieces of mail it receives and thus there is no evidence regarding the impact of the postcard-only policy on the volume of mail. *Id. at p. 13*. There are also no formal measures of any time-savings realized by the postcard-only policy, but Lt. Stevens testified that handing out the mail takes less time because jail personnel are no longer reading the incoming mail and do not have to deal with property or potential contraband in the mail. In addition, most incoming postcards do not have a stamp that has to be removed. Finally, the jail no longer faces liability for losing property. *Id. at pp. 29-30*.

Jail personnel wrote approximately 90 incident reports regarding seizure of contraband between 2009 and 2013. *Pl. Ex. 4* [Doc. #33-2 at 96-234]. Sometimes the seized items are too large to have arrived in a letter (*e.g.,* cell phone). In most cases, the reports do not identify how the contraband entered the jail and there are no incident reports stating that the contraband arrived through the mail.

## II. **Legal Standard**

Rule 56(a) of the Federal Rules of Civil Procedure provides that summary judgment shall be entered if the moving party shows "that there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." In ruling on a motion for summary judgment the court is required to view the facts in the light most favorable to the non-moving party and must give that party the benefit of all reasonable inferences to be drawn from the underlying facts. AgriStor Leasing v. Farrow, 826 F.2d 732, 734 (8th Cir. 1987). The moving party bears the burden of showing both the absence of a genuine issue of material fact and its entitlement to judgment as a matter of law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986); Matsushita Electric Industrial Co. v. Zenith Radio Corp.,

475 U.S. 574, 586-87 (1986). Once the moving party has met its burden, the non-moving party may not rest on the allegations of his pleadings but must set forth specific facts, by affidavit or other evidence, showing that a genuine issue of material fact exists. United of Omaha Life Ins. Co. v. Honea, 458 F.3d 788, 791 (8th Cir. 2006) (quoting Fed. R. Civ. P. 56(e)). Rule 56 "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corporation v. Catrett, 477 U.S. 317, 322 (1986).

## III. Discussion

### A. Municipal Liability

The defendant argues that it cannot be held responsible for a policy approved by Sheriff John Jordan and implemented by the Cape Girardeau County Sheriff's Department.

Section 1983 liability for a constitutional violation may attach to a municipality if the violation resulted from an official municipal policy. Atkinson v. City of Mountain View, Mo., 709 F.3d 1201, 1214 (8th Cir. 2013) (citing Monell v. Dep't of Soc. Servs. of City of New York, 436 U.S. 658, 691 (1978)). Municipal liability for a challenged policy attaches where the decisionmaker possesses final authority to establish municipal policy. Pembaur v. City of Cincinnati, 475 U.S. 469, 481 (1986); Ware v. Jackson Cnty., Mo., 150 F.3d 873, 880 (8th Cir. 1998) (official policy "involves a deliberate choice to follow a course of action made from among various alternatives by an official who is determined by state law to have the final authority to establish governmental policy"). Whether an official has final policy-

making authority is a question of state law and is to be resolved by the court. Shepard v. Wapello Cnty., Iowa, 303 F. Supp. 2d 1004, 1017 (S.D. Iowa 2003) (citing Jett v. Dallas Ind. School Dist., 491 U.S. 701, 737 (1989)).

Defendant does not dispute that Sheriff Jordan implemented the disputed policy or that a county sheriff is a county official. See Overbay v. Lilliman, 572 F. Supp. 174, 177 (W.D. Mo. 1983) (under Missouri law, the county sheriff is the law enforcement arm of the county government). Defendant also does not dispute that Sheriff Jordan has final policy-making authority with respect to jail operations. See *Stevens Dep. at 31* (Sheriff Jones "makes all decisions for the jail."); Mo. Rev. Stat. § 221.020 ("the sheriff of each county in this state shall have the custody, rule, keeping and charge of the jail within his county, and of all the prisoners in such jail . . . ") Thus, as a matter of state law, the county sheriff is the final policy maker for the county for the purposes of the postcard-only policy. To the extent that defendant argues that plaintiff should have named Sheriff Jordan as defendant, a suit against a government officer in his official capacity is functionally equivalent to a suit against the employing governmental entity. Veatch v. Bartels Lutheran Home, 627 F.3d 1254, 1257 (8th Cir. 2010). The defendant thus can be held liable under § 1983 for unconstitutional policies adopted by Sheriff Jones. See Ware, 150 F.3d at 885-86 (finding director of county corrections department was final policymaker for county for § 1983 purposes). Plaintiff may properly maintain this action against the County of Cape Girardeau.

### B. **The Postcard-Only Policy**

Both the addressee and the sender of direct personal correspondence are protected by the First Amendment against unjustified governmental interference

- 6 -

with communication. Procunier v. Martinez, 416 U.S. 396, 408–09 (1974) (citing Lamont v. Postmaster General, 381 U.S. 301 (1965)). However, "the Constitution sometimes permits greater restriction of such rights in a prison than it would allow elsewhere." Beard v. Banks, 548 U.S. 521, 528 (2006). To ensure that appropriate deference is afforded to prison officials, courts evaluate prison regulations alleged to infringe constitutional rights under a "reasonableness" test that is less restrictive than that ordinarily applied to alleged infringements of fundamental constitutional rights. O'Lone v. Estate of Shabazz, 482 U.S. 342, 349 (1987). Thus, restrictive prison regulations are permissible if they are "reasonably related to legitimate penological interests and are not an exaggerated response to such objectives." Turner v. Safley, 482 U.S. 78, 87 (1987).

There are four relevant factors in determining the reasonableness of a prison regulation: (1) whether the regulation has a "valid, rational connection" to a legitimate governmental interest; (2) whether alternative means are open to inmates to exercise the asserted right; (3) what impact an accommodation of the right would have on guards and inmates and prison resources; and (4) whether there are "ready alternatives" to the regulation. Overton v. Bazzetta, 539 U.S. 126, 132 (2003) (quoting Turner, 482 U.S. at 89-91). In conducting the analysis under Turner, courts must accord substantial deference to the professional judgment of prison administrators, who bear a significant responsibility for defining the legitimate goals of a corrections system and for determining the most appropriate means to accomplish them. Id. (citations omitted). The burden, moreover, is not on state officials to prove the validity of prison regulations but on the plaintiff to disprove it. Id. (citations omitted).

The court has reviewed the parties' submissions in light of the analysis under Turner and concludes that summary judgment cannot be granted on the basis of the present record. Therefore, the parties' motions will be denied and this case remains set for trial on August 17, 2015.

Accordingly,

**IT IS HEREBY ORDERED** that defendant's motion for summary judgment [Doc. #28] is **denied**.

**IT IS FURTHER ORDERED** that plaintiff's motion for summary judgment [Doc. #31] is **denied**.

_____
CAROL E. JACKSON
UNITED STATES DISTRICT JUDGE

Dated this 16th day of April, 2015.